# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| LEON CARMICHAEL, SR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 2:10cv1106-MHT |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## AFFIDAVIT

I, Marion Chartoff, having been duly sworn, depose and say the following:

1. I began working on the defense of Leon Carmichael during 2004 when attorney Stephen Glassroth hired me as a contract attorney to write briefs regarding Mr. Carmichael's constitutional right to operate a website to seek information about several witnesses against him.

2. During the early fall of 2004, Mr. Glassroth hired me, on Mr. Carmichael's behalf, to work at Mr. Glassroth's direction on legal research, drafting various motions and briefs, and assisting him and attorney Lisa Wayne with miscellaneous tasks for the trial of Mr. Carmichael's case. After Mr. Glassroth withdrew from the case, I remained on the case and worked on Mr. Carmichael's defense through the trial in June 2005 at the direction of Ms. Wayne. My role remained the same, except that I was given responsibility for arguing certain motions and objections

at the trial. After trial, I litigated a jury venire challenge with attorney James Jenkins stemming from a motion I filed at the beginning of the trial.

3. I am providing this affidavit in response to the Court's Order dated January 4, 2011 (Doc. 5), and the extension granted on April 26, 2011 for counsel to file this affidavit on or before May 9, 2011. (Doc. 45).

4. In this affidavit, I will address only those grounds in Mr. Carmichael's Petition and Affidavit that pertain to me and my effectiveness as counsel for Mr. Carmichael. All of the statements in this affidavit are made to the best of my recollection.

5. Regarding Ground (A)(1) in Mr. Carmichael's Petition, I never had a conversation with Mr. Carmichael about his potential sentence or how any provisions of the Federal Sentencing Guidelines would apply to his case, as doing so was not within my limited duties on the case. I was not a party to any conversation in which Mr. Carmichael was advised about the facts of the case and how they would impact sentencing or about the application of the Federal Sentencing Guidelines to his case. I do not know if any of his other lawyers advised him of the sentence he was facing or how the Federal Sentencing Guidelines would apply to his case.

6. Regarding Ground (A)(2) in the Petition, I raised *Crawford v. Washington* in the motion in limine to keep out the codefendant's statements. Docket #285.

7. Regarding Ground (A)(5) in the Petition, I do not recall having a comprehensive conversation with Mr. Carmichael about all of the prejudicial information that could be introduced against him. I do not know if other counsel had such a

conversation. I was party to meetings in the week or so before trial where the defense team discussed some of the witnesses who could present damaging evidence against Mr. Carmichael.

8. I did not know of any plea offers made to Mr. Carmichael, and I accordingly did not convey any to him. It was not my role in the case to handle plea negotiations. I was not aware of any effort to negotiate a plea for Mr. Carmichael. I never advised Mr. Carmichael that he would face only ten years in prison.

9. Regarding Ground (A)(6), my primary role in the case was to draft motions and briefs at the direction of lead counsel. I was not directed to file a motion for bill of particulars or to file motions under Rule 7(f) nor 16(a)(1)(E) of the Federal Rules of Criminal Procedure.

10. Regarding Grounds (A)(7), (8), and (9), my responsibilities on the case did not include formulating the investigation strategy or defense strategy. While I handled one limited investigative task before Mr. Glassroth withdrew, I was not directed to handle any investigation thereafter.

11. Regarding Ground (A)(10), I did not try to litigate the suppression issue because it had already been litigated by Mr. Glassroth. In the motion *in limine* at Docket #278, I did not argue that Mr. Carmichael's arrest had been unlawful because it did not appear to be a viable argument for keeping out statements from when Mr. Carmichael went to the DEA office.

12. Regarding Ground (A)(13), I was not named as a defendant in Agent DeJohn's lawsuit about the website and accordingly had no conflict. I did not advise Mr. Carmichael to make a statement about the website.

13. Regarding Ground (A)(15), I drafted motions *in limine* to prevent the introduction of all of the potentially prejudicial material in the discovery before the November 2004 trial date. As I was finishing drafting the motions, Mr. Glassroth withdrew from the case. I do not recall whether Mr. Glassroth or Ms. Wayne had discussed the motions *in limine* with Mr. Carmichael before then, or whether Ms. Wayne or I discussed them with him after filing them. If Mr. Carmichael attended the hearing on the motions *in limine* before the June 2005 trial date, he would have learned about the motions and the evidence they sought to keep out of evidence. I believe he did, but I am not certain.

