not demonstrated either deficient performance or prejudice with regard to this claim, his claim should be denied without an evidentiary hearing.

## 7.    Never explaining the nature of the criminal charges to Carmichael

The next claim of ineffective assistance of counsel that Carmichael raises is that his counsel never explained the nature of the criminal charges to him. *See* Carmichael Memorandum of Law at 18. He claims if counsel had done so, he probably could have disposed of his case through plea negotiations. Carmichael's criminal charges were pretty straightforward. He was charged with a marijuana trafficking conspiracy and with a money laundering conspiracy related to his marijuana trafficking. See GX 1A; 1J; 1R; 2V. Carmichael does not reveal what it is about the charges that he did not understand or how knowing something about those charges would have affected any decision he made about going to trial versus pleading guilty.

Although none of Carmichael's counsel state in their affidavits that they did discuss the nature of the charges with Carmichael, and reasonably competent counsel would probably have done so, the Government would point out that there is no affidavit in the record from Stephen Glassroth, Carmichael's lead counsel for almost a year, and it is likely, because he was Carmichael's lead counsel during that time, that he discussed the charges with Carmichael. *See* GX 1E; GX 3U; Wayne Affidavit at 1, ¶ 2; James Affidavit at 1, ¶ 2; Affidavit of Marion Chartoff

169

at 1, ¶ 2, all referring to Glassroth as lead counsel for Carmichael. Further, none of

Carmichael's counsel specifically state that they did not discuss the charges with

him, but Ms. Wayne represents she had numerous conversations with Carmichael

about the Government's evidence and what evidence may or may not be used

against him. *See* Wayne Affidavit at 4, ¶ 19. It is hard to believe that the evidence

was discussed without the charges being discussed as well, although, again,

counsel do not say what exactly they discussed with Carmichael in preparation for

trial. The burden of proving that counsel did not act professionally reasonably,

however, is one Carmichael, and he has not presented sufficient evidence to rebut

the presumption that Mr. Glassroth, and his other counsel, provided reasonably

professional assistance with regard to this claim. *See Jennings v. McDonough*, 490

F.3d at 1243 (court should indulge a strong presumption that counsel's conduct fell

within the wide range of reasonable professional assistance). His self-serving

statement to the contrary is simply insufficient evidence to overcome the

presumption.

Alternatively, this Court should reject this claim because Carmichael cannot

demonstrate prejudice. Although Carmichael states that he would have accepted a

plea deal, had the charges been explained to him, Ms. James notes that, as a part of

any plea deal, the Government insisted that Carmichael forfeit the Carmichael

Center, and he was unwilling to do that, "[h]e was adamant he did not want to

forfeit the Carmichael Center." James Affidavit at 12-13, "Paragraph 28."

Nowhere in his § 2255 motion or in his memorandum in support does Carmichael

assert to the contrary – that he would have been willing to forfeit the Carmichael

Center as a part of a plea deal, if the charges had been explained to him.

Therefore, he has not shown that but for any error of counsel, his sentence would

have been different. Nor can he demonstrate a plea deal would have been for less

than 40 years, or that this Court would have accepted such a deal. Without a

demonstration of prejudice, this Court should refuse to grant Carmichael any relief

on this claim. Carmichael is entitled to no evidentiary hearing on this claim,

because he has not sufficiently demonstrated that, if his attorneys had better

advised him about the charges, he would not have gone to trial and he would have

received a lesser sentence.

### 8. Never explaining the weight and extent of the prosecution's evidence to Carmichael

Carmichael also alleges that his counsel never explained the weight and

extent of the prosecution's evidence to him, and that if they had, he would have

entered into plea negotiations with the Government and pleaded guilty to a

sentence less of than 40 years. *See* Carmichael Memorandum of Law at 18. Ms.

Wayne refutes that counsel never discussed with Carmichael the evidence that

could be used against him at trial, representing that she had "numerous

conversations with Mr. Carmichael about the Government's evidence that may or

171

may not be used against him at trial." *See* Wayne Affidavit at 4, ¶ 19. Ms. James also impliedly admits in her affidavit that she discussed the evidence the Government would use at trial, although she states she does not have a clear recollection of what was discussed. *See* James Affidavit at 7, "Paragraph 14." Further, during trial, Ms, James represented to the Court that she had discussed the discovery obtained from the Government with Carmichael. *See* GX 5B-VI-59. Because Carmichael's attorneys refute his accusation that they never discussed with him the evidence the Government was going to use against him, he has not met his burden of establishing that counsel's performance was deficient in this regard.

Moreover, Carmichael has again failed to demonstrate prejudice. Carmichael does not assert or explain how conversations with counsel about the Government's evidence would have affected his decision to plead guilty, nor does he demonstrate that, but for the lack of conversation on this topic, he would have pleaded guilty and received a lesser sentence. Again, he asserts he would have entered into plea negotiations, but he does not demonstrate that any such negotiations would have led to a plea deal and/or a sentence of less than 40 years in prison. Without such a demonstration, he is entitled to no relief on this ineffective assistance of counsel claim. Carmichael has not sufficiently

demonstrated deficient performance or any prejudice from such performance, and he is, therefore, not entitled to an evidentiary hearing on this claim of error.

## 9.    Failing to pursue plea negotiations or convey plea deal offers to Carmichael

Next, Carmichael faults his attorneys for not pursuing plea negotiations, despite his instructing counsel to do so, or convey plea deal offers to him. He alleges counsel performed deficiently in failing to do so. *See* Carmichael Memorandum of Law at 19. The problem for Carmichael is that both Ms. Wayne and Ms. James state in their affidavits that a possible guilty plea was discussed with Carmichael and the Government, but that nothing came of those negotiations because Carmichael insisted that the Carmichael Center not be forfeited as a result of those negotiations. *See* Wayne Affidavit at 3-4, ¶ 17; James Affidavit at 12-13, "Paragraph 28." Further, Government counsel also mention in their affidavits that plea negotiations occurred, but did not result in any firm offer. *See* Affidavit of A Clark Morris; Affidavit of Stephen P. Feaga Affidavit; James Affidavit at 12-13, "Paragraph 28." And certainly no plea deal offering Carmichael a sentence of five years in prison was ever offered to Carmichael, although one of his attorneys may have suggested such a sentence. *Id.*

Because Carmichael's counsel did pursue plea negotiations, albeit unsuccessfully, Carmichael has not shown deficient performance with regard to this claim of ineffective assistance of counsel. Also, because no plea deal was ever

173

offered to Carmichael, counsel did not perform deficiently in failing to relay such offers to Carmichael. And because Carmichael has not demonstrated deficient performance with regard to this claim, he is not entitled to any relief from this Court on the claim.

Additionally, Carmichael has not demonstrated any prejudice. Although a possible ten year sentence was discussed by the Government and defense counsel, *see* Feaga Affidavit at 1, there was no specific plea offer to relay to Carmichael that necessarily would have resulted in a lesser sentence for him, so he cannot demonstrate that but for any errors of counsel, he would have pleaded guilty to a lesser sentence. He is, therefore, not entitled to relief on this claim for the alternative reason he has demonstrated no prejudice. And because no further factual development is needed to resolve the issue, the claim should be denied without a hearing.

### 10. Running headlong into the case with the only strategy to take the case to trial

Carmichael's next argument is bordering on frivolous. He argues that his counsel were ineffective for "running headlong" into the case with the only strategy to take the case to trial. *See* Carmichael Memorandum of Law at 19. First, there was no running in this case. Instead, counsel for Carmichael very deliberatively, thoughtfully, and effectively represented Carmichael in the extensive pretrial proceedings in this case, which lasted for the more than a year-

174

and-a-half and involved the filing and litigating of numerous motions filed by

Carmichael's attorneys. During that time, counsel for Carmichael, among other

things, doggedly sought discovery from the Government , *see, e.g.,* GX 2D; GX

3A; GX 4O, fought all motions filed by the Government, and sought to have a

wide-variety of evidence suppressed and excluded from any trial, *see, e.g.,* GX 1N

and GX 3L through GX 3V. There was no headlong rush to trial in this case.

As for Carmichael's claim that counsel's only strategy was to take the case

to trial, that strategy would have been a reasonable strategy under the

circumstances. As already noted, Carmichael refused to forfeit the Carmichael

Center as a part of any plea negotiations and the Government insisted on that

forfeiture as a part of any negotiations. S*ee* Morris Affidavit; Wayne Affidavit at

3-4, ¶ 17; James Affidavit at 12-13, "Paragraph 28." Further, Carmichael

maintained his innocence throughout counsel's representation of him. S*ee* Wayne

Affidavit at 4, ¶ 18. Therefore, a strategy to take Carmichael to trial was certainly

a reasonable one, and an appropriate one, under the circumstances.

Finally, Carmichael has demonstrated no prejudice. The Government's

decision to offer Carmichael a plea deal was premised on his accepting forfeiture

of the Carmichael Center as a part of that deal. Because Carmichael would not

agree to such a provision under any circumstances, he cannot demonstrate that but

for counsel's focus on trial, he would have pleaded guilty and received a lesser

sentence. Without this demonstration of prejudice under *Strickland*, his claim must be denied. And because no further factual development is needed to resolve the issue, the claim should be denied without a hearing.

### 11.    Turning a run-of-the-mill marijuana case into a nightmare of negative publicity, conflict, and a 40-year sentence

Carmichael next faults his counsel for the negative publicity and conflict in his case that he alleges resulted in the 40-years sentence he received. *See* Carmichael Memorandum of Law at 19. But the negative publicity in this case began with Carmichael himself setting up an internet website in the form of a wanted poster looking for information on witnesses and investigators in the case. *See* GX 2S at 4-5 ("Evidence presented by the Government shows the site is registered to Cubie Ray Hayes and an entity known as 'Eye For an Eye," and that Hayes currently works for the Carmichael Center, a business owned by Carmichael. Without question, Carmichael has control over the website.") (footnotes omitted). He refused to take the website down, and as a result, litigation over the website ensued and continued throughout the trial. *See* GX 2S; GX 2Y; GX 2Z; GX 3G; GX 3Y; GX 6K. It was this litigation that led to any negative publicity in the case. Therefore, Carmichael cannot be heard to complain when he was responsible for any harm, not his counsel.

Also, it should be noted that counsel attempted to turn around the negative publicity issue and blame the Government for the negative publicity in the case.

*See* GX 4Q; GX 4S. When the Government issued a press release about a

Montgomery Police Officer who had been indicted for obstruction of justice in

relation to Carmichael's case, Carmichael and his attorneys blamed the

Government for creating a negative atmosphere in which to try Carmichael, and

alleged that the publicity was so inflammatory as to necessitate a change of venue.

*See* GX 4Q at 2-3, ¶¶ 6-7. The Court found that Carmichael's motion for change

of venue was not due to be granted at that time, but that the Court would revisit the

issue at the time of jury selection. *See* GX 4T at 31 and 4U at 2-3. However, the

Court also instructed the Government not to issue any more press releases or to

mention anything about the other case during Carmichael's trial. *See* GX 4T at 31.

This strategy by Carmichael's attorneys was a reasonable, and effective, strategy

under the circumstances presented to them; it did not constitute deficient

performance.

As with Carmichael's other claims, Carmichael also has not shown that any

publicity affected the sentence he received in this case, either. Instead, as the

sentencing hearing transcript reveals, Carmichael's sentence was based on the

applicable base offense level and sentencing enhancements, and his prior criminal

history, not on any publicity in the case. *See* GX7Q-I and GX 7Q-II. In

sentencing Carmichael, Judge Thompson relied only on the evidence before him

and the arguments made to him, and none of that evidence had to do with any

publicity in the case, including the evidence concerning Carmichael's internet

website. Because Carmichael has not demonstrated that his 40-year sentence was a

result of negative publicity, but was a result of the evidence against him, his

ineffective assistance of counsel claim should be denied as without merit. And

because no further factual development is needed to resolve the issue, the claim

should be denied without a hearing.

      **12.**    **Never advising Carmichael of the Government's ability to introduce hearsay testimony at trial, including the statements made by non-testifying Codefendant Williams, and evidence of other criminal conduct not alleged in the indictment, statements made by others not intrinsic to the case, nor that the Government could use pardoned convictions to increase Carmichael's sentence**

Carmichael's next claim of ineffective assistance of counsel is that his

counsel never advised him that the Government could introduce: (1) hearsay

testimony at his trial, including the statements of Codefendant Freddie Williams;

(2) evidence of other criminal conduct not alleged in the indictment; (3) statements

made by others not intrinsic to the case; and (2) use pardoned convictions to

increase Carmichael's sentence. *See* Carmichael Memorandum of Law at 19 n.4.

Counsel for Carmichael do not address these accusations in their affidavits.

However, even if counsel did not advise Carmichael of these things, he

cannot demonstrate prejudice and his entitlement to relief on this claim. First, the

Government was not permitted to present hearsay testimony at his trial. The

statements of coconspirators – like Freddie Williams – are not hearsay by

178

definition. *See* Fed.R.Evid. 801(d)(2)(E) ("A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."). Carmichael points to no other possible hearsay that the Government was permitted to introduce into evidence. Because this evidence was admissible, Carmichael cannot demonstrate that he was prejudiced by anything counsel failed to tell him.

Second, Carmichael does not identify what other criminal conduct the Government was permitted to present at his trial, and the Court was careful to limit the Government's evidence to the charged criminal conduct and conduct that occurred during, and as a part of, the conspiracy, except when Carmichael opened the door to such other evidence. *See, e.g.*, GX G. Therefore, Carmichael has not demonstrated that, but for counsel's failure to tell him the Government was permitted to present his other criminal conduct at trial, the outcome of his trial would have been different.

Carmichael also does not identify to what testimony or evidence he is referring when he alleges that the Government was permitted to present statements of others that were not intrinsic to the case. The Government cannot answer this issue sufficiently because it does not know what evidence Carmichael alleges was not intrinsic. But regardless, Carmichael has not demonstrated that, but for

counsel's failure to tell him that the Government could introduce such testimony or evidence, the outcome of his trial would have been different.

Finally, Carmichael alleges that counsel never told him that the Government could use pardoned convictions to increase his sentence. Of course, the Government could not use anything to increase Carmichael's sentence, as the Government does not sentence; however, it did encourage the Court to use a pardoned conviction in sentencing Carmichael. Counsel should have advised Carmichael that the conviction could have been used to sentenced him, because his pardon did not find him innocent, but simply restored some of his civil rights, but regardless, Carmichael cannot show prejudice. He cannot show prejudice for two reasons. First, the Court properly used the pardoned conviction in determining Carmichael's sentence. *See* U.S.S.G. §4A1.2, cmt. n. 10. And second, even if Carmichael is alleging that he would have entered into plea negotiations if he had known the Court could use the pardoned conviction, as already noted, he did discuss a guilty plea with counsel, but adamantly refused to include the Carmichael Center forfeiture as a bargaining tool; therefore, no plea negotiations would have been successful. Further, he has presented no convincing argument that any plea negotiations would have led to a plea deal or a lesser sentence. Therefore, he has not demonstrated the necessary prejudice, and his claim should be denied.

Although the Government maintains that Carmichael was not prejudiced by
any failures of counsel as to any of the aspects of this claim of ineffective
assistance of counsel, because there are factual issues raised that cannot be
resolved without an evidentiary hearing on what counsel did and did not advise
him, this Court may find an evidentiary hearing is necessary on the deficient
performance prong of *Strickland*.

> **13.    Never telling Carmichael that a guilty verdict after trial would
> result in a 40-year sentence, and to the contrary, telling
> Carmichael that he faced, at most, "around ten years" if found
> guilty**

Carmichael also claims that his attorneys failed to advise him that he would
receive a sentence of 40 years if he was found guilty, and in fact they advised him
that he faced at most around 10 years in jail if he was found guilty. *See*
Carmichael Memorandum of Law at 19. Carmichael does not state which
attorney(s) told him he faced, at most, around 10 years in jail. Although Susan
James states in her affidavit that she never advised Carmichael that he "would"
receive a 40-year sentence if he went to trial, she does not state whether she told
Carmichael he "could" face such a sentence. *See* James Affidavit at 7, "Paragraph
12." None of Carmichael's other attorneys address this claim of ineffective
assistance and Ms. James does not address the claim that his attorneys told him he
faced, at most, around 10 years in jail. Of course, counsel could not have known

pretrial what Carmichael's sentence would be, because that was a decision for the Court.

If Carmichael's counsel did tell him that he faced, at most, 10 years in jail, if convicted, when he faced a statutory minimum sentence of 10 years in jail, and they knew the extent of the alleged marijuana conspiracy and Carmichael's prior criminal history, then their performance was probably professionally unreasonable if they told him that, but this Court need not decided that prong of *Strickland*. Carmichael has again demonstrated no prejudice because he has presented no evidence there was a plea deal on the table for less than 40 years in prison, or any evidence that Judge Thompson would have sentenced him to less than 40 years, had Carmichael not gone to trial. In light of the evidence presented against Carmichael at trial and at his sentencing, there is no probability that, but for counsel's sentencing advice, he would have received a lesser sentence.

If this Court decides that it cannot resolve the prejudice issue, there are enough questions left opened on this particular ineffective assistance of counsel claim, because counsel did not address it in their affidavits, that Carmichael may be entitled to an evidentiary hearing to resolve the factual issues as a result.

14.    **Failing to follow through on plea negotiations when Carmichael
       directed counsel to attempt plea negotiations, and if they had, he
       would have most likely agreed to settlement of forfeiture**

Carmichael argues next that his counsel were ineffective for failing to follow

through on plea negotiations when Carmichael directed counsel to attempt such

negotiations, and if they had, he would have most likely agreed to a settlement of

forfeiture. *See* Carmichael Memorandum of Law at 20. Although Carmichael now

says he would have probably agreed to a settlement of forfeiture before trial, if

counsel had followed through on plea negotiations, he was adamant before trial

that he would not consider forfeiture of the Carmichael Center, and that refusal

hamstrung any settlement deal. *See* Wayne Affidavit at 3-4, ¶ 17; James Affidavit

at  12-13, "Paragraph 28."