14. Regarding Ground (A)(16) and Paragraph 30 of Mr. Carmichael's Affidavit, I do not recall being aware of attorney Ron Brunson's plan to call IRS Agent Wilson before the trial and do not recall any group discussion about the plan to call Agent Wilson. Mr. Brunson worked independently from the other lawyers up until right before the trial. In any case, I did not have authority within the defense team to countermand Mr. Brunson's decision to call IRS Agent Wilson. Agent Wilson's testimony was very damaging to Mr. Carmichael's defense.

15. Regarding Ground (A)(17), Judge Thompson's criticism of the defense team was a source of tension and discord with Mr. Carmichael and amongst defense counsel. Ms. Wayne and Ms. James handled this matter and did not direct me to file any objection.

16. Regarding Ground (A)(18) and Paragraph 27 of Mr. Carmichael's Affidavit, I do not recall why the defense team did not follow through with filing a motion to recuse Judge Thompson. Although Judge Thompson strives to provide a fair trial,

it was clear during the in-chambers conference that he had strong negative feelings towards Mr. Carmichael and was very upset with Ms. Wayne. I probably did communicate concerns about this to Mr. Carmichael. I do not recall what advice, if any, I offered to Mr. Carmichael after this event. This event caused great consternation and distraction amongst defense counsel. I do not recall the defense team resolving how to deal with it.

17. Regarding Paragraph 10 of Mr. Carmichael's Affidavit, I was not privy to this conversation between Mr. Carmichael and Ms. Wayne, and I do not know the specifics of the retainer agreement between Ms. Wayne and Mr. Carmichael. After Mr. Glassroth withdrew from the case, Ms. Wayne expressed to me her intent to return to Montgomery in advance of the June 2005 trial date to work on the case. She did not return until the Friday before the trial started. Mr. Carmichael contacted me on several occasions to talk about the status of the case and to express concern that Ms. Wayne had not returned to Montgomery to work on the case.

18. While I cannot recall the exact words I used, I did discuss with Mr. Carmichael that Ms. Wayne was lead counsel and had ultimate decision-making authority over strategy and the handling of the case.

19. Regarding paragraph 32 of Mr. Carmichael's affidavit, the withdrawal of lead counsel Glassroth, geographical challenges, and communication difficulties amongst the defense team created a lack of coordination and some disorganization in the defense. After his withdrawal, Mr. Glassroth was limited in his ability to discuss the case and what he had done before his withdrawal. Ms. Wayne's

location and practice in Colorado created difficulties for her coordination and oversight of co-counsel, case preparation, and trial strategy. There was limited opportunity for coordinated trial preparation and strategy development. Furthermore, there were disputes and tensions amongst counsel.

20. Regarding paragraph 33, I did defer some of Mr. Carmichael's questions to Ms. Wayne during the months leading up to the trial, as she was lead counsel.

Marion Chartoff
AL Bar Identification # CHA074
400 Washington Ave.
Montgomery, AL 36104

Sworn and subscribed before me
on this 10th day of May, 2011
in the County of Montgomery
and State of Alabama.

Notary Public

Rosalinda Gross - Smith
Notary Public
State of Alabama at Large
My Commission Expires 8/21/2013

# CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2011, I electronically filed the foregoing Affidavit with the Clerk of Court using the CM/ECF filing system which will electronically send notification of such filing to all parties in this matter except Petitioner Carmichael. In addition, I hereby certify that on this date I have mailed a copy of the foregoing document to Petitioner Carmichael at the following address:

> Leon Carmichael, Sr., # 11330-002
> FCI TALLADEGA
> FEDERAL CORRECTIONAL INSTITUTION
> P.O. BOX 1000
> TALLADEGA, AL 35160

/s/ Marion D. Chartoff

Marion D. Chartoff
AL Bar Identification # CHA074
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
(334) 956-8200
Fax: (334) 956-8481
marion.chartoff@splcenter.org