Further, as previously noted, no plea offer was actually made to Carmichael,

although AUSA Steve Feaga offered to run a plea deal "up the flag pole" with his

supervisors if Carmichael was interested. *See* Feaga Affidavit; James Affidavit at

12-13, "Paragraph 28." And certainly no plea deal offering Carmichael a sentence

of five years in prison was ever offered to Carmichael, although one of his

attorneys may have suggested such a sentence. See Morris Affidavit; Feaga

Affidavit.

Because Carmichael's counsel did pursue plea negotiations, albeit

unsuccessfully, Carmichael has not shown deficient performance with regard to

this claim of ineffective assistance of counsel.  Also, because no plea deal was ever

offered to Carmichael, counsel did not perform deficiently in failing to relay such

offers to Carmichael.  And because Carmichael has not demonstrated deficient

performance with regard to this claim, he is not entitled to any relief from this

Court on the claim.

Again, Carmichael has also failed to demonstrate any prejudice.  He has not

demonstrated that if counsel had more diligently pursued a plea deal, he would

have probably received one, and that his sentence would have been less than 40

years.  Because he has demonstrated no prejudice under *Strickland*, this claim of

ineffective assistance of counsel should be rejected.  Also, because the factual

issues can be resolved without an evidentiary hearing, no hearing should be

granted on this claim.

> **15.     Conflict of interest because it was in Carmichael's best interest to
> minimize the notoriety of the case and to seek plea negotiations,
> unlike counsels' interests, which were to fan the flames of
> publicity and milk the case for all it was worth**

In his next claim of ineffective assistance of counsel, Carmichael blames his

attorneys' desire for publicity for his failure to obtain a plea deal.  *See* Carmichael

Memorandum of Law at 20.  He presents no evidence to support this contention.  It

is his burden to prove both deficient performance and prejudice; he has done

neither in this case.  He has shown neither that his attorneys were after publicity,

especially negative publicity, nor that their desire and pursuit for publicity affected

the Government's decision whether to offer him a plea deal. It did not. Therefore,
this claim of ineffective assistance of counsel should be denied. And because
Carmichael has not pleaded sufficient facts with regard to this claim of ineffective
assistance of counsel, this Court should deny an evidentiary hearing on this claim.

### 16. Never relaying to Carmichael a five-year plea deal offered by the Government before trial and while the jury was deliberating

The Government never offered Carmichael a five-year plea deal in this case,
neither before trial nor during jury deliberations, and Carmichael's ineffective
assistance of counsel claim predicated on such a deal has no basis in fact.[3] *See*
Carmichael Memorandum of Law at 21; *see also* Affidavit of A. Clark Morris and
Affidavit of Stephen P. Feaga. Because it has no basis in fact, counsel were not
ineffective for failing to relay such a deal to Carmichael, and he was not prejudiced
by any inaction of counsel. Therefore, Carmichael has once again failed to
establish ineffective assistance of counsel. Because there are no factual issues to
resolve, this Court should deny this claim without an evidentiary hearing.

### 17. Failing to request a Bill of Particulars

"It is not necessary that an indictment allege in detail the factual proof that
will be relied upon to support the charges." *United States v. Sharpe*, 438 G.3d
1257, 1263 n.3 (11th Cir. 2006) (internal quotation marks omitted), *citing United*

---

[3] Carmichael does not say where he got this information that the Government offered him a five-year plea deal, if he did not hear about it through his attorneys. Regardless, however, there never was a straight five-year plea deal offered to Carmichael.

*States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978). "That information, if essential to the defense, can be obtained by a motion for a bill of particulars...." *Id.* Carmichael's seventeenth claim of ineffective assistance of counsel is that his counsel were ineffective because they did not file a request for a bill of particulars in his case pursuant Rule 7(f) of the Federal Rules of Criminal Procedure. *See* Carmichael Memorandum of Law at 22-23. Carmichael has failed to demonstrate that counsels' performance in this regard was deficient or that he was prejudice by counsels' actions.

Counsel for Carmichael did not request a bill of particulars, as Carmichael contends. Even though they did not, however, Carmichael has not demonstrated how that failure to do so was unreasonable under prevailing professional norms. The indictment in Carmichael's case outlined the essential facts the Government needed to prove to convict him of a marijuana trafficking conspiracy under 21 U.S.C. §§ 841(a)(1) and 846 (count one), and a money laundering conspiracy under 18 U.S.C. § 1956(h) (count two). *See* GX 2V. The indictment alleged the dates of the conspiracy, the place of the conspiracy, and the amount of marijuana the Government alleged was distributed or attempted to be distributed during the conspiracy. *Id.* As to the forfeiture allegation, the Government did file a bill of particulars. *See* GX 1X.

Carmichael does not state in his memorandum or affidavit what essential facts should have been alleged in the indictment, that were not, although it appears he is alleging the Government needed to allege the non-essential facts that he ordered the murder of cooperating witness Jimmy Timmons, but that murder was unsuccessful; that he engaged in marijuana trafficking with Richard Thomas and Eric Peagler; that he was connected with the seizures of controlled substances and a large amount of currency by others; that he was adulterous and fathered children with underaged girls; he and his sons were murderers; and he had threatened individuals associated with the case. *See* Carmichael Memorandum of Law at 22-23. All of these facts, although relevant to the case, were not essential to proving the charges in the case. Moreover, even though Carmichael's counsel did not file a bill of particulars, they did object to all of the testimony identified and much of the conduct was within Carmichael's own personal knowledge, since it involved his conduct. Carmichael simply has not demonstrated that a bill of particulars would have been granted in his case, or that the information he identified would have been disclosed pursuant to such a motion in light of its non-essential nature in relation to the charges.

Because Carmichael has not demonstrated that there was a need for a bill of particulars in his case – one even he identifies as a run-of-the-mill marijuana case – counsel cannot be faulted for failing to file a motion for a bill or particulars.

Moreover, because he has not demonstrated that the Government would have been ordered to provide a bill of particulars, especially on the non-essential information Carmichael identifies in his memorandum of law, he has not demonstrated the necessary prejudice. Therefore, his claim should be rejected.

One other point of note, although Carmichael's counsel did not file a motion for a bill of particulars, they did file a pretrial motion seeking to have the Government identify Carmichael's coconspirators. S*ee* GX 4O. A bill of particulars would have been the appropriate method of trying to obtain the names of those coconspirators, but such motions are not always granted and there is nothing in the record before this Court to demonstrate such a motion would have been granted in this case. *See United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979) ("A bill of particulars is a proper procedure for discovering the names of unindicted coconspirators who the government plans to use as witnesses."); *United States v. Colson*, 662 F.2d 1391-92 (11th Cir. 1981) (not an abuse of discretion when court denied motion for bill of particulars to obtain names and addresses of unindicted coconspirators). The motion filed by counsel in this case was denied both because it was filed so late in the proceedings and because the Court found that, independent of assisting the defense in preparing for trial and the Court in ruling on evidentiary objections, there was no compelling reason for granting the motion. *See* GX 4P at 6.

Carmichael has failed again to demonstrate that counsel were deficient in

their representation of Carmichael because they failed to file a motion for a bill of

particulars in this case.  Further, he has not demonstrate that but for counsel's

failure to file the motion, he would have received the information he sought or that

that disclosure would somehow have changed the outcome of his trial.  Therefore,

his ineffective assistance of counsel claim based on the failure to file a motion for a

bill of particulars should  be rejected.

### 18.    Failing to apprise Carmichael about certain evidence the Government possessed until the middle of trial

In a related claim, Carmichael also argues his counsel were ineffective

because they did not apprise *him* about certain evidence the Government possessed

until the middle of trial, but then he follows that argument with an allegation that

*the Government did not apprise the defense* about certain evidence until the middle

of trial. *See* Carmichael Memorandum of Law at 22.  This claim of ineffective

assistance, like the previous one, is based on evidence the Government presented at

trial that he ordered the murder of cooperating witness Jimmy Timmons, but that

murder was unsuccessful; that he engaged in marijuana trafficking with Richard

Thomas and Eric Peagler; that he was connected with the seizures of controlled

substances and a large amount of currency by others; that he was adulterous and

fathered children with underaged girls; he and his sons were murderers; and he had

threatened individuals associated with the case. *See* Carmichael Memorandum of

189

Law at 22-23. As an initial matter, the Government is not required to inform a

defendant or his counsel of all of the evidence it intends to use at trial. Instead, its

discovery obligations are governed by this Court's local rules, Rule 16 of the

Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500; *Brady v.*

*Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); *Giglio v. United States*, 405 U.S.

150, 92 S. Ct. 763 (1972); *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555(1995),

and the orders of this Court. Carmichael has not demonstrated that the

Government failed to meet its obligations with respect to any of these rules, cases,

or orders, *see*, *e.g.,* GX 1G; 1H; GX 5C-VII-10, and therefore, any claim that the

Government failed to meet any of its obligations is without any merit.

Also, Carmichael's counsel did seek all discovery to which it was entitled

under the rules and under caselaw, and it attempted to have the Court order the

Government to reveal more than what was required under the applicable caselaw

and the rules, but was unsuccessful. *See* GX 2D; 2N; 2H; 3A; GX 4O; GX 5A-I-

11-18. Counsel did perform in a professionally reasonable manner in seeking

discovery on behalf of Carmichael. The fact that they were unsuccessful in

discovering all of the Government's evidence pretrial was not due to professional

incompetence, and Carmichael has not demonstrated that it was.

Further, the record belies the allegation that the Government did not inform

Carmichael pretrial that it intended to use evidence about his adulterous behavior,

190

his fathering children with underaged girls, and Sandra Jones's shooting of Jimmy Timmons at Carmichael's direction as those matters were the subject of a pretrial motion in limine. *See* GX 3M; GX 4T at 43-64. Whether Carmichael's attorneys discussed that with him or not is not clear from the record, but they knew of the Government's intent to use that evidence, and it can be presumed that counsel acted professionally and discussed these matters with Carmichael before litigating them.

As to Eric Peagler, Carmichael's own pleadings belie any claim by him that he did not know about the Government's intent to present Mr. Peagler as a witness at trial and that counsel failed to discuss the matter with him. In his Memorandum of Law at 39-40, and Affidavit of Leon Carmichael, Sr. at 5-6, ¶¶ 17-20, Carmichael represents that he personally knew as early as 2004 or 2005, depending on whether one consults the memorandum of law or the affidavit, that Eric Peagler intended to testify against him, and in 2005 that Arthur Covane knew Peagler was going to testify falsely against Carmichael, and that he discussed these matters with Susan James. *Id.* Ms. James, in her affidavit, concedes that she discussed these matters with Carmichael. *See* James Affidavit at 8, ¶ 18, 19, 20.

As for Mr. Thomas, it is not clear when counsel found out about Mr. Thomas as a witness, because none of Carmichael's attorneys address that particular issue in their affidavits. However, when the Government did indicate it

191

was going to present Mr. Thomas as a witness, Carmichael's counsel objected on *Brady*, *Giglio*, and Jencks Act grounds, and as a result, it received the plea agreement and proffer statements of Thomas before it had to cross-examine him. *See* GX 5B-VI-57-58, 75-77, 80-89; GX 5C-VII-5, 10, 23-34. Those arguments were, however, overruled. See GX 5B-VI-33-34. Counsel for Carmichael did not perform deficiently with regard to Mr. Thomas's testimony. Furthermore, because Carmichael has not demonstrated that but for counsel's failure to tell him about his testimony, the testimony would have been declared inadmissible and the outcome of his trial would have been different. Therefore, he has not demonstrated the necessary prejudice, and has not shown this Court his entitlement to relief on this claim.

As to all of these alleged failures of counsel to tell him about certain evidence until the middle of trial, Carmichael has failed to demonstrated that but for the failure of counsel to tell him about the evidence, it would not have been admitted at his trial. He has not alleged how the evidence could have been excluded, if only he had known about it, how he could have better challenged it, or how any actions he could have taken, or his counsel could have taken, had they told him about, that would have changed the outcome of his trial. In other words, he had not sufficiently pleaded any prejudice entitling him to relief. Because he

has not, this claim of ineffective assistance of counsel should be denied without an evidentiary hearing.

### 19.    Failing to procure discovery

Carmichael's next three claims of ineffective assistance of counsel relate to counsel's alleged failure to procure certain discovery in the case.  He argues that his counsel were ineffective because they did not procure necessary discovery in the case; because they did not properly object to discovery violations and the Government's failure to comply with discovery rules; and because they did not file a motion for discovery under 16(a)(1)(E)(i) and (ii) of the Federal Rules of Evidence. *See* Carmichael Memorandum of Law at 22-23.

Counsel in this case fought diligently to procure all the discovery to which they were entitled, and more, and they strenuously objected to the admission of evidence when they believed that they had not been supplied discovery related to that evidence to which they were entitled. *See* GX 2D; GX 2J; GX 2N; GX 3A; GX 4O; GX 5A-I-11-12; GX 5A-II-215-21; GX 5A-III-6-9; GX 5B-V-8-22, 36; GX 5B-VI-52-62, 75-77, 274-78; GX 5C-VII-5, 10, 23-33, 125-32, 166-68, 168, 78. The Government first complied with its discovery obligations under Rule 16(a)(1) at arraignment, and it continued to meet its discovery obligations throughout the trial. *See, e..g.,* GX 1F; 1G; 2H.  The record simply belies any

allegation that counsel did not diligently, and effectively, pursue discovery in this case. Their performance was within reasonable professional norms.

Moreover, Carmichael has not, and cannot, demonstrate prejudice. He has not demonstrated that, but for any actions or omissions of his counsel, he would have received additional discovery and the outcome of his trial would have been different. Because he cannot meet that burden, he is entitled to no relief on this claim. This Court can resolve this issue without an evidentiary hearing on it, and it should.

### 20.    Failing to properly object to discovery violations and the Government's failure to comply with discovery rules

Carmichael's next argument on his counsels' actions with regard to discovery is slightly different. In this next claim of ineffective assistance, he alleges his counsel failed to properly object to the discovery violations and the Government's failure to comply with discovery rules. *See* Carmichael Memorandum of Law at 23. As noted in subpart 19, above, however, Carmichael's counsel did properly object to what it perceived as the Government's failures with regard to its discovery obligations, and it argued for mistrials and exclusion of the evidence based on those alleged failures. *See* GX 5A-I-11-12; GX 5A-II-215-21; GX 5A-III-6-9; GX 5B-V-8-22, 36; GX 5B-VI-52-62, 75-77, 274-78; GX 5C-VII-5, 10, 23-33, 125-32, 166-68, 168, 78. Carmichael has not pointed to anything more that counsel could have done in response to what it saw as

194

discovery violations by the Government in his case, and he has not, therefore, demonstrated deficient performance by counsel.

Further, Carmichael has not demonstrated prejudice. The Government maintained at trial that it had met its discovery obligations in this case, and the Court never found to the contrary. Although it did order the Government to turn over some additional evidence as the trial progressed, it never found the Government had violated the Court's standing order on discovery, its obligations under Rule 16 of the Federal Rules of Evidence, any subsequent orders of the Court, or any other law, and it did not. Because Carmichael has not demonstrated he was prejudiced by the withholding of any evidence by the Government, or that his counsel could have somehow obtained more discovery by something they did or did not do, or have had additional evidence excluded because of discovery violations, he has not demonstrated prejudice.

There was no deficient performance by counsel with regard to discovery in this case, and there is no prejudice. Therefore, this claim of ineffective assistance of counsel should be denied without an evidentiary hearing.

### 21.    Failing to file appropriate discovery motions under Rules 7(f) and 16(a)(1)(E)(i) and (ii) of Federal Rules of Criminal Procedure

Carmichael's final ineffective assistance of counsel claim related to counsel's efforts with regard to discovery in his case is that counsel were ineffective for failing to file discovery motions under Rules 7(f) and 16(a)(1)(E)(i)

195

and (ii) of the Federal Rules of Criminal Procedure. *See* Carmichael Memorandum

of Law at 22-23. Rule 7(f) governs the filing of a bill of particulars in a case, and

requires a motion for a bill of particulars be filed "within 14 days after arraignment

or at a later time if the court permits." *See* Fed. R. Crim. P. 7(f). No such motion

was filed in this case, and that issue is addressed in subpart 17, above. Counsel

were not ineffective in failing to procure the information Carmichael identifies

through a bill of particulars.

Mr. Glassroth, counsel for Carmichael did, however, file a motion seeking

documents pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal

Procedure. *See* GX 2D at 2, 5, ¶¶ 3, 5. *See* Fed. R. Crim. P. 16(a)(1)(E). Rule

16(a)(1)(E) provides, "[u]pon a defendant's request, the government must permit

the defendant to inspect and to copy or photograph, books, papers, documents,

data, photographs, tangible objects, buildings or places, or copies or portions of

any of these items if the item is within the government's possession, custody, or

control and:  (i) the item is material to preparing the defense; (ii) the government

intends to use the item in its case-in-chief at trial; or (iii) the item was obtained

from or belongs to the defendant." *Id.* Mr. Glassroth's motion on behalf of

Carmichael specifically requested documents related to any informants or

cooperators in the case. *See* GX 2D at 2, 5, ¶¶ 3, 5. This motion was, however,

denied by Judge Boyd after a response by the Government. *See* GX 2F and GX

2O.  Counsel cannot be held to have performed deficiently when they sought documentary evidence under Rule 16(a)(1)(E), but that motion was denied by the Court.

Further, even though Carmichael did not receive the documents to which he refers in his memorandum of law pretrial, he did receive the plea agreements and proffer statements of Eric Peagler and Richmond Thomas before he cross-examined them. *See* GX-5B-VI-75-82, 83-89; GX 5C-VII-5-36.  Those statements, were disclosed by the Court after an in camera inspection.  Despite Carmichael's counsels' arguments at trial, the statements were not exculpatory, although they did assist counsel in cross-examining Eric Peagler and Richmond Thomas. *See* GX-5B-VI-81-82, 87-89, 36-50, 58-59; GX-5C-VII-60-62, 87-108, 134-35.  Further, because Carmichael obtained these records in time to permit thorough and effective cross-examination, Carmichael has not demonstrated that additional motions pursuant to Rule 16(a)(1)(E), would have resulted in a different outcome. *See, e.g., United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996) ("Delayed disclosure may be grounds for reversal, 'but only if the defendant can show prejudice, e.g., the material came so late that it could not be effectively used.") (internal citation omitted); *Lindsey v. Smith*, 820 F.2d 1137, 1151 (11th Cir. 1987) (A trial is not so fundamentally unfair as to warrant habeas relief merely because the defense is impaired by the late disclosure of evidence. "Rather, habeas

197

relief is justified only upon a showing that the impairment to the defense affected

the outcome of the trial."). Because the documentary evidence to which

Carmichael refers was disclosed in time for him to make effective use of it,

Carmichael has not demonstrated prejudice from counsel's failure to file any

further Rule 16 motions.

Carmichael has not demonstrated that any failure of counsel to file

additional motions under Rule s16(a)(1)(E) would have resulted in a trial whose

outcome would have been different. Therefore, he is not entitled to relief on this

claim. It should be denied without an evidentiary hearing.

### 22. Failing to prepare and investigate before formulating a defense strategy based on the Government's "long-investigation-without-charge" strategy

Carmichael claims that his counsel were ineffective in the strategy they

chose to pursue in his case, because that strategy was formulated without the

necessary preparation and investigation. *See* Carmichael Memorandum of Law at

24-25. Neither he nor his counsel state exactly what went into their preparation for

trial or how they determined to pursue the defenses that they did. Carmichael

describes counsel's strategy as law enforcement's failure to bring about criminal

charges for several years. *Id.* at 24. Counsel for Carmichael do not identify their

strategy in their affidavits. *See* James Affidavit; Wayne Affidavit; Chartoff

Affidavit; Brunson Affidavit. At trial, however, when the Court questioned

198

Carmichael's counsel about their strategy they assured the Court that they had a strategy, and they were pursuing it. *See* GX 5B-V-37-38, 40-46, 4-6, 9-12.

"It is almost axiomatic by now that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' but those made after 'less than complete investigation' are reasonable *only* to the extent that reasonable professional judgment supports the limitations on investigation." *Ferrell v. Hall*, 640 F.3d 1199, 1226 (11th Cir. 2011), *citing Strickland v. Washington*, 466 U.S. at 690-91, 104 S. Ct. 2052; *accord, Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1240 (11th Cir. 2010). Moreover, "because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy," because "[t]here are countless ways to provide effective assistance." *Id*. at 1315 n.4 (internal citation and quotation marks omitted). "No lawyer is expected to have considered all the ways." *Id*.

"When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Id*. at 1316. The "strong reluctance to second guess strategic decisions is even greater

199

where those decisions were made by experienced criminal defense counsel" and

that "the more experienced an attorney is, the more likely it is that his decision to

rely on his own experience and judgment" in selecting a defense is reasonable.

*Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998).

Finally, the Eleventh Circuit has held that "[t]he law must allow for bold and

innovative approaches by trial lawyers. And the Sixth Amendment is not meant to

'improve the quality of legal representation,' but 'simply to ensure that criminal

defendants receive a fair trial.'" *Chandler v. United States*, 218 F.3d at 1317

(internal citation omitted).

In this case, Carmichael retained four experienced criminal defense

attorneys and they devised strategies to present at trial. Ms. Wayne, lead counsel,

had over 25 years in representing individuals accused of crimes. *See* Wayne

Affidavit at 5, ¶ 24. As noted, counsel assured the Court they had strategies for

Carmichael's defense, and they appeared to pursue them throughout Carmichael's

trial. *See* GX 5B-V-37-38, 40-46; GX 5C-VII 4-6, 9-12. Although the Court, at

points, questioned that strategy, the strategy chosen was chosen by experienced

defense counsel, and Ms. Wayne, lead counsel, represented to the Court that she

had been representing criminal defendants for a long time, and, in her experience,

it had appeared to have been a successful way to deal with cases. *See* GX 5B-IV-

271. She explained that "the quality of evidence and the lack of evidence which

goes to the investigation and how it was compromised, or the integrity of the investigation, goes to reasonable doubt." *Id.* She further argued that the evidence concerning the closing of the previous investigation went to the bias and integrity of the investigation in the case before the jury; it indicated a desire to get Carmichael at any cost." *Id.* at 70-71.

Ms. Chartoff also told the Court about the defense strategy, stating "we had to go in and create an opening argument and a defense strategy assuming that the government was going to put on evidence of a conspiracy lasting from 1993 to 2003. We had to come up with a strategy to address that. And that is what we did." *See* GX 5B-V-45. The strategy devised, especially in light of lead counsel's experience and the 10-year conspiracy charge, is strongly presumed to have been a reasonable trial strategy. Carmichael has not overcome that strong presumption that it was.

Carmichael has also not demonstrated that some other defense strategy would have worked better or that with more investigation or preparation in a different direction, one would have even been discovered and worked. In other words, he has not demonstrated that but for the chosen defense strategy, the outcome of his trial would have been different. The burden of proving prejudice, like that of proving deficient performance, is on him. He has failed to meet his burden on this claim of ineffective assistance of counsel.

201

Because counsel in their affidavits have not specifically identified what their trial strategies were, nor what investigation and preparation they did before selecting those strategies, an evidentiary hearing might be deemed necessary. However, because Carmichael has not alleged what prejudice resulted from the failure to chose some other defense strategies at trial, or what defense strategies would have been discovered through additional investigation and preparation, this Court should reject the claim for Carmichael's failure to establish prejudice, without an evidentiary hearing.

23.    **Failing to adequately investigate the case, review available information, and properly use favorable evidence to formulate a defense strategy and failing to effectively defend Carmichael at trial**

Carmichael next argues that is counsel were ineffective for failing to adequately investigate his case, review available information, and properly use favorable evidence to formulate a defense strategy, and failing to effectively defend him at trial. *See* Carmichael Memorandum of Law at 24-25. He argues that counsel's defense strategy was fundamentally flawed and that it opened the door for the Government to introduce unduly prejudicial evidence. *Id.*

Specifically, Carmichael alleges the defense strategy led to the introduction of testimony by DEA Agent Tom Halasz that a previous investigation of Carmichael had ended when a cooperator in that investigation, Moses Williams, stated that he could not continue to cooperate because Carmichael would kill him.

202

*See* GX 5B-IV-255-68, 264-65, 268-76, 278.  However, contrary to his contentions

in his memorandum of law, the Court did not only admit the evidence about Moses

Williams's statement because Carmichael's counsel opened the door.  *Id.* at 264.

The Court also held that Moses Williams was a coconspirator in the case before it

and the evidence would come in anyway.  *Id.* at 278.  Counsel did fight vigorously

for a mistrial because of the statement and to have the statement by Agent Halasz

struck, but they were unsuccessful.  Their strategy was not necessarily ineffective

simply because it led to testimony that might not otherwise have been admitted.

As the Court held, it was admissible; the defense strategy was not a failure simply

because this one piece of evidence was admitted.

Carmichael also argues that in pursuing the defense strategy that they did,

counsel also failed to present evidence that would have been helpful to the defense

chosen.  He uses as an example, evidence that Assistant United States Attorney

Louis Franklin authorized the closing of a previous IRS investigation of

Carmichael on the grounds the evidence did not support a charge that drug activity

was occurring.  *See* Carmichael Memorandum of Law at 25.  Without knowing

where Carmichael obtained this alleged evidence or whether the form of the

evidence would have been admissible, or even whether when the whole story were

revealed, if the testimony of AUSA Franklin would even be helpful to Carmichael,

it cannot be said that Carmichael has demonstrated that counsel acted

professionally unreasonably in not introducing this evidence at trial.  Although on

its face, it sounds like it might have been consistent with Carmichael's defense,

there may have been reasons the "evidence" could not be used and/or there were

strategic reasons for not pursuing it.

Finally, Carmichael does not point to any specific failures of counsel with

regard to their investigation of the case or their review of available information in

developing the defense strategy.  Therefore, he has not shown deficient

performance in the investigation and review of available information.  It is

presumed counsel did what they were required to do in this regard, and because

Carmichael has not rebutted this presumption, he cannot obtain relief on this claim.

To obtain relief under *Strickland*, Carmichael must show both that his

counsels' performance in devising a defense strategy and that the deficient

performance let to prejudice, specifically prejudice resulting in a different outcome

in his trial.  He has wholly failed to demonstrate that prejudice.  Therefore, this

claim of ineffective assistance of counsel should be denied without an evidentiary

hearing.

### 24.    Pursuing a fundamentally flawed defense strategy that had no basis in the law and that opened the door for unduly prejudicial evidence by the Government

The next claim of ineffective assistance of counsel is related to the two

preceding it.  Carmichael again claims that his counsel were ineffective for pursing

the defense strategy that they did, alleging the strategy was fundamentally flawed

and without basis in the law. *See* Carmichael Memorandum of Law at 26. He also

again argues that pursuing this line of defense resulted in the introduction of

unduly prejudicial evidence by the Government. *Id.* Carmichael distinguishes this

claim from the previous one stating that "this claim specifically addresses the

consequences of counsels' flawed strategy rather than counsels' deficient

performance researching, investigating and presenting the defense." *Id.*

As noted in subparts 22 and 23, above, counsels' defense was a strategic

decision that is virtually unchallengeable. It was not fundamentally flawed; Ms.

Wayne had pursued a similar defense in other cases and it had had some success.

*See* GX 5B-IV-271. The fact that it did not succeed in Carmichael's case is due

more to the overwhelming evidence the Government presented against him then

anything counsel could have or did do. Counsel has again failed to demonstrate

deficient performance coupled with prejudice. Therefore, this claim of ineffective

assistance of counsel should be denied without a hearing.

> **25.  Failing to submit compelling evidence at trial, for example,
> statements by Assistant United States Attorney Louis
> Franklin that there was no evidence of illegal drug activity
> by Carmichael at the time of the previous IRS investigation of
> Carmichael, and documents in support**

Carmichael also criticizes his counsel for failing to submit compelling

evidence at trial and he gives as an example alleged statements by Assistant United

States Attorney Louis Franklin that there was no evidence of illegal drug activity by Carmichael at the time of the previous IRS investigation of Carmichael, and documents in support. See Carmichael Memorandum of Law at 26. Again, without knowing where Carmichael obtained this alleged evidence or whether the form of the evidence would have been admissible, or even whether when the whole story were revealed, if the testimony of AUSA Franklin would even be helpful to Carmichael, it cannot be said that Carmichael has demonstrated that counsel acted professionally unreasonably in not introducing this evidence at trial. Although on its face, it sounds like it might have been consistent with Carmichael's defense, there may have been reasons the "evidence" could not be used and/or there were strategic reasons for not pursuing it. This Court is to presume that counsel made a strategic reason not to pursue this "evidence," and Carmichael has not rebutted this presumption. He needs to present this Court with more than a bare allegation to receive an evidentiary hearing on the issue.

Further, Carmichael has not demonstrated that but for counsel's failure to introduce this "evidence" at his trial, the outcome of his trial would have been different. He must do so to obtain relief from this Court. This claim of ineffective assistance of counsel does not entitle Carmichael to an evidentiary hearing.

**26.    Failing to interview and call to testify favorable witnesses in
defense of Carmichael, specifically, Sandra Jones; Moses
Williams; two witnesses, Arthur Covane and Willie Dewhart,
who would have impeached and discredited the testimony of
Eric Peagler; Joseph "Pie" Lacey to refute the testimony of
Jimmy Timmons; and Bruce Maddox to testify about
Sandra Jones's drug charges**

According to Carmichael, his counsel also failed to interview and call

favorable witnesses in his defense, and he identifies Sandra Jones, Moses

Williams, Arthur Covane, Willie Dewhart, Joseph "Pie" Lacey, and Bruce Maddox

as witnesses they should have called in his defense. *See* Carmichael Memorandum

of Law at 27-30.  Although Ms. James does not specifically state that she or one of

her cocounsel did interview the witnesses identified by Carmichael, she does

provide strategic reasons for why they were or were not called. *See* James

Affidavit at 9-10, "Paragraph 21."  Sandra Jones was not called as a witness

because she "had a substance abuse problem and calling her did not seem like a

good idea as information in reference to her prior arrest came in through other

sources." *Id.*  And, although counsel does not mention it in her affidavit, defense

counsel knew that there were allegations that Carmichael had beaten Sandra Jones.

This evidence was the subject of a motion in limine by defense counsel.  See GX

3M; GX 4T at 44.  The Government agreed not to present that evidence in its case-

in-chief and did not oppose the motion in limine, unless Carmichael made that

evidence relevant. *See* GX 4T at 44.  Presenting Sandra Jones as a witness would

207

have been just the thing to make the evidence relevant. So counsel had a

reasonable strategic basis for not calling Sandra Jones as a witness for Carmichael.

As an initial matter, "[c]ounsel, of course, is never required to call every

possible witness" for the defense." *See Griffin v. Wainwright*, 760 F.2d 1505,

1512(11th Cir. 1985) (per curiam), *vacated on unrelated grounds*, 476 U.S. 1112,

106 S. Ct. 1964 (1986); *accord*, *United States v. Best*, 426 F.3d 937, 945 (7th Cir.

2005) ("The Constitution does not oblige counsel to present each and every

witness that is suggested by him."); *Valenzuela v. United States*, 261 F.3d 694, 700

(7th Cir. 2001) (same). "A lawyer's decision to call or not to call a witness is a

strategic decision generally not subject to review." *Valenzuela v. United States*,

2610 F.3d at 699-700, *citing United States v. Williams*, 106 F.3d 1362, 1367 (7th

Cir. 1997).

As to Moses Williams, the Government intended to call Mr. Williams as a

witness at trial, as Mr. Williams could testify about Carmichael's involvement in

the marijuana conspiracy and about his fear of snitching on Carmichael. *See* GX

5B-IV-255, 316-27. During voir dire of Mr. Williams, however, outside the

presence of the jury, Mr. Williams did not testify in accordance with what he

previously told the Government about Carmichael's involvement in dealing drugs

or about threats. *Id*. at 316-27. Because the Government could not ensure Mr.

Williams would not lie if put on the witness stand, it did not call him as a witness.

Carmichael now claims his counsel should have called Moses Williams as a witness.

But Moses Williams would not have made a good witness for Carmichael. During his voir dire testimony, despite being hesitant to implicate Carmichael in drug activity or that he was afraid of Carmichael, he admitted that that he told Agent Halasz in 2002 that he had heard that Carmichael was involved in drug trafficking and that he was willing to try to infiltrate that drug trafficking organization if Halasz would pay him a certain amount of money. *Id.* at 316-17. Mr. Williams told Halasz that he needed the money because he owed Carmichael money for drugs, but Williams testified what he previously told Agent Halasz was not the truth. *Id.* at 318. Mr. Williams also testified that he could have told Halasz that he was afraid to wear a wire because if Carmichael found out, Carmichael would kill Williams, but that was not a truthful statement. *Id.* at 319. This testimony would have been less than helpful to Carmichael because, the jury would perceive Moses Williams as a liar. Either he was lying to Government agents previously, for no apparent reason, or he was lying on the witness stand. Carmichael's counsel made a reasonable strategic decision not to put him on the witness stand.

Ms. James states in her affidavit that she did interview Arthur Covane, but she could not recall why he was not called, and she does not specifically recall

209

whether Carmichael ever named Willie Dewhart as a possible witness. *See* James

Affidavit at 9, "Paragraph 21." Carmichael alleges that Mr. Covane and Mr.

Dewhart would have testified that Eric Peagler was cooperating with the

Government to get a sentence reduction. *See* Carmichael Memorandum of Law at

27-28. If this Court believes it is necessary to determine why these two witnesses

were not called by the defense and to explore what these two inmates would have

said had they been interviewed pretrial and presented as witnesses in the case, this

Court should hold an evidentiary hearing to determine the truth about Eric

Peagler's testimony. However, the Government would note that Carmichael has

not demonstrated the necessary prejudice so a hearing is not required. Richmond

Thomas also testified to his involvement in transacting illegal drug business with

Carmichael and Eric Peagler. See 62-74. Although the testimony of the two drug

dealers corroborated each other, Eric Peagler's testimony was not necessary to

establish that portion of the ongoing marijuana conspiracy. Therefore, even if Eric

Peagler's testimony had not testified the outcome of the trial would have been the

same, and Carmichael has not demonstrated the necessary prejudice from his

testimony.

Carmichael next argues that his attorneys should have interviewed and

called as a witness Joseph "Pie" Lacey who he says would testify that he did not

meet Sandra Jones in 2000-2001, and therefore, he could not have been buying

210

marijuana from Carmichael in 1994 as testified to by Jimmy Timmons and who could otherwise impeach Jimmy Timmons's testimony. *See* Carmichael Memorandum of Law at 29. Carmichael has not provided an affidavit from Mr. Lacey, and his claim as to what Mr. Lacey would testify, if called, is mere speculation.

Carmichael finally argues his counsel should have interviewed and called Bruce Maddox as a witness for the defense. *See* Carmichael Memorandum of Law at 29. They did. Although they did not question Mr. Maddox about Sandra Jones's arrest while driving Carmichael's tractor trailer in Mississippi with a load of marijuana, Mr. Maddox would have been subject to the attorney-client privilege with regard to any communications from Ms. Jones to him that were confidential. Any other statements he might have made about anything she said in his presence would either be hearsay or, if they were statements of a coconspirator in the furtherance of a conspiracy, not helpful to Carmichael. It simply was not constitutionally unprofessional conduct for Carmichael's counsel not to further delve into Sandra Jones's drug charges in Mississippi.

Although Carmichael alleges that the testimony of the witnesses outlined above should have been presented by his attorneys, his attorneys were not required to call these witnesses in order to have rendered effective assistance of counsel. As noted, there were obvious problems with calling most of the witnesses and counsel

reasonably chose not to call them. This Court should not second-guess counsel's evidentiary decisions.

Moreover, Carmichael has not demonstrated the necessary prejudice. The only two witnesses who may have been helpful to Carmichael were Arthur Covane and Willie Dewhart, who could have impeached the testimony of Eric Peagler. However, these two inmates does not impeach the testimony of Richmond Thomas, who testified to basically the same thing. Therefore, their testimony would not affect the outcome of this case. There was no prejudice. Therefore, this Court should deny this claim without an evidentiary hearing.

### 27. Failing to properly file a motion for suppression of Carmichael's incriminating statements

Carmichael alleges that his counsel were ineffective because they failed to properly file motions to suppress his incriminating statements, the seizure of evidence allegedly used against him, and the statements of his codefendant, Freddie Williams, that he was afraid if he cooperated, his children would be killed. *See* Carmichael Memorandum of Law at 30-34. Carmichael specifically argues that counsel failed to properly litigate the motion to suppress because they did not move to suppress his December 4, 2003, statements to Agent David DeJohn, including the "you got me" statement when he went to retrieve his property; failed to move to suppress evidence about the firearm seized from his car when he was arrested on November 17, 2003; failed to argue that his stop on November 17,

212

2003, was illegal because it was not based on probable cause; failed to allege that Steven Glassroth provided ineffective assistance at the suppression hearing; failed to argue other evidence seized from his car should be suppressed because of the illegal stop; and failed to timely move to suppress the statements and reaction of Codefendant Freddie Williams after Williams's arrest when he heard Carmichael's voice at the DEA headquarters. But contrary to Carmichael's arguments in his memorandum of law, all of these issues, except one, were thoroughly raised and litigated, and relitigated, throughout pretrial proceedings and trial. *See* GX 1N; GX 1Q; GX 1Y; GX 1Z; GX 2A; GX 2K; GX 3L; GX 3S; GX 3V; GX 4E; GX 4H; GX 4I; GX 4T at 33-43, 78-81; GX 4W; GX 5A-I-13-18; GX 5A-III-320-44; GX 5B-IV-48-50, 57-58, 60-61, 64-66. It was not that the issues were not properly raised or litigated by counsel, because they were; the arguments of counsel were simply denied because they were not supported by the law and facts. *See* GX 2G; 2M; GX 5B-IV-60-61.

The only issue not raised by counsel for Carmichael was that Mr. Glassroth was ineffective at the initial motion to suppress hearing, but Carmichael does not identify precisely why Mr. Glassroth was ineffective or what he did or did not do that he should have. Mr. Glassroth challenged the stop of Carmichael and seizure of evidence by law enforcement, and he argued the statements Carmichael made to Agent DeJohn were inadmissible both because they were taken in violation of his

Fifth and Sixth Amendment rights and because they were the fruit of the poisonous tree in that they were the result of the initial illegal stop and seizure. *See* GX 1N; 1Y; 2A; 2K. These issues were rejected by the Court in a thorough order by Judge Boyd, which was adopted after a *de novo* review by Judge Thompson. *See* GX 2G; 2M. Judge Boyd properly analyzed the facts and law in reaching her decision denying the motion to suppress. Carmichael does not identify anything that Mr. Glassroth did or did not do that he should have, and for that reason, his argument fails. And because the issues were correctly decided, he cannot demonstrate prejudice from any actions or inactions of counsel.

Further, although counsel did not make a motion to suppress the statements of Codefendant Freddie Williams on Fourth Amendment grounds, Carmichael did not have standing under the Fourth Amendment to object to the statements of his codefendant, *see, e.g., United States v. Coley*, 441 F.2d 1299, 1300 (5th Cir. 1971), but those statements were properly challenged later by other counsel in the motions in limine on Fifth and Sixth Amendment grounds under *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968); *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004); and *Strickland v. Washington*, 466 U.S. 668 694 (1984). *See* GX 3L; GX 3S; GX 3V; GX 4E; GX 4H; GX 4I; GX 4T at 33-43, 78-81; GX 4W; GX 5A-I-13-18; GX 5A-III-320-44; GX 5B-IV-48-50, 57-58, 60-61, 64-66. Carmichael's counsels' actions in regard to the issues Carmichael identifies were

within the bounds of reasonable professional norms. Carmichael has not demonstrated deficient performance with regard to his suppression claims.

Carmichael has also failed to demonstrate prejudice. Both Judge Boyd, see GX 2G, and Judge Thompson, *see* GX 2M; GX 4T-33-43, 78-81; GX 4V, correctly ruled on the issues Carmichael identifies, and he has not demonstrated to the contrary. Carmichael has not demonstrated that but for anything counsel did not do in reference to the motion to suppress and the motions in limine, the court would have ruled differently on the issues. Therefore, he has not demonstrated the necessary prejudice, and this claim of ineffective assistance of counsel should be denied. And because no further factual development is needed to resolve the issue, the claim should be denied without a hearing.

### 28. Failing to properly file a motion for suppression of illegally seized evidence during Carmichael's traffic stop and arrest

Carmichael next makes a more particular argument with regard to the motion to suppress, specifically arguing that his counsel were ineffective because they did not object to his arrest on the grounds that there was no legal basis for his arrest and that the firearms seized, the currency seized, and the documents seized from his vehicle were illegally obtained. *See* Carmichael Memorandum of Law at 32-33. Counsel did not, in fact, argue in the motion to suppress or at the motion to suppress hearing that Carmichael had not been legally arrested. *See* GX 1N. Their failure to do so did not, however, constitute deficient performance, because there

was sufficient evidence presented to establish probable cause for Carmichael's arrest.

Carmichael was initially arrested – after he was stopped based on reasonable suspicion that he was involved in marijuana trafficking, *see* Judge Boyd Recommendation Of The Magistrate Judge, GX 2G at 10-14 – because several firearms were found in his vehicle, and a records check showed that Carmichael was a convicted felon, *see* GX 5B-IV-171-77. That firearms charge was later dropped, because it was established that Carmichael had received a pardon on that conviction and his right to carry a firearm had been restored. *Id.* Assuming Carmichael is asserting that it is because the arrest on these charges later proved unfounded that his arrest should have been challenged, Carmichael has not shown that counsel was deficient for not pursuing this issue in the motion to suppress.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.

2002*); accord, Coffin v. Brandau*, 642 F.3d 999, 1006-07 (11th Cir. 2011).  A

court looks to the totality of the circumstances to determine if probable cause

exists.  *See United States v. Gonzalez*, 969 F.2d at 1002.  At the time of

Carmichael's arrest, law enforcement officers knew that he was a felon, based on

reasonably trustworthy information in their possession, and they knew he

possessed firearms.  Therefore, they had probable cause to arrest him for being a

felon in possession of firearms.  The fact that law enforcement later obtained

information indicating that Carmichael's rights to possess firearms had been

restored by a pardon, does not change the analysis concerning the reasonableness

of their initial actions.  Therefore, because there was no legal basis for an argument

that Carmichael's initial arrest was unlawful, and therefore the seizure of evidence

from him was unlawful, Carmichael's counsel did not perform deficiently in not

raising this issue.

Further, because there was no merit to the argument, Carmichael has

demonstrated no prejudice.  Therefore, this claim of ineffective assistance of

counsel should be denied.  And because no further factual development is needed

to resolve the issue, the claim should be denied without a hearing.

### 29. Failing to properly litigate the motion to suppress and develop relevant facts in the hearings on those motions on certain incriminating statements that Carmichael made to DEA agents and evidence seized during his stop and arrest

Carmichael's next argument concerning the motion to suppress is that it was

not properly litigated and relevant facts were not properly developed at the motion

to suppress hearing on certain statements that Carmichael made to DEA agents and

on the evidence seized during his stop and arrest. *See* Carmichael Memorandum of

Law at 30-31. Carmichael does not identify what facts were not developed, nor

what about the suppression hearing litigation was not done properly. As noted

above, counsel for Carmichael did litigate all of the issues surrounding his initial

stop, arrest, seizure of evidence, and statements to DEA agents thoroughly, both

through the motion to suppress and through motions in limine. *See* GX 1N; 1Y;

2A; 2K GX 3L; GX 3S; GX 3V; GX 4E; GX 4H; GX 4I; GX 4T at 33-43, 78-81;

GX 4W; GX 5A-I-13-18; GX 5A-III-320-44; GX 5B-IV-48-50, 57-58, 60-61, 64-

66. Carmichael has simply not identified what more, or, different, counsel could

have done that would have altered the outcome of the Court's decisions on these

issues, nor that the decisions would have been altered. Therefore, he has failed to

demonstrate deficient performance or prejudice, and this claim of ineffective

assistance of counsel fails. And because no further factual development is needed

to resolve the issue, the claim should be denied without a hearing.

### 30.    Failing to seek to re-open the suppression hearing based on Counsel Steve Glassroth's ineffective assistance

Another issue Carmichael raises with regard to the motion to suppress is that

his counsel, Lisa Wayne, was ineffective for failing to seek to re-open the

suppression hearing based on Counsel Steve Glassroth's ineffective assistance. *See* Carmichael Memorandum of Law at 32. Although counsel for Carmichael did not seek to reopen the motion to suppress proceedings to have the Court further analyze the admissibility of Carmichael's "you got me" statement to DEA agents on December 4, 2003, in light of Mr. Glassroth's alleged ineffective assistance of counsel in permitting Carmichael to retrieve his property unaccompanied by counsel, Carmichael's counsel did raise this issue pretrial and during trial in motions in limine, and the issue was thoroughly litigated. *See* GX 3L; GX 4T at 33-43; GX 4W; GX 5B-IV-150-52; GX 6C. Counsel's strategic decision to raise the Sixth Amendment ineffective assistance of counsel issue in a motion in limine instead of in a motion to re-open the motion to suppress was a reasonable professional decision.

Further, Carmichael cannot demonstrate prejudice, because the issue was, in fact, thoroughly litigated, the Court addressing and deciding all of the issues counsel raised about Mr. Glassroth's representation as it related to the "you got me" statement Carmichael made on December 4, 2003. *See* GX 6C. And although the Court did state that one of the reasons it was denying the motion in limine in its entirety was that the issues "could have been raised before Magistrate Judge Boyd, but they were not," the Court went on to also deny the motion because "it had

heard the additional evidence and it thought Judge Boyd's decision was still correct." *See* GX 5B-IV-151-52.

Further, in its written order on the issue, the Court noted that the appropriate venue for raising the ineffective assistance of counsel claim – for raising almost all ineffective assistance of counsel claims – was in a § 2255 proceeding like this one. *See* GX 6C at 11. Therefore, it is highly unlikely that the Court would have re-opened the motion to suppress hearings to address the ineffective assistance of counsel claims. It also held that "based on the evidence in the records, … his Sixth Amendment right to effective assistance of counsel was [not] violated in any way." *Id*. Therefore, the Court alternatively resolved the issue without re-opening the suppression proceedings, so Carmichael had this issue addressed and decided, so he suffered no prejudice from counsel's alleged failure. Without demonstrating prejudice, Carmichael cannot obtain relief on an ineffective assistance of counsel claim, and this claim should be denied. And because no further factual development is needed to resolve the issue, the claim should be denied without a hearing.

### 31. Failing to properly and timely move to suppress statements and gestures made by Codefendant Freddie Williams while he was being booked

Finally, Carmichael's last claim of ineffective assistance related to the motion to suppress is that counsel were ineffective for failing to properly and

timely move to suppress the statements and gestures made by Codefendant Freddie

Williams while he was being booked. *See* Carmichael Memorandum of Law at 33-

34. At trial, the Government was permitted to elicit testimony from two law

enforcement agents (DEA agents Greenwood and Halasz) to the effect that, when

Codefendant Freddie Williams was sitting in an interview room after his arrest and

he heard Carmichael's voice, he stated that he could not cooperate with law

enforcement because his children would be killed. Counsel for Carmichael did

both properly and timely object to the admissibility of Codefendant Freddie

Williams's statements.

Apparently, Carmichael is arguing that counsel's motions in limine and

objections to Codefendant Williams's statements, *see* GX 3S; GX 4T at 78-81;

4W; GX 5B-IV-48-50, 57-58, 60-61, 64-66, were not proper and timely because

they were not raised in the motion to suppress. However, as already noted, raising

the issue in a motion to suppress would not necessarily have been the proper venue

to raise the issue because Carmichael did not have standing to object Codefendant

Williams's statements on violations of his rights by law enforcement officers, and

suppression hearings usually address the exclusion of evidence under the court-

devised exclusionary rule due to Fourth Amendment search and seizure violations

or Fifth and Sixth Amendment violations of the right to counsel and right to remain

silent. Instead, the issue here was a whether Carmichael's rights to confrontation

under the Fifth Amendment would be violated by the admission of evidence. The

issue was not one of a violation of Carmichael's constitutional rights by law

enforcement and thus the exclusion of evidence for violation of those rights, but

instead whether the admission of evidence itself violated Carmichael's

constitutional right to confrontation under the Sixth Amendment. It was not

professionally unreasonable for counsel to seek to have this evidence excluded

through a motion in limine, and then to object at the time the testimony was

introduced. In fact, a motion in limine is an appropriate method for seeking to

keep out evidence when the admission of the evidence would violate the

constitutional rights of a defendant. *See, e.g., generally, United States v. Schwartz*,

541 F.3d 1331, 1340 n. 33(11th Cir. 2008) (*Bruton* confrontation right error raised

via a pretrial motion in limine); *United States v. Villegas-Tello*, No. 08-13325, 319

Fed.Appx. 871, 872, 877 (11th Cir. Mar. 19, 2009) (same). And objection when

the evidence is offered is required to preserve the issue for appellate review. *See*

*United States v. Khoury*, 901 F.2d 948, 966 (11th Cir. 1990). Counsel made those

necessary objections. There simply was no professional error in the manner in

which counsel approached this issue, and this ineffective assistance of counsel

claim must fail on the performance prong.

Again, too, Carmichael has failed to demonstrate prejudice. The

admissibility of the statements of Codefendant Williams were litigated fully at trial

and properly resolved by Judge Thompson. *See* GX 4T78-81; GX 5B-IV-48-50,

57-58, 60-61, 64-66. Although Carmichael alleges to the contrary, he has not

demonstrated how Judge Thompson's findings, analysis, or holdings were wrong.

Because Carmichael has demonstrated neither deficient performance or prejudice,

this claim of ineffective assistance of counsel should be denied. No further factual

development is needed to resolve the issue either, thus the claim should be denied

without a hearing.

### 32.    Failing to reconsider trial strategy in light of events that occurred during trial

Before trial, Carmichael set up an internet website that became the subject of

publicity and litigation in this case. *See* GX 2S; GX 3D, GX 3Y. The website was

a source of contention for the Government and its witnesses, the Government

alleging it was being used for intimidation of possible witnesses and law

enforcement officers in the case. *See* GX 2S. Although Carmichael established

the website and refused to take it down, and the Court refused to order it taken

down, *see* GX 2S; 3Y, when the time arrived for trial, he made a motion to exclude

any testimony about the website, *see* GX 3N. After a hearing on the motion to

exclude, *see* GX 4T-64-68, the Court granted Carmichael's  motion to exclude the

evidence, *see* GX 4T-64-68; GX 4V. Carmichael now alleges that his attorneys

should have changed strategy during the trial and attempted to have evidence about

the website admitted during trial for three reasons. *See* Carmichael Memorandum

223

of Law at 34-37. He claims their failure to so was ineffective assistance of counsel.

First, Carmichael alleges that it was discovered during voir dire of the jury that "most, if not all, of the jurors had some exposure to the website via media coverage prior to Movant's criminal trial". *See* Carmichael Memorandum of Law at 35. That allegation is simply false, and is not borne out by the record in the case. *See* GX 5A-I-19-301. Furthermore, if this fact were true, then it would not have helped Carmichael's case; to the contrary, it would have hurt his case for the potential jurors to know that he was intimidating or threatening witnesses in the case. That is the very reason Judge Thompson kept the jury from being exposed to that information. *See* GX 2S; GX 4T-64068. Counsel would have acted professionally unreasonably if they had changed their strategy and attempted to get this information before the jury. And moreover, Carmichael has not explained how putting this prejudicial evidence before the jury would have helped him.

Next, Carmichael alleges that his counsel, Mr. Brunson, asked Sherry Pettus during cross-examination why she hated Carmichael, "which immediately brought the 800 pound gorilla of the website to jurors; attention. *See* GX 5B-V-50-132. But Carmichael does not have the order of events quite right. Instead, the Government attempted to elicit testimony from Ms. Pettus about why she was living in hotels in Montgomery after she met with DEA Agent David DeJohn about

the Carmichael case, and Mr. Brunson objected to that question on the grounds it

was an attempt to elicit testimony about the website and Ms. Pettus's fear or "hate"

of Carmichael as a result., testimony that the Court held inadmissible pretrial  *Id.* at

56.  Voir dire was conducted outside the presence of the jury to determine what

Ms. Pettus's answer to the question would be.  *Id.* at 58-66.  During that voir dire,

the Court instructed Ms. Pettus not to mention anything about the website in front

of the jury.  *Id.*  It also informed the Government that any testimony from Ms.

Pettus about threatening phone calls she may have received were inadmissible

hearsay.  *Id.* at 61.  The Court did state that it would permit the Government to ask

Ms. Pettus the sole question if she told Agent DeJohn that she had been threatened,

but when the Government attempted to elicit that information from Ms. Pettus, the

Court sustained counsel's objection.  *Id.* at 63-68.

Then, during his cross-examination of Ms. Pettus, Mr. Brunson did ask Ms.

Pettus whey she hated Mr. Carmichael at the time she testified before the grand

jury and said what she said what she did to the grand jury, and she responded,

"Because he had put up a website, and I was on the website."  *Id.* at 193.  The

Court then excused the jury because of the mention of Carmichael's website and

had Mr. Brunson voir dire Ms. Pettus outside the presence of the jury about why

she hated Carmichael around the time the grand jury met.  *Id.* at 193-99.  Before

that voir dire was conducted, Mr. Brunson informed the Court that he did not

know that Ms. Pettus would answer his question by mentioning the website; he thought she was going to say she hated Mr. Carmichael at that time because "she had taken some of the money out of the bank account as her own, which she had, and virtually taken some of the money in this account for herself. And that they had a falling out. I had no idea the website issue would come up. I thought she had been admonished about that." *Id.* at 194. The Court noted that it had admonished the witness not to mention the website. *Id.* at 194. When the Government requested permission to question Ms. Pettus further about the website and how it affected her relationship with Carmichael, the Court found the prejudice outweighed the probative value and it did not allow the Government to explore that issue with her. *Id.* at 198-99.

During redirect of Ms. Pettus, Ms. Pettus lost her composure and the Court took a brief recess to permit her time to calm down. *Id.* at 204. During that recess, Mr. Brunson informed the Court that, during this cross-examination of Ms. Pettus, he wanted to question her about another sworn statement that she made that was inconsistent with her grand jury testimony, but he did not want by doing so to open the door to questioning by the Government about Carmichael's website. *Id.* at 206-10. After hearing from both the Government and defense counsel, the Court held that Mr. Brunson could cross-examine Ms. Pettus on her inconsistent statement, but the Government could not question her about the

226

website, finding again that evidence of the website was so prejudicial that he did not think is probative value was outweighed by that prejudice. *Id.* at 210.

Carmichael seems to argue that Mr. Brunson acted unprofessionally in asking a question he did not know the answer to, but an attorney cannot ever be certain of the answer a witness will give in response to a question asked by the Court. Especially in light of the Court's admonishment to Ms. Pettus not to mention the website, the question Mr. Brunson asked about she hated Carmichael expecting her to admit to wrongdoing Ms. Pettus herself admitted committing against Carmichael, the question was a reasonable one that would have been effective, had Ms. Pettus not ignored the Court's admonishment.[4]   Mr. Brunson did not act unprofessionally with respect to this claim.

Lastly, Carmichael argues that his counsel should have changed their trial strategy about exclusion of the website evidence after Agent DeJohn filed the lawsuit against Carmichael and one of his former and two of his current counsel based on their posting his photograph and other personal information on Carmichael's website. *See* Carmichael Memorandum of Law at 35.  He bases this

---

[4] In support of his contention that Mr. Brunson acted professionally unreasonably in asking Ms. Pettus why she hated Carmichael at the time she testified before the grand jury, Carmichael cites the Court's comment that it "actually thought she was going to give it, and I was curious as to why you were giving it." *Id.* at 197-98. But the Court did know when it made that comment that Mr. Brunson had other information about why Ms. Pettus hated Carmichael and that he was seeking another answer based on information he possessed that Ms. Pettus was in a disagreement with Carmichael over money she owed him. The fact that the Court might have made the comment it did, does not establish that Mr. Brunson did not act reasonably in expecting another answer, especially when the Court had instructed Ms. Pettus not to mention the website.

argument on the Court's suggestion, during a discussion outside the presence of

the jury after counsel discovered the lawsuit had been filed, that counsel might

want to reassess their strategy. *See* GX 5C-VII-262-82; 348-51. Instead of

considering introducing evidence concerning the website, a move that would have

presented even more evidence of Carmichael's dangerousness, counsel for

Carmichael reasonably decided to move to have Agent DeJohn's testimony

stricken from the record, for the Court to grant a mistrial, or for the Court to

permit counsel to withdraw from the case. *Id.* at 264, 267, 343-44, 348-51.

These requests were all denied. *Id.*

Carmichael's counsel simply acted within the bounds of reasonable

competent assistance with regard to the website, at least as far as their actions

were concerned after the damage had been done by Carmichael's posting of the

website in the first place. Despite Carmichael's arguments in his brief, additional

evidence about the website, while it might have shown that Agent DeJohn had a

reason to be biased against him, would also have shown the jury that Dectitive

DeJohn had reason for that bias, and that reason was that Carmichael had

threatened him by putting his photograph and personal information on a website

in an attempt to intimidate him and others.[5] To that point in the trial, all the jury

---

[5] *See, e.g.,* GX 5C-VII-348 (THE COURT: ... "... But when the Government first asked me to keep it out I was
moving cautiously and I almost decided to let it in because I really couldn't think of an unfair reason to keep it out.
It's just pure evidence, and it is evidence of intimidation. I think you have a constitutional right to put it up, which I
wrote about, but you have to live with those results, too.... I'm not saying that I necessarily would draw the

had heard was that there was a website. There was no evidence before it that Carmichael established the website, what the contents of that website were, the reactions of individuals identified on the website to their personal information being placed on the website, etc. All of that prejudicial information more likely than not would have further prejudiced the jury against Carmichael, not helped him obtain a not guilty verdict, and counsel were reasonable to think that was the more likely outcome. They simply did not act unprofessionally in continuing to seek to keep evidence of the website from the jury.

Further, Carmichael cannot demonstrate prejudice from counsels' failure to change their strategy from excluding evidence of the website to one of presenting the information to the jury. To the contrary, and as already noted, the details concerning the website were highly prejudicial to Carmichael, and that is why his counsel fought so hard to have that evidence excluded. Carmichael has not and cannot show that, but for counsel's failure to change their strategy to include the presentation of evidence of the website, the outcome of his trial would have been different, he would have been found not guilty. Therefore, this claim of ineffective assistance of counsel should be denied without an evidentiary hearing.

---

conclusion that it's intimidation, but I think it could come in to show he put those agents up on it and the jury can draw its own conclusions. I just think it's evidence. I didn't say it was conclusive evidence.").

### 33.   Susan James labored under a conflict of interest that adversely affected Carmichael's case

Carmichael alleges that Susan James, one of his attorneys labored under a conflict of interest during the time she was representing Carmichael and he was thereby denied his Sixth Amendment right to conflict-free counsel. *See* Carmichael Memorandum of Law at 37-40. Carmichael alleges that Ms. James's prior representation of Eric Peagler created an actual conflict of interest for her in representing Carmichael in this case, and that it affected her representation of him in that she did not thoroughly cross-examine Mr. Peagler about his prior criminal history or the fact he was testifying to receive a reduced sentence in another case. *Id.* Carmichael has not met his burden of proof on this claim and it should, therefore, be denied.

In *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708 (1980), the Supreme Court held that the simultaneous representation of defendants violates the Sixth Amendment right to counsel, if the petitioner establishes that (1) an actual conflict of interest exists, and (2) that conflict adversely affected his lawyer's performance. "A mere possibility of a conflict of interest does not rise to the level of a sixth amendment violation." *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987). "According to *Cuyler*, a conflict must be actual, not merely speculative; the mere possibility of a conflict does not constitute a Sixth Amendment violation." *Ferrell v. Hall*, 640 F.3d 1199, 1244 (11th Cir. 2011).

230

In *Freund v. Butterworth*, 165 F.3d 839, 858-59 (11th Cir. 1999) (en banc),

the Eleventh Circuit agreed that the *Cuyler* test for a Sixth Amendment violation

based on a conflict of interest applied in the successive representation context, *id.*

at 860, and it explained what an actual conflict meant in that context, *id*. at 859-60.

The Court explained that an actual conflict of interest exists when an attorney has

inconsistent interests that arise from the previous representation and the current

representation. *Id*. at 859. "In some circumstances, a defense lawyer's prior

representation of a witness can give[] rise to an actual conflict of interest…. But

the absence of simultaneous representation is a significant factor; generally, it is

more difficult to prove that successive representation caused an actual conflict of

interest than that simultaneous representations did so." *Smith v. White*, 815 F.2d at

1405.

In *Freund*, the Court further described a petitioner's burden of proof: "In

order to prove that an 'actual conflict' hindered petitioner's lawyer's performance,

petitioner 'must make a factual showing of inconsistent interests' or point to

'specific instances in the record' to suggest an actual impairment of his or her

interests." *Id., citing Smith v. White*, 815 F.2d 1401,1404 (11th Cir. 1987). The

Court explained:

> "Generally, it is more difficult to prove that successive representation
> caused an actual conflict of interest than that simultaneous
> representation did so." … At a minimum, petitioner must show that
> *either* (1) counsel's earlier representation of the witness was

231

substantially and particularly related to counsel's later representation
of [petitioner], *or* (2) counsel actually learned particular confidential
information during the prior representation of the witness that was
relevant to [petitioner's] case. … Even proof of *both* substantial
relatedness and confidential information, however, may not
necessarily be enough to demonstrate "inconsistent interests" in a
successive representation case."… The situation may call for "other
proof of inconsistent interests."… Overall, the "actual conflict"
inquiry is fact-specific, consistent with the petitioner's ultimate
burden "to prove that his conviction was unconstitutional."

*Id.* (internal citations omitted).

In addition to demonstrating an actual conflict, in the successive

representation situation, the petitioner must also demonstrate an adverse effect

from the successive representation. *Id.* at 860. "To prove adverse effect, a habeas

petitioner must satisfy three elements." *Id.* First, he must demonstrate that some

plausible alternative defense strategy or tactic might have been pursued had it not

been for the previous representation. *Id.* "Second, he must demonstrate that the

alternative strategy or tactic was reasonable under the facts," meaning it

"possessed sufficient substance to be a viable strategy." *Id.* (internal citations and

quotation marks omitted). And third, he must demonstrate "some link between the

actual conflict and the decision to forgo the alternative strategy of defense. In

other words, 'he must establish that the alternative defense was inherently in

conflict with or not undertaken due to the attorney's other loyalties or interests.'"

*Id.* (internal citation omitted. Prejudice is presumed, however, *only* if the

petitioner first demonstrates an actual conflict of interest.

On this sixth day of trial, one of Carmichael's attorneys, Susan James,
informed the Court that she had previously represented one of the Government's
witnesses, Eric Peagler. *See* GX 5B-VI-52-62. Ms. James told the Court that she
had represented Mr. Peagler in a federal criminal matter in 1994 related to his
parole from custody, and another attorney who shared a building with her, Jeff
Duffy – not a partner or associate of Ms. James – frequently represented Mr.
Peagler in criminal matters. *Id.* at 52. Ms. James stated that she did not know the
subject of Mr. Peagler's testimony, so she could not determine if she had an actual
conflict of interest, but that if she did, she would need to withdraw because
Carmichael was not willing to waive any conflict of interest.[6] *Id.* at 53-54. She
also explained that Mr. Peagler had done some work around her office building, so
she had a personal relationship with him, and that she believed that both Mr.
Peagler and Carmichael would have to waive any conflict of interest. *Id.* at 58-59.

The next day, before Mr. Peagler was permitted to testify, the Court had Mr.
Peagler waive any conflicts he might have with Ms. James or Mr. Teague on the
record. See GX 5C-VII-65-67. The Court also granted Ms. James's motion in
limine that the Government not elicit any testimony from Mr. Peagler, or that

---

[6] Mr. Teague, counsel for Codefendant Freddie Williams, also previously represented Mr.
Peagler in a criminal matter, but he explored the issue and determined he did not have a conflict
of interest; he discussed it with Codefendant Williams who also saw no conflict; and
Codefendant Williams and Mr. Peagler were both willing to waive any conflict Mr. Teague
might have. *See* GX 5B-VI-54-56.

233

Peagler testify, about Ms. James's prior representation of him. *Id.* at 68. Ms. James also made certain that Carmichael was questioned on the record about whether he wanted Ms. James, as opposed to one of his other attorneys, cross-examine Mr. Peagler, and he stated he did want Ms. James to do the cross-examination. *Id.* at 68-69.

Eric Peagler, as the Government's twenty-ninth witness, a marijuana distributor in the Montgomery area, was then permitted to testify about his marijuana distributing activities with Carmichael. *Id.* at 72-124, 134. Ms. James interjected numerous objections during Mr. Peagler's testimony and conducted a thorough cross-examination of Mr. Peagler. *Id.* at 87-108, 134-35. When the Government began to elicit testimony from Mr. Peagler on redirect examination about his dealings with a person known as Big Al, who put Carmichael and Mr. Peagler together to transact some drug business, counsel for Carmichael objected on hearsay grounds; *Crawford* confrontation rights grounds; the late discovery hampered the defense's investigation and amounted to a *Brady* violation grounds; grounds it was inherently unfair and amounted to trial by ambush; and on the grounds it denied Carmichael his Fifth and Sixth Amendment rights. *Id.* at 123-24. In the alternative, counsel asked that the trial be continued so that the defense could further investigate Mr. Peagler and his accusations against Carmichael. *Id.* at 125. The Court denied the motions. *Id.* The Court then ruled that Big Al was a

234

member of the conspiracy, and that the Government could elicit testimony from Mr. Peagler about transactions with Carmichael, but it could not elicit testimony from Mr. Peagler that either Big Al or Carmichael were drug dealers. *Id.* at 132-33.

First, the representations at issue here are successive representations. Mr. Peagler was Ms. James's former client. Carmichael has not demonstrated that Ms. James's previous representation of Mr. Peagler resulted in an actual conflict of interest, although Ms. James states in her affidavit that there was an actual conflict of interest that Mr. Peagler agreed to waive[7], *see* James Affidavit at 11, "Paragarph 24," but Carmichael did not.

From what appears on the record, Ms. James previously represented Mr. Peagler in a federal parole matter in 1997 that was unrelated in any way to this case. Further, to the extent that Carmichael implies that Ms. James represented Mr. Peagler in the proceedings leading to his cooperation in Carmichael's case, that is simply not true. *See* **GX** ? Mr. Duffy represented Mr. Peagler in that case. *Id.* Although Ms. James shared office space with Mr. Duffy, that did not mean any conflict he might have would be imputed to her. *See* Rules 1.9 and 1.10 of the

---

[7] Although Ms. James states in her affidavit that she did have an actual conflict of interest, "the existence of a conflict of interest cannot be governed solely by the perceptions of the attorney; rather, the court itself must examine the record to discern whether the attorney's behavior seems to have been influenced by the suggested conflict." *See United States v. Shwayder*, 312 F.3d 1109, 1119 (9th Cir. 2002) (internal citation and quotation marks omitted).

Alabama Rules of Professional Conduct. Carmichael has simply failed to

demonstrate that Ms. James's representation of Mr. Peagler was substantially – or

even remotely – related to her representation of Carmichael. Finally, even though

Ms. James allegedly knew that Mr. Peagler told others that he did not have any

personal knowledge of Carmichael's involvement in drug dealing, but was going to

testify against Carmichael anyway, Ms. James did not learn that information from

Mr. Peagler or in relation to her representation of Peagler. *See* Carmichael

Memorandum of Law at 39. Instead, she obtained that information from

Carmichael himself during her representation of Carmichael. *See* Carmichael's

Motion To Supplement Section 2255 Motion and Movant's Supplemental Section

2255 Motion To Vacate, Set Aside Or Correct Federal Sentence; Affidavit of Leon

Carmichael Sr. at 5, ¶¶ 17, 18, 19, 20; James Affidavit at 8, "Paragraph 18,"

"Paragraph 19," "Paragraph 20"

Further, after the Government made a proffer of what Mr. Peagler's

testimony would be, Ms. James did not inform the Court that she had an actual

conflict of interest as it pertained to Carmichael. *See* GX 5B-VI-55-57. Instead,

she noted Mr. Peagler's actual conflict of interest based on confidential

information she shared with him, but Mr. Peagler was willing to, and did waive

any actual conflict as it pertained to him. *Id*. at 55-59; GX 5C-VII-65-57. She

then turned to an analysis of *the potential* for a conflict of interest arising from her

previous representation of Mr. Peagler. *See* GX 5B-VI-59-60. Also, before she

began to cross-examine Mr. Peagler, Ms. James questioned Carmichael on the

record about whether he wanted Ms. James, as opposed to one of his other

attorneys, cross-examine Mr. Peagler, and he stated he wanted Ms. James to do the

cross-examination. *Id*. at 68-69.

Second, Carmichael has not demonstrated that Mr. Peagler revealed

confidential information to Ms. James during the previous representation that

affected her representation of Carmichael. There is no evidence in the record that

Ms. James used client confidences when she was permitted to represent

Carmichael after representing Mr. Peagler.

And third, Carmichael has not produced any proof of inconsistent interests

arising from the previous representation and his representation. Carmichael

speculates that Ms. James did not cross-examine Mr. Peagler thoroughly about his

previous criminal record or about fabricating testimony in his case to get his

sentence in another case reduced, but the Government established Mr. Peagler's

extensive criminal record on direct examination, *see* GX 5C-VII-70-75, and Ms.

James did thoroughly cross-examine Mr. Peagler on his efforts to get his sentence

reduced through cooperation with the Government, *see* GX 5C-VII-87-108, 134-

35, although she did not call either Mr. Covane or Mr. Dewhart as witnesses for

Carmichael.

237

Therefore, Carmichael has not demonstrated an actual conflict of interest existed in his case, only that a potential conflict existed. That potential conflict never developed into an actual conflict, and any actions or inactions of counsel with regard to Ms. James's former representation of Mr. Peagler must be examined under the general *Strickland* standard for evaluating ineffective assistance of counsel claims.

Further, Carmichael has not demonstrated that any possible conflict adversely affected his case, and he must to obtain relief on his conflict claim. He has not demonstrated that (1) some plausible alternative defense strategy would have been pursued, but for the alleged conflict; (2) that the alternative strategy was reasonable under the facts of his case; or (3) that there is some link between the conflict and the decision to forgo the alternative defense strategy. *See Freund v. Butterworth*, 165 F.3d at 860. Neither Carmichael or Ms. James allege any such other plausible defense strategy that would have been pursued but for the conflict. Because Carmichael has failed to meet the second requirement to obtain relief on his conflict of interest claim, he has failed in his burden to prove his counsel labored under an actual conflict of interest that adversely affected his defense. He is, therefore, entitled to no relief on this claim of error. No evidentiary hearing is required on this claim.

238

**34.    Trial counsel labored under a conflict of interest due to the filing
of a civil action by a key Government witness, DEA Agent
DeJohn, against counsel and that conflict adversely affected
Carmichael's criminal trial**

Carmichael also alleges that his counsel labored under a conflict of interest

because, after the close of the Government's case and near the end of the seventh

day of trial, he and his counsel found out that one of the Government's witnesses,

DEA Agent DeJohn, filed a civil lawsuit in state court against Carmichael and two

of his attorneys, Ms. James and Ms. Wayne, and his former attorney, Steve

Glassroth, that arose out of the internet website Carmichael had established in

relation to this case. *See* Carmichael Memorandum of Law at 40-44 GX 5C-VII-

262-70. Carmichael claims prejudice in two ways. First, he argues that counsel

decided to forgo additional cross-examination of Agent DeJohn in order to protect

their own interests, and Ms. Wayne encouraged him to make a statement to the

Court to take responsibility for establishing the website.

As an initial matter, DEA Agent DeJohn was the Government's twenty-

eighth witness and he testified and was cross-examined on the sixth day of trial,

before counsel even knew a lawsuit had been filed against them. *See* GX 5B-VI-

190-270, 283-363. Counsel for Carmichael, Ms. Wayne, made numerous

objections on various grounds throughout Agent DeJohn's testimony, and she

cross-examined him thoroughly. *Id.* The only reason that Agent DeJohn's

testimony was not completed that day was because defense counsel asked that the

239

Court to review his personnel file in camera and determine if there was any information in that file that could be used to further impeach him. *Id.* at 367-70. The Court agreed to look at that file. *Id.* at 70.

Before testimony began on the seventh day of trial, the Court addressed the issue of further cross-examination of Agent DeJohn, and with the agreement of defense counsel, ruled that Agent DeJohn could not be impeached with the information in his personnel file that he had smoked marijuana when he was 16 years old. *Id.* at 11-15. So, for all intents and purposes of the trial, Agent DeJohn's testimony was substantially completed when counsel discovered he had filed a lawsuit naming them as defendants.

Counsel could not have been laboring under a conflict of interest at that time because they did not even know of the lawsuit and did not know that their interests diverged from Carmichael's. Counsel only found out about the lawsuit just before the Government recalled Agent DeJohn for one final purpose, and as its last witness, to review the records that had been produced and testify about the trucks and drivers of those trucks from Multi-Investments, Inc., that had been stopped by border patrol agents in Texas in 1995 and Mississippi in 1998. *See* GX 5C-VII-271-80. It was only as the Government was about to complete its case that Carmichael's counsel found out about the civil lawsuit, near the end of the seventh day of trial. *See* GX 5C-VII-262-68.

After they discovered the lawsuit had been filed and the Court denied their motions to dismiss the indictment in this case and/or to allow Ms. Wayne and Ms. James to withdraw due to a conflict of interest, Agent DeJohn was placed back on the stand and a brief, but effective, additional cross-examination was conducted by Ms. Wayne. *Id*. at 280-82; GX 6K. After trial, the Court entered a written order finding no actual or potential conflict of interest existed between Carmichael and his attorneys as a result of the filing of the lawsuit. *See* GX 6K at 34-36. And to the extent any such conflict existed, Carmichael both created and invited that conflict by creating the website in the first place. *Id*. at 34-36.

First, there was no actual conflict of interest in this case, and Carmichael must demonstrate such an actual conflict of interest that adversely affected his lawyer's performance for this Court to presume prejudice. *See Freund v. Butterworth*, 165 F.3d 839, 858-59 (11th Cir. 1999) (en banc). If a petitioner raises a conflict of interest issue in a trial court and that court does *not* explore the issue, the petitioner need not demonstrate actual prejudice to obtain a reversal. *See Hamilton v. Ford*, 969 F.2d 1006, 1011-12 (11th Cir. 1992), *citing United States v. Cirrincione*, 780 F.2d 620, 625 (7th Cir. 1985) (no automatic reversal is required unless a trial court fails to conduct an inquiry after a timely objection; *United States v. Punch*, 722 F.2d 146, 152 (5th Cir. 1983). But where, as here, the Court

241

does explore the issue, the petitioner must demonstrate an actual conflict resulting in adverse performance. *Id.*

An actual conflict has been described by the Eleventh Circuit as requiring proof of three things: (1) that the lawyer's representation of another client is substantially related to the lawyer's representation of the defendant; (2) the lawyer obtained confidential information as a result of that other representation; and (3) other proof of inconsistent interests. *See Freund v. Butterworth*, 165 F.3d at 858. Carmichael has demonstrated none of these things, so he has failed to demonstrate an actual conflict for Sixth Amendment purposes.

Further, Carmichael has not pointed to any "specific instances in the record to suggest an actual conflict," made a "factual showing of inconsistent interests," or "demonstrated that [his] attorneys made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence that favors an interest in competition with that of the defendant." *Ferrell v. Hall*, 640 F.3d at 1244. Therefore, he has not demonstrated that any conflict adversely affected counsel's performance.

The only two things that Carmichael points to as demonstrating his counsels' interests conflicted with his are the brief additional re-cross examination of Agent DeJohn by Ms. Wayne, after the brief additional direct examination of Agent DeJohn by the Government, and the statement he made to the Court about who was

242

responsible for the website. As already noted, the brief cross-examination does

not, in light of the entire record, demonstrate counsel was adversely affected by the

news of Agent DeJohn's website lawsuit; it was reasonable and commensurate

with the direct examination. Further, Carmichael's statement, whether at the

urging of counsel or not, did not affect the outcome of his case, regardless of

whether Ms. Wayne urged Carmichael to take responsibility for the website. *See*

GX 5C-VIII-126. However, the record indicates it was at his insistence that the

statement was made. *Id*. at 125-26. Neither of these incidents alone or in

combination indicate that counsel, as a result of the filing of the lawsuit, had an

actual conflict of interest that affected their performance. Therefore, this claim

should be denied.[8]

### 35. Failing to properly object, move for a continuance, and arguing the issue related to the Government's late disclosure of discovery material and *Brady*-type evidence

Carmichael also argues that his attorneys did not properly object, move for a

continuance, or argue the issue related to the Government's late disclosure of

discovery material and *Brady*-type evidence. *See* Carmichael Memorandum of

Law at 44-45. This claim of ineffective assistance of counsel is based on what

Carmichael describes as the late disclosure of *Brady*-type evidence on Richard

---

[8] Both Ms. Wayne and Ms. James allege in their affidavits that the filing of the lawsuit had some chilling or harmful effect on their representation of Carmichael, but neither of them elaborate on how it did so, and the existing record does not support their contentions. *See* Wayne Affidavit at 5, ¶ 26; James Affidavit at 10, "Paragraph 22."

Thomas and Eric Peagler. *Id.* Carmichael argues that if counsel had argued different caselaw to the Court, the Court probably would have granted a continuance to further explore impeachment and exculpatory evidence related to the testimony of Mr. Thomas and Mr. Peagler. *Id.* This claim has no merit and does not require an evidentiary hearing to decide it.

Contrary to Carmichael's assertions, as soon as counsel became aware that the Government intended to call Eric Peagler and Richmond Thomas as witnesses, they claimed surprise and asked the Court for a continuance. *See* GX 5B-VI-53-61, 54, 57-58. The request was initially denied, but the Court agreed to consider it later. *Id.* at 61. Then, counsel revisited the issue, arguing the Government had violated its discovery obligations under the Jencks Act, 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972). *See* GX 5B-VI-75-77. In response to the argument, the Government represented that it did not have any Jencks Act material in relation to Mr. Thomas, and that it had disclosed the only *Brady* or *Giglio* material it had on him, a NCIC report of his criminal history. *Id.* at 77. The Court denied the motion under *Brady* and *Giglio*, indicating Carmichael's counsel had not produced any evidence that the Government had allegedly withheld, so it had failed to demonstrate a *Brady* or *Giglio* violation. *Id.* at 80-81. It also directed the Government to turn over any DEA-6s or any other *Brady* or *Giglio* material it had

244

on Mr. Thomas, instructing the Government to check with its agents to be certain. *Id*. at 81-82. The Government turned over a plea agreement with Mr. Thomas and a plea agreement with Mr. Peagler in cases unrelated to Carmichael's case. *Id*. at 83-84.

After the Government briefly examined Mr. Thomas further about a plea agreement he entered with the Government in an unrelated case, the Government granted Carmichael's counsel more time to investigate Mr. Thomas before having to cross-examine him. *Id.* at 83-87. It also ordered the Government to turn over to it for in camera inspection any statements made by Mr. Thomas and Mr. Peagler related to their previous convictions for their 2001 drug distribution to determine if there was any *Brady* or *Giglio* material related to this case in those statements. *Id*. at 87-89.

The next day, the Court ordered further discovery from the Government, directing the Government to the DEA-6 statements of both Peagler and Thomas to counsel for Carmichael, and the Court held, therefore, that there was no *Brady* or *Giglio* issue for the Court to decided. See GX 5C-VII-5, 10. After reviewing the documents, counsel for Carmichael, Ms. Wayne, further objected to the failure of the Government to previously disclose the statements under *Brady*. *Id*. at 23-33. As to the Thomas statement, Ms. Wayne pointed out that Mr. Thomas identified another source of marijuana coming into the Montgomery, "the Mexicans," Maria

245

Erma Lazano, Juan Ruiz, and Cesar Lazano. *Id.* at 23-28. However, the

Government argued that it was never required to turn over DEA-6 statements

themselves, and because the statements made were in relation to other drug

trafficking activity, not the crimes charged in this case, they were not exculpatory.

*Id.* at 26-28. As to the Peagler statement, counsel for Carmichael, Ms. James,

argued that the complete omission by Peagler in his statement of any mention of

Carmichael was exculpatory evidence. *Id.* at 28-31. After hearing the arguments,

the Court denied the motion to continue so counsel could further investigate and to

grant relief under *Brady*, finding "[e]ven assuming that the government failed to

turn these documents over, … in a timely manner, I don't reach that issue at this

time. All I have is speculative prejudice. This is clearly the type of matter that I

will take up on either a post-trial or 2255 later. It's not the basis for either

declaring a mistrial or anything else. It's just time to move on." *Id.* at 33. A final

objection to the admissibility of Mr. Peagler's and Mr. Thomas's testimony on the

grounds of a denial of the right to confrontation was also denied. *Id.* at 33-34.

Counsel for Carmichael did not fail in their professional obligations with

regard to this issue. A district court has the discretion to grant or deny a motion for

a continuance and it only abuses that discretion when it produces specific

substantial prejudice. *See, e.g., United States v. Douglas*, 489 F.3d 1117, 1128

(11th Cir. 2007). Carmichael has shown no such prejudice. He has not shown that

246

but for counsel trying harder or doing more, the Court would have granted him a continuance. All Carmichael has argued in his memorandum of law is that his counsel should have done; that is insufficient to establish prejudice under *Strickland*. Also, the Court's findings that the Government had not violated any of its professional obligations under Rule 16 of the Federal Rules of Criminal Procedure were correct. Carmichael's contrary assertions, based on no law or facts, is due to be rejected.

Carmichael has not demonstrated that his counsel did not do enough to procure Carmichael and his defense team more time to investigate Eric Peagler and Richmond Thomas. Their actions complied with professional norms and Carmichael has shown no prejudice. Therefore, this claim of ineffective assistance of counsel should be denied without an evidentiary hearing.

### 36. Failing to properly object to the introduction of unduly prejudicial evidence of prior bad acts

Carmichael also complains about his counsel's performance with regard to their attempts to have prejudicial information about him excluded from the trial. *See* Carmichael Memorandum of Law at 46-47. Carmichael alleges that his counsel did not do enough to prevent the Government from introducing evidence that he was unfaithful to his wife; he contributed to the delinquency of minors; and that he threatened individuals with violence if they cooperated with authorities implicating Carmichael in criminal conduct. *Id.* But Carmichael's claim is

247

completely belied by the record in this case. At every turn, Carmichael's attorneys

did everything they could to keep any prejudicial evidence from the jury, including

the evidence described. *See* GX 3M; GX 3N; GX 3O; GX 3P; GX 3Q; GX 3R;

GX 3S; GX 3V; GX 4T; GX 4W; GX 4Q; GX 4S; GX 5A-II-295-301; GX 5A-III-

4, 9-13, 14-16, 19-21, 84-86, 329-44; GX 5B-IV-48-50, 57-58, 60-66,171-76, 255-

61, 264-65, 274; GX 5A; GX 5B-V-33-48, 56-68, 102-07, 193-99, 206-10, 22-38;

GX 5B-VI-56-61, 75-77; GX 6F; GX 6G; GX 6H, *etc.* The problem for them –

and for Carmichael – was that most of that evidence was relevant evidence was

therefore admissible. Although some of it was not, counsel had that evidence that

was not relevant excluded. Carmichael cannot show deficient performance with

regard to this claim, and he has not demonstrated any prejudice due to counsel's

performance. Therefore, this claim of ineffective assistance of counsel should be

denied without an evidentiary hearing.

> **37.    Failing to inform Carmichael that the Government intended to introduce evidence against Carmichael that he had ordered the shooting of Jimmy Timmons, he was unfaithful to his wife, he contributed to the delinquency of minors, and he threatened individuals with violence if they cooperated with authorities to implicate him in criminal conduct**

Carmichael also criticizes his counsel for failing to inform him that the

Government intended to introduce evidence against him that he had ordered the

shooting of Jimmy Timmons, he was unfaithful to his wife, he contributed to the

delinquency of minors, and he threatened individuals with violence if they

248

cooperated with authorities or implicated him in criminal conduct. *See* Carmichael

Memorandum of Law at 46-47. As noted in subpart 37, above, the Government

did challenge all of the evidence that Carmichael contends it should have

challenged. He alleges in his memorandum of law that they did not inform him

that the Government intended to use such evidence against him, but he does not

assert how telling him would have made any difference in its admissibility.

Carmichael has not, in other words, demonstrated that, even if it is true counsel did

not tell him about this evidence pretrial, how he could have prevented it from being

admitted. This Court ruled on the admissibility of all of the testimony Carmichael

identifies, and he has not demonstrated any of those rulings were wrong. He

simply has not demonstrated the necessary prejudice for establishing ineffective

assistance. This claim of ineffective assistance of counsel should be denied

without an evidentiary hearing.

### 38. Calling as a defense witness IRS Agent Louie Wilson, who testified that the proceeds deposited into Carmichael's bank account were drug money and essentially that Carmichael's conduct violated the law

Next, Carmichael argues his attorneys were ineffective for calling IRS Agent

Louie Wilson as a witness because he essentially testified that the money placed

into Carmichael's bank accounts were drug money. *See* Carmichael Memorandum

of Law at 47-48. The strategy to call Agent Wilson to testify that no one, not even

an expert in such matters, could determine if the money in Carmichael's bank

accounts were drug proceeds, was not professionally unreasonable. *See* GX 5C-

VIII-6-10, 15-18. All of Carmichael's attorneys agreed with the strategy and

discussed it before it was pursued, and the strategy was discussed with Carmichael.

*See* Brunson Affidavit at 2-3, ¶ 3-5.

Further, Carmichael has not demonstrated that, but for this strategy, the

outcome of his trial would have been different. Therefore, this claim of ineffective

assistance of counsel is without merit, and it should be denied without a hearing.

### 39.   Failing to properly object, move for a mistrial, and preserve for appeal the issue of the district court's open criticism of defense counsels' performance defending Carmichael and their trial strategy

During Carmichael's trial, Judge Thompson did express some criticism's of

defense counsel's strategic decisions and performance, those criticisms always

occurring outside the presence of the jury. Carmichael alleges that his counsel

were ineffective for failing to properly object, move for a mistrial, and preserve for

appeal the issue of the district court's open criticism of defense counsels'

performance defending Carmichael and their trial strategy. *See* Carmichael

Memorandum of Law at 48-50. Carmichael alleges that the criticism by the Court

affected the morale of the defense team generally and Carmichael in particular. *Id.*

at 49. He also alleges that the criticism made Carmichael start questioning his own

counsel, "which precipitated discord and conflict, not to mention distrust and

animus among counsel." *Id.* 49-50. Three of Carmichael's four counsel, in their

affidavits, admit that Judge Thompson's criticism of their strategy and performance created discord within the defense and discouraged Carmichael. *See* James Affidavit at 12, "Paragraph 27; Wayne Affidavit at 4-5, ¶ 23-25; Chartoff Affidavit at 4, ¶ 15.

During trial, Judge Thompson did criticize counsel for Carmichael about their performance in not providing a united front in presenting their objections, causing him frustration and unduly delaying the trial, and he questioned their defense strategy, but it was always outside the presence of the jury, and it was never hostile. *See* GX 5B-IV-268-71; GX 5B-V-37-46; GX 5C-VII-136-41; GX-5C-VIII-5-38.  This criticism of defense counsel did not deny Carmichael a fair trial.

When Judge Thompsons criticized defense counsel, they did object vociferously and made motions for mistrials.  *Id.*  They did not simply let the criticism of their actions and strategy roll off of them and proceed with the trial. Counsel did not make a motion for Judge Thompson to recuse himself in light of this criticism, but it was not professionally unreasonable for counsel not to make a motion for recusal on the seventh or eighth day of trial when that motion would not have been granted anyway.  Carmichael has not demonstrated deficient performance by counsel in relation to their criticisms by Judge Thompson.

Further, Carmichael has not demonstrated any prejudice. "A trial court is required to 'exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence' in order to ensure that evidence is presented effectively for the ascertainment of the truth, time is conserved, and witnesses are protected from harassment." *United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011). The discharge of the Court's responsibility in this area necessarily entails the exercise of its broad discretion. *Id., citing Haney v. Mitzell Mem'l Hosp*. 744 F.2d 1467, 1477 (11th Cir. 1984). "The trial court abuses this discretion '[o]nly when the judge's conduct strays from neutrality,' ..., and even then only when its remarks demonstrate 'pervasive bias and unfairness' that actually prejudice a party." *United States v. Hill*, 643 F.3d at 845-46, *citing United States v. Ramirez-Chilel*, 289 F.3d 744, 750 n. 6 (11th Cir. 2002). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994).

The criticisms by Judge Thompson in this case were disapproving, but not hostile, and his frustration with defense counsel and criticism of the defense strategy did not spill over into his rulings and judgment in this case. Therefore, Carmichael has not demonstrated any prejudice. Therefore, he is entitled to no

relief on this claim. He also is entitled to no evidentiary hearing on the claim because the issue can effectively be resolved on the record before the Court.

### 40.    Failing to follow through with a motion for mistrial and to recuse Judge Thompson

Carmichael also argues his counsel should have followed through on a motion to recuse Judge Thompson based on his criticism of Carmichael and his defense. *See* Carmichael Memorandum of Law at 50-52. During discussions of the lawsuit filed by Agent DeJohn and its effect on this trial and any attorney conflict as a result of the lawsuit, counsel for Carmichael, Ms. Wayne, indicated that the defense was going to file a motion to recuse Judge Thompson based on her description of Judge Thompson's appearance during the discussion, stating, "The Court has raised its voice, you've turned red, your lips are trembling, you're pointing your finger at Mr. Carmichael and you clearly….." *See* GX 5C-VIII-34. In responding to Ms. Wayne, Judge Thompson stated on the record:

> THE COURT: Now wait a minute now. I am not turning red. If I put on the record every time you raised your voice at me or did certain things – Now I want to say one thing her for sure. Now I am totally neutral in this case. I have bent over backwards to protect your client, and you're not going to get me off the case by trying to make some spurious record. I have issued neutral orders after a deliberative process and I will do it again. Now, I just want to make that clear to you, Miss Lisa Wayne.
>
> I want you to understand that is not going to be a basis. If any appellate court looks at this, it will be in an order that will be issued in a neutral environment. I have had no ex parte contacts in this case. Nothing. And the fact that I might get concerned and so forth, that is

253

true, but I just want to emphasize to you that it was based on Mr. Carmichael's own actions.

MS. WAYNE:  Judge, I think the record is clear.  My sense is, though, as his defense lawyer you've expressed a clear enmity and bias toward this defendant, period, and that's what I want on the record.  That's my opinion, and I think we have a right to put that on the record.

THE COURT:  You have a right to put it on the record.

MS. WAYNE:  And we'd ask that you remove yourself.

THE COURT:  I will not do it.  I definitely will not do it.  And if anybody I have expressed a bias against, I think it's been against the government.  I've done everything to keep that website out of here. I've even brought you back here to make sure that you were pursuing your defense appropriately because you were going to go down an avenue that I thought would result in the type of evidence that you got up and asked for a mistrial on.  And I wanted to cut that off in the bud.

. . .

MR. FEAGA [AUSA]:  I just want to say on behalf of the United States saying that we very much disagree with Miss Wayne and her comments that she made about the Court's demeanor.  The Court is telling the lawyers in a forceful way what its positions is, and the fact that any belief expressed on the record I want us on the record …that the Court has done nothing to indicate that the Court ha[s] to get off of this case or has some bias against the defendant.

THE COURT:  Now I would like the record to reflect that when you said the Court had no bias, Ms. Wayne did "Hmm" as if to show a smirking disrespect to the Court.

…

THE COURT:  No, you were showing a smirking disrespect to the Court when he said the Court had no bias, Ms. Wayne.   I heard it.  I heard it.

Now proceed.

And I will take that up with you later, Ms. Wayne.

*See* GX 5C-VIII-34-37. Mr. Carmichael argues that Ms. Wayne should have

pursued further the motion to recuse, and that Ms. Wayne was ineffective because

she antagonized the judge by threatening recusal, but not following through.

However, Ms. Wayne made her motion for recusal, and it was denied. And

because that decision was correct, Carmichael has not demonstrated ineffective

assistance of counsel.

First, Ms. Wayne did pursue the motion to recuse, she asked Judge

Thompson to remove himself from the case, but he did not. That decision was

correct. Further, Carmichael does not indicate what further Ms. Wayne might have

done to demonstrate that decision was incorrect. Therefore, he has failed to

demonstrate the necessary deficient performance by counsel. Further, there was no

prejudice from Ms. Wayne's failure to further pursue the issue with Judge

Thompson or with anyone else.

Criticism, even angry criticism, of counsel or the defendant is not alone

grounds for a recusal. *See United States v. Hill*, 643 F.3d 807, 845-46 (11th Cir.

2011). Instead, to warrant recusal, that criticism must be such that " 'an objective,

disinterested, lay observer fully informed of the facts underlying the grounds on

which recusal was sought would entertain a significant doubt about the judge's

255

impartiality.' " *United States v. Amadeo*, 487 F.3d 823, 828 (11th Cir. 2007), *citing United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003). "[J]udicial ruling alone almost never constitute a valid basis for a bias or partiality motion." *Litekey v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).

Judge Thompson was in the middle of discussing and ruling on a motion concerning an alleged conflict of counsel when he made the comments that led to Ms. Wayne's motion for a recusal. The trial had been going on for eight long days, with the Court being called on to rule on many complicated issues raised in motions by defense counsel. On that day, and throughout the trial, Judge Thompson methodically, patiently, and learnedly analyzed the issues raised and made his rulings, many for defense counsel, some for the Government. The comments that led to the motion for recusal were outside the presence of the jury and therefore had no impact on it. The comments were made during a time when Judge Thompson was trying to make the correct ruling on whether the entire trial might be compromised due to the filing of a lawsuit against counsel by one of the Government's witnesses, and Judge Thompson was doing his utmost to get his decision right under the law and facts. No reasonable observer possessing all of the facts leading up to the exchange, would have a significant doubt about Judge Thompson's impartiality. For that reason, Carmichael was not prejudiced by his counsel's failure to further pursue the issue.

No evidentiary hearing is required on this issue, as it can be decided by the record before the Court and it does not need further factual development.

### 41.     The cumulative effect of all trial and pretrial errors denied Carmichael a fair trial

Carmichael's last claim of ineffective assistance of counsel that applies to counsels' pretrial and trial performance is that the cumulative errors of his counsel denied him a fundamentally fair trial. *See* Carmichael Memorandum of Law at 52. "In addressing a claim of cumulative error, [the Court] must examine the record as a whole to determine whether the [defendant] was afforded a fair trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997); *accord, United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011).[9]  A review of the record in this case can lead to only one conclusion.  Carmichael received a fair trial free of counsel's errors affecting the outcome of his trial.  The jury convicted Carmichael because he was guilty of the charged crimes.  Both the Court and his counsel effectively protected his rights.  He is not entitled to any relief on his cumulative error claim. He also is not entitled to an evidentiary hearing, because a hearing is not necessary to resolve the issue.

---

[9] The Government is assuming the cumulative error doctrine applies when assessing whether a number of individual claims of ineffective assistance of counsel have a cumulative effect independent of their individual effect, but it does not concede such is the case.

### 42.    Failing to raise on appeal the district court's *Bruton* ruling on the statements made by Codefendant Freddie Williams

Next, Carmichael raises nine ineffective assistance of appellate counsel claims. *See* Carmichael Memorandum of Law at 53-54. Before addressing each claim individually, it should be noted that an appellate attorney is not required to raise every meritorious issue on appeal. *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). Instead, the effective attorney will winnow out weaker arguments and focus on the central, most important issues, even though other issues may have merit. *Id.* In Carmichael's appeal, his counsel raised five issues. *See* GX 8A. Their strategic decision to only raise those issues is virtually unchallengeable, and Carmichael cannot demonstrate prejudice from the failure to raise the remaining issues he identifies. Because all of the appellate ineffective assistance of counsel claims can be appropriately addressed without further factual development, this Court should not grant an evidentiary hearing on those claims.

Carmichael's first ineffective assistance of appellate counsel claim is that counsel were ineffective for not raising on appeal the district court's *Bruton* ruling on the statement made by Codefendant Freddie Williams. In this case, counsel for Carmichael did object to the admissibility of Codefendant Freddie Williams's statement to law enforcement to the effect that he would not cooperate because his children would be killed on the grounds that the admission of that statement would violate *Bruton v. United States*, 291 U.S. 123, 88 S.Ct. 1620 (1968). *See* GX 4T at

258

79-80; GX 5A-III-334-35, 335-42; GX 5B-IV-48, 50, 57-58. Judge Thompson held the statement was admissible, but he agreed to give a limiting instruction on its admission informing the jury the statement was only to be used as evidence against Codefendant Freddie Williams. *See* GX 5B-IIII-335-42; GX 5B-IV-60-64. He gave the promised limiting instruction before the statement was admitted. *See* GX 5B-IV-80-81.

"The Supreme Court held in Bruton that post-arrest statements made by nontestifying codefendants that facially incriminate other defendants are inadmissible into evidence because such statements violate the other defendants' Sixth Amendment rights to confront and cross-examine adverse witnesses." *United States v. Williamson*, 339 F.3d 1295, 1302 (11th Cir. 2003). In *Richardson v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702 (1987), however, "the Supreme Court clearly authorized the admission of a nontestifying codefendant's confession where such confession omitted a reference to the defendant and was coupled with a limiting instruction." *United States v. Williamson*, 339 F.3d at 1304. Therefore, when Judge Thompson permitted the Government to admit into evidence Codefendant Freddie Williams's statement, with a limiting instruction, the Court complied with *Bruton* and no error occurred. Because no error occurred, counsel for Carmichael were not ineffective for not raising this non-meritorious issue on appeal.

259

### 43.  Failing to raise on appeal the Government's use at trial of the improper hearsay statements of Sandra Jones to law enforcement

Next, Carmichael argues that his counsel should have raised on appeal the Court's admission of the hearsay statements of Sandra Jones.[10]  The Court did not admit any hearsay statements of Sandra Jones.  Therefore, there could be no error by counsel for failing to raise the issue on appeal.

### 44.  Failing to raise on appeal the "trial by ambush" issue

Carmichael's next claim of ineffective assistance of counsel on appeal is that his counsel were ineffective because they did not raise the "trial by ambush" issue on appeal, meaning the Government's failure to disclose certain evidence to him before trial.  The Government has addressed the merits of the issues underlying this claim in subparts 20 and 35, above.  For the reasons stated in those subparts, there was no "trial by ambush," and the Government met all of its discovery obligations.  Because there is no merit to those claims, counsel were not ineffective for failing to raise them on appeal.

### 45.  Failing to raise on appeal issues related to the Government's late disclosure of evidence

Carmichael also claims his appellate counsel were ineffective for failing to argue on appeal that the Government's late disclosure of evidence entitled him to a

---

[10] If the Government had introduced any statements made by Sandra Jones related to her rest in Mississippi on marijuana trafficking or her shooting of Jimmy Timmons at Carmichael's direction, those statements were the statements of a coconspirator made in furtherance of the conspiracy and were not hearsay by definition.  See Fed. R. Evid. 801(d)(2)(E).

continuance or a mistrial.  The late disclosure of evidence issue is discussed in

subpart 35 of this response, above.  For the reasons stated in that subpart, there was

no "trial by ambush," and the Government met all of its discovery obligations.

Because there is no merit to the claim that the Government failed in its discovery

obligations, counsel were not ineffective for failing to raise that issue on appeal.

### 46.   Failing to raise on appeal the district court's refusal to strike DEA Agent DeJohn's testimony due to bias, his website lawsuit, and related matters

Carmichael also claims that his appellate counsel were ineffective because

they failed the raise on appeal the matters surrounding Agent DeJohn and his filing

of a civil lawsuit against Carmichael and his former and trial counsel because of

the website established by Carmichael in relation to this case.  Carmichael alleges

the testimony should have been stricken due to Agent DeJohn's bias and because

of the conflict caused by his filing of the lawsuit.  The issue concerning the

admissibility of Agent DeJohn's testimony, which mostly occurred even before

counsel found out about his filing of the lawsuit about the website, was thoroughly

and properly litigated in the courts below, and are addressed in subpart 34, above.

Because there is no merit to the claims that Agent DeJohn's testimony should be

stricken because he was biased against Carmichael and because he filed the

lawsuit, Carmichael's appellate counsel were not ineffective for failing to raise

these non-meritorious issues on appeal.  Carmichael is not entitled to relief on this

claim of ineffective assistance of counsel.

### 47.    Failing to raise on appeal the conflict of interest created by the Government's use of Eric Peagler as a witness, Peagler being a former client of one of Carmichael's counsel, Susan James

Carmichael claims his counsel should have raised on appeal the issue of

Susan James's conflict of interest arising from the Government's use of Eric

Peagler at Carmichael's trial, Eric Peagler being a former client of James.  As is

discussed thoroughly in subpart 33 of this response, above, there was no actual

conflict caused by Susan James's previous representation of Eric Peagler, nor did

her previous representation of Mr. Peagler adversely affect her representation of

Carmichael.  Therefore, the issue would not have been successful on appeal, and

counsel were not ineffective in failing to raise it.

### 48.    Failing to raise on appeal the district court's denial of a continuance so that counsel could investigate the late disclosure by the Government of witnesses and evidence

Next, Carmichael alleges that his appellate counsel were ineffective for

failing to raise on appeal the district court's denial of a continuance so that counsel

could investigate the late disclosure by the Government of witnesses and evidence.

The Government has addressed the merits of the denial of a continuance if subpart

35 of this response, above.  The Court did not abuse its discretion in denying

Carmichael a continuance to further investigate Eric Peagler and Richmond

Thomas. Carmichael's argument to the contrary has no merit. For that reason, his counsel were not ineffective for not raising that issue on appeal.

### 49. Failing to raise on appeal that a conflict of interest was created by Agent DeJohn's filing of a lawsuit against Carmichael's attorneys during trial

Carmichael also argues that his counsel should have raised on appeal the issue of his counsel's conflict of interest caused when Agent DeJohn filed a lawsuit against them. There was no actual conflict of interest caused by the filing of the lawsuit by Agent DeJohn, and Carmichael has not demonstrated any prejudice from their continued representation of Carmichael after they discovered the lawsuit had been filed. *See* subpart 34 of this response, above. Because there was no conflict that adversely affected counsels performance in this case, Carmichael's counsel were not ineffective for failing to raise that issue on appeal.

### 50. Failing to argue on appeal the insufficiency of the evidence to support Carmichael's drug conspiracy and money laundering convictions

Carmichael's counsel did preserve the sufficiency of the evidence issue by proper objections and motions in this Court. See GX 5C-VII-284-85; GX 5C-IX-121-157; GX 6N; 6S. An appellate court reviews the sufficiency of the evidence *de novo*, examining the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility issues in favor of the guilty verdicts." *United States v. McNair*, 605 F.3d 1152, 1195 (11th Cir. 2010) (internal

quotation marks and citation omitted), *cert. filed*, No. 10-516 (Oct. 14, 2010), No.

10-528 (Oct. 18, 2010), No. 10-535 (Oct. 18, 2010); *accord United States v.*

*Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (internal quotation marks and

citation omitted). The appellate court will not overturn a conviction on

insufficiency of the evidence "unless no rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation

marks and citation omitted). In evaluating the sufficiency of the evidence, the

appellate court "must accept a jury's inferences and determinations of witness

credibility." *United States v. Wright*, 392 F.3d at 1273; *see also United States v.*

*Moore*, 525 F.3d 1033, 1039 (11th Cir. 2008). The evidence establishing

Carmichael's involvement in the marijuana trafficking conspiracy was

overwhelming and the Government proved beyond a reasonable doubt that

Carmichael and his coconspirator laundered money in connection with the

marijuana trafficking offense. *See* GX 6I. Therefore, counsel for Carmichael did

not provide ineffective assistance of counsel because they did not raise the issue on

appeal. The issue was without merit, and was properly winnowed out.

> **51.    Failing to argue on appeal that Carmichael was denied a fair
> trial by Judge Thompson's open criticism of defense counsels'
> handling of Carmichael's case**

Carmichael's last claim of ineffective assistance of appellate counsel is that

counsel failed to argue on appeal that Carmichael was denied a fair trial by Judge

Thompson's open criticism of defense counsels' handling of Carmichael's case. As is argued by the Government in subparts 39 and 40 of this response, above, there was no basis to argue Carmichael was denied a fair trial by the alleged bias of Judge Thompson, because Carmichael did not demonstrate Judge Thompson was biased against him or his counsel. As with his other claims of ineffective assistance of counsel, this claim of ineffective assistance of counsel by Carmichael fails because he has not demonstrated that counsels' decision to forego this issue on appeal in favor of others was not a reasonable professional decision. He has not demonstrated deficient performance. Nor has he demonstrated any prejudice because there is no merit to the claim. Therefore, this claim of ineffective assistance of appellate counsel should also be rejected.

Further, Carmichael was not ineffective for failing to raise this non-meritorious issue on appeal. Although Judge Thompson did express some criticism of counsel at different stages of the trial proceedings, he was careful to make those comments outside the presence of the jury and/or in chambers, and none of those criticisms affected the thoughtful and comprehensive rulings that he made in this case. *See* part IV.B.39, above.

**C.**   **Carmichael Has Not Demonstrated That Eric Peagler's Testimony
Was Perjured Or That The Government Knew Or Should Have Known
Mr. Peagler's Testimony Was False And Failed To Correct It.**

In his first Motion To Supplement Section 2255 Motion and Movant's

Supplemental Section 2255 Motion To Vacate, Set Aside Or Correct Federal

Sentence, Carmichael alleges that Government witness Eric Peagler perjured

himself during his trial testimony and that the Government knew, or should have

known, Mr. Peagler's testimony was false and failed to correct it. *See*

Carmichael's Motion To Supplement Section 2255 Motion and his supplement to

the motion. Carmichael alleges that Mr. Peagler testified falsely when he testified

that the Government had not promised him anything in return for his testimony at

Carmichael's trial, because in a later *pro se* motion, he claimed the Government

had promised him something. *See* Carmichael's supplement to the motion at 2.

Carmichael's allegation is based on Ms. James's affidavit indicating Peagler's *pro*

*se* motion to reduce his sentence after he testified for Carmichael was somehow

inconsistent with his trial testimony. *See* James Affidavit at 11, "Paragraph 24."

There is absolutely no merit to this allegation of error, and this Court should reject.

No evidentiary hearing is required to resolve this issue, either.

"To obtain a reversal on the grounds that the government relied on perjured

testimony, the following must be shown: (1) the contested statements were

actually false, (2) the statements were material, and (3) the prosecution knew they

were false." *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997)

(internal quotation marks omitted), *citing United States v. Blackburn*, 9 F.3d 353,

357 (5th Cir. 1993). "A successful *Giglio* challenge requires that the defendant

establish that the prosecutor knowingly used perjured testimony, or failed to

correct what he subsequently learned was false testimony, and that the falsehood

was material." *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001)

(internal quotation marks and citations omitted). "The materiality element is

satisfied if the false testimony could reasonably be taken to put the whole case in

such a different light as to undermine confidence in the verdict." *Id.* (internal

quotation marks and citations omitted). "Reversible error occurs only if a failure

to correct results in material prejudice such that there is any reasonable likelihood

that the false testimony would affect the jury's judgment." *United States v. Bueno-

Sierra*, 99 F.3d 375, 380 (11th Cir. 1996). Carmichael has failed to demonstrate

that Mr. Peagler's trial testimony was, in fact, false, or that the alleged false

testimony was material. Therefore, this claim for relief should be rejected.

First, even if the representations of Peagler in his *pro se* motion to reduce his

sentence are inconsistent with his testimony, that certainly does not prove his

testimony at trial was false. To the contrary, the testimony was under oath,

indicating its reliability, and was subject to thorough cross-examination *see* GX

5C-VII-70, 87-116, 134-35; the statements he made in the *pro se* motion were not,

267

*see* **GX?,** a copy of Eric Peagler's Motion For Reduction Of Sentence F.R.Crim.P.
Rule 35(a).

Second, Carmichael has not demonstrated that Eric Peagler's testimony at
trial was inconsistent with the representations he makes in his *pro se* motion. At
trial, Mr. Peagler testified that he entered into a cooperation agreement with the
Government in 2002 in an effort to receive a lesser sentence in a pending drug
distribution case and, as a part of that agreement, the Government agreed to tell the
court about his cooperation and to recommend a further reduction in his sentence
pursuant to Fed. R. Crim. P. 35(b), if Mr. Peagler told the Government "who all
[he] dealt with." *See* GX 5C-VII-92-93, 102-04. Mr. Peagler claimed that he did
not remember when he was talking to Agent DeJohn "all of them [the people he
dealt drugs with] because the time [he] was facing and the pressure [he] was
under." *Id.* at 93. Mr. Peagler also testified that when he spoke with Agent
DeJohn, even though he "agreed to be truthful and tell the government what [he]
knew about aspects of your drug organization, that [he] never one time ever
mentioned the name Leon Carmichael." *Id.* at 94. Mr. Peagler testified further
that, he understood that, to get a further reduction in his sentence, he would have to
rely on the Government making a recommendation to the Court and the Court
would have to decided whether to reduce his sentence further . *Id.* at 103. Of note,
Mr. Peagler was never asked if the Government promised to ask the court to

further reduce his sentence or if it promised him anything, contrary to his assertions that he was asked if he was promised anything for his testimony. *See* Carmichael Motion To Supplement Section 2255 Motion; GX 5C-VI-87-107.

Nothing in this testimony contradicts what is contained in Mr. Peagler's motion for a reduction in sentence. *See* GX 8J Instead, the records from Mr. Peagler's case show that the Government filed a Motion For Reduction In Sentence based on its determination that Peagler had met his obligations under the cooperation agreement he entered with the Government. *See* GX 8J Specifically, the Government represented to the court in that case that Mr. "Peagler's testimony was helpful in obtaining a conviction in the case of *United States v. Carmichael*, Cr. No. 2:03-cr-259-T", which is this case, and that it believed Mr. Peagler had been "truthful with the United States and to law enforcement officers that he has been assisting." *Id.* at 1-2, ¶ 2-3. The Government also represented in that motion that "some degree of risk of injury to Eric Peagler and his family has resulted and continues to result because of his assistance." *Id.* at 2, ¶ 4. Based on the cooperation Mr. Peagler provided, the Government asked for a 12-month reduction in his sentence. *Id.* at 2. The Government's initial motion for a reduction in sentence was granted on December 6, 2005, and Mr. Peagler's sentence was reduced from 180 months to 168 months in prison. *See* GX 8J, a copy of the court's order granting the reduction in sentence.

Subsequently, Mr. Peagler filed the *pro se* Motion For Reduction Of

Sentence F.R.Crim. P. Rule 35(a) that is at issue here. *See* GX 8J. In that motion,

Mr. Peagler complains that the motion for a reduction in sentence filed by the

Government was way below what it had "promised as a percentage and the risk

involved far outweigh[] the reduction the Government requested in its motion for

reduction of sentence which was granted accordingly." *Id.* at 1. Nothing in that

motion conflicts with Carmichael's candid testimony at trial that he was testifying

pursuant to a cooperation agreement, which left the decision for how far to request

to reduce the sentence to the Government. It only shows he was dissatisfied with

the Government's valuation of that cooperation and testimony.

Carmichael has failed to demonstrate that Eric Peagler's trial testimony was

false; therefore, the Court need not determine whether the testimony in question

was material. However, to the degree that there may be slight discrepancies in Mr.

Peagler's testimony about the cooperation agreement and his *pro se* motion, those

discrepancies would not have further discredited Mr. Peagler such that the outcome

of Carmichael's case would have been different. Any discrepancies were not

material to the case, and Ms. James thoroughly cross-examined and attempted to

discredit all of Mr. Peagler's testimony. There simply is no possibility that the

testimony, if false at all, affected the jury's judgment. *See United States v. Bueno-*

*Sierra*, 99 F.3d at 380.

Carmichael also argues that the Government knew or should have known of

the falsity of Eric Peagler's testimony about his cooperation with the Government.

But because the cooperation agreement testimony was not false, the Government

did not either present false testimony or commit prejudicial error in failing to

correct it. Moreover, the Government, in its response to Mr. Peagler's *pro se*

motion to reduce his sentence, refutes Mr. Peagler's contention that he was

promised a specific percentage reduction in his offense level, so even if he had

testified he was not promised anything by the Government other than to

recommend a reduction in sentence for cooperation, that testimony would not have

been false. It would have been true.

The Government, in its response opposing Mr. Peagler's request for a further

reduction in his sentence, represented the bases for the request for reduction it did

make as follows:

      1.    ... ***The written plea agreement gave the United States
the sole discretion to determine post sentencing whether and when
to file a motion under Rule 35, Federal Rules of Criminal
Procedure***. (Doc. 178)

      2.    The United States opted to call the defendant to testify
during the prosecution of Defendant Leon Carmichael. In substance,
the defendant testified regarding drug transactions with Leon
Carmichael. ***The United States believed the testimony was truthful***,
but had two main flaws. First, Defendant Peagler did not mention any
narcotics relationship with Carmichael during the debriefings which
took place soon after the arrest of Peagler. It was not until after the
arrest of Carmichael, which was well after Peagler began serving his
sentence, that Peagler admitted drug dealing with Carmichael.

Finally, the United States was not able to find any corroboration for
the transactions other than the testimony of Richmond Thomas, a
codefendant of Peagler. No surveillance, or independent evidence,
such as documents, existed to corroborate the testimony of Defendants
Peagler or Thomas. After great deliberation and despite the
drawbacks, the United States chose to place Peagler and Thomas on
the stand. The petit jury convicted Defendant Carmichael of engaging
in a narcotics conspiracy and a money laundering conspiracy. It is
impossible to determine whether the petit jury believed or disbelieved
the testimony of Defendant Peagler or simply disregarded the
testimony altogether and accepted other evidence as sufficient to
convict. *The United States believed the testimony was truthful* and
intended to file a downward departure motion on behalf of Defendant
Peagler regardless of the Carmichael verdict. The extent of the
motion was predetermined and commiserate with the value of the
assistance viewed through the eyes of the Prosecution. *No promises
were ever made to the defendant concerning how much of a
departure the United States would request.*

*See* GX 8J, Government's response at 1-2, ¶¶ 1-2. Because the Government made

no promises to Mr. Peagler about the degree of any recommended reduction in

sentence and it otherwise believed his testimony, Carmichael has failed to

demonstrate that the Government knowingly presented any false testimony with

regard to Peagler.

Because Carmichael has not demonstrated that Eric Peagler presented false

testimony at his trial, or that the Government knowingly presented such testimony

or failed to correct false testimony, this Court should reject Carmichael's claim.

272

**D.** **This Court Should Conduct A Hearing To Determine Whether Cooperating Witness Jimmy Timmons Offered Perjured Testimony During Carmichael's Trial.**

Carmichael's final claim for relief, raised in a second motion to supplement his § 2255 motion, is that he has newly discovered evidence that Government witness Jimmy Timmons offered perjured testimony at his trial, and that he has now recanted that false testimony. *See* Movant's Second Supplemented § 2255 Motion To Vacate, Set Aside Or Correct Federal Sentence and attached Affidavit of Jimmy Timmons. Jimmy Timmons testified at Carmichael's trial about his drug distributing activities with Carmichael and about an incident in which Sandra Jones tried to shoot him, he believed, at the direction of Carmichael. *Id.* at 96-178. Mr. Timmons testified that he had direct knowledge that Carmichael was present when marijuana distribution was occurring. *Id.* at 111.

In support of his testimony concerning the alleged falsity of Mr. Timmons's trial testimony, Carmichael presents an affidavit from Mr. Timmons in which he states he lied about Mr. Carmichael at trial, both as to his marijuana distribution activities and as to Carmichael's responsibility for his shooting by Sandra Jones, allegedly because of pressure from law enforcement. *See* Affidavit of Jimmy Timmons. Carmichael has also presented affidavits from Janice Watson and Sandra Jones in support of his claim that Jimmy Timmons presented false testimony. *See* Affidavit of Sandra Jones and Affidavit of Janice Watson. If the

273

affidavit from Jimmy Timmons supplied by Carmichael is in fact true, then Jimmy

Timmons's testimony at trial was likely false in some respects. However,

Carmichael must first prove that Jimmy's recantation is true before he is entitled

even to an evidentiary hearing on his claim, and he has not.

"A new trial is warranted based upon circumstances coming to light after

trial only if the following five part test is satisfied: (1) the evidence was in fact

discovered after trial; (2) the defendant exercised due care to discover the

evidence; (3) the evidence was not merely cumulative or impeaching; (4) the

evidence was material; and (5) the evidence was of such a nature that a new trial

would probably produce a different result." *United States v. Lee*, 68 F.3d 1267,

1273 (11th Cir. 1995); *accord, United States v. Starrett*, 55 F.3d 1525, 1554 (11th

Cir. 1995). However, "Courts are particularly reluctant to grant such motions

where the newly discovered evidence consists of a witness recantation as such

recantations are 'looked upon with the utmost suspicion.'" *United States v.

DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987); *see also United States v. Miner,* 131 F.3d

1271, 1273 (8th Cir. 1997) ("Courts look upon recantations with suspicion.");

*United States v. Spence,* 80 F.3d 989, 1003 (5th Cir. 1996) ("[W]e reiterate that

'recanting affidavits and witnesses are viewed with extreme suspicion by the

courts.'") (internal citation omitted); *United States v. Chambers*, 944 F.2d 1253,

1264 (6th Cir. 1991) (abrogated in part on unrelated grounds by statute)

("Recanting affidavits and witnesses are viewed with extreme suspicion.");

*Landano v. Rafferty*, 856 F.2d 569, 572 (3d Cir. 1988) ("Courts have historically

viewed recantation testimony with great suspicion."). The Eighth Circuit has

described the test for determining whether a new trial should be granted on the

grounds of recanted testimony as a three-part test that the movant must bear: "(1)

that the testimony recanted was false and material; … (2) that without the original

testimony the jury probably would have acquitted the defendant, … and (3) that the

party seeking the new trial was surprised when the false testimony was given or

did not know of its falsity until after trial,… and could not with due diligence have

discovered it earlier." *See United States v. DiPaolo*, 835 F.2d at 49.

Carmichael has not, and cannot meet this test, because he cannot

demonstrate that, without the original testimony he would probably have been

convicted. The testimony against Carmichael was overwhelming, several other

coconspirators testifying to his participation in the ten-year marijuana distributing

and money laundering conspiracy and the Government presenting corroborating

evidence of that marijuana and money laundering distributing conspiracy.

However, should this Court determine that it cannot decide the issue without

an evidentiary hearing, it should hold a hearing at which Jimmy Timmons is placed

under oath and this Court is able to determine the credibility of Mr. Timmons's

recantation; and Carmichael is placed under oath and questioned about when and

how he found out about Mr. Timmons's recantation.  Only then can this Court

properly determine whether Carmichael has met the requirements for a new trial

based on recanted testimony.

For these reasons, Carmichael's motion for relief from his conviction based

on the recanted testimony of Jimmy Timmons should be rejected outright –

because Carmichael would probably have been convicted regardless of Timmons's

testimony – or it should grant an evidentiary hearing on the issue.

**E.     The Government Did Not Know, Nor Had It Any Reason To Know,
        That Government Jimmy Timmons's Testimony Was False At
        Carmichael's Trial And It Had No Reason To Correct It.**

In his Movant's Second Motion To Supplement Section 2255 Motion,

Carmichael (Doc. 69), Carmichael further argues that the Government knew or

should have known that Jimmy Timmons's testimony was false at Carmichael's

trial and it should have corrected that false testimony.   Carmichael presents no

evidence that the Government knew that Mr. Timmons's testimony was false.

Although Mr. Timmons repeatedly says throughout his affidavit that he lied about

Carmichael's involvement in drug activities, Mr. Timmons does not say in his

affidavit he told the Government something different from what he testified to, and

the Government is unaware if he did so.  *See* Affidavit of Jimmy Timmons.  What

Mr. Timmons does say in his affidavit is that the Government tried to coerce him

into testifying against Carmichael, but he never says the Government told him to

lie, and it did not.  The Government did not act inappropriately in trying to

persuade Mr. Timmons to present testimony about what he knew about

Carmichael's drug dealing.  The Government did not knowingly present false

testimony, nor did it have reason to know the testimony was false.  Therefore, this

claim for relief should be denied.

## IV.  MISCELLANEOUS

Carmichael has plead facts and presented sufficient evidence or argument on

some of his claims demonstrating that he is entitled to an evidentiary hearing,

Should this Court determine that Davis has made any arguments not

addressed in this response, the Government would request the opportunity to

further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the

arguments made as to each claim raised are in the alternative.

## V.  CONCLUSION

For the above reasons, Petitioner Leon Carmichael, Sr.'s § 2255 motion should be denied in most part.  This Court should set a hearing limited to the identified remaining claims.

Respectfully submitted this 28th day of November, 2011.

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

*Sandra G. Stewart*

SANDRA J. STEWART
First Assistant United States Attorney
United States Attorney's Office
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280

278

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LEON CARMICHAEL, SR., | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil No. 2:10cv1106-MHT-WC |
| v. | ) (CR No. 2:03cr259-MHT-DRB) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## CERTIFICATE OF SERVICE

I hereby certify on November 28, 2011, I filed the foregoing Response with

the Clerk of the Court and mailed, postage prepaid, a copy of this response to

counsel for the Petitioner as follows:

Tracy Hightower-Henne          James Knox Argo
HIGHTOWER LAW, LLC             Knox Argo & Warren
209 South 19th Street, Suite 525   6706 Taylor Circle
Omaha, NE  68102               Montgomery, AL 36117


Respectfully submitted,

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

SANDRA J. STEWART
First Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280

279