RECEIVED

2004 MAR 11 P 4:54

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

FILED

MAR 11 2004

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR-03-259-N |
| | ) | |
| LEON CARMICHAEL, SR. a/k/a | ) | |
| BEAVER LEON CARMICHAEL | ) | |

### GOVERNMENT'S POST-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and files its Second Response to the Motion to Suppress filed by Defendant, Leon Carmichael, as follows:

I. <u>Government Requests Leave to Reply to the Defendant's Post Suppression Hearing Brief.</u>

1. Defendant filed a three-page Motion to Suppress on January 7, 2004. In his motion, defendant contends that the government illegally stopped and arrested the defendant on November 17, 2003. Defendant further contends that the government illegally interrogated the defendant on December 4, 2003. While the defendant did not enumerate facts to support these contentions, this Court held an evidentiary hearing on such matters on March 1, 2004. This Court further ordered that if the government chose to file a post-hearing brief, such brief was due on March 11, 2004. The defendant's post-hearing brief is to be due on March 22, 2004.

2. As explained in the government's Response to the Motion to Suppress filed on the 18th day of February, 2004, the government arrested the defendant on

1



November 17, 2003, based on probable cause and without an arrest warrant. Therefore, as the Court is aware, the government has the burden to show that probable cause existed for said arrest. See, Michigan v. Summers, 452 U.S. 692 (1981)(every arrest is unreasonable unless it is supported by probable cause). Additionally, on December 4, 2003, the defendant voluntarily and after the advice of his attorneys, came to the DEA office in Montgomery, Alabama to retrieve some of his property. (Transcript p. 76, lines 12-15) There, the defendant made certain voluntary statements to DEA agents during his visit. The government also bears the burden of showing by preponderance of the evidence that said statements were voluntary. United States v. Grimes 142 F.2d 1342, 1350 (11th Cir. 1998); citing, Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626-27, 30 L.Ed.2d 618 (1972).

   3.   Since the government bears the burden, the government should have the opportunity to respond to defendant's arguments. At this point, the defendant has put forth no argument. The defendant has simply filed a bare-boned, three page motion to suppress. The government expects that the defendant will put forth arguments in its post-hearing brief.

   4.   Therefore, the government request leave to reply to the defendant's post-hearing brief due on March 22, 2004.

II.   <u>Law Enforcement Legally Stopped Defendant's Vehicle on November 17, 2004.</u>

   5.   During the suppression hearing, the court expressed some concern about

whether a stop of a vehicle is "legitimized by reports from coconspirators that Mr. Carmichael is part of a drug conspiracy." (Suppression Transcript p. 102, lines 21-23) Police officers may conduct a brief investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or *has been committed*. Terry v. Ohio, 392 U.S. 1,30 (1968) (emphasis provided). An investigative stop is permissible if the officer has reasonable grounds to believe that an individual is involved in criminal activity. United States v. Martin, 636 F.2d 974, 976 (5th Cir. 1981)[1] While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. United States v. Gordon, 231 F.3d 750, 754 (11th Cir. 2000); citing, Jackson v. Sauls, 206 F.3d 1156, 1165 (11th Cir. 2000); quoting, Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000). A reasonable suspicion of criminal activity, as would support an investigatory stop, may be formed by observing exclusively legal activity. Id.; See, Wardlow, at 120 S.Ct. at 677; Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Officers must bear in mind that behavior, seemingly innocuous to the ordinary citizen, may appear suspect to one familiar with the practices of narcotics couriers. United States v. Smith, 201 F.3d 1317, 1323 (11th Cir. 2000); citing, United States v. Glover 957 F.2d 1004, 1009 (2nd Cir. 1992); See also, United States v. Mendenhall, 446 U.S. 544, 562-65, 100 S.Ct. 1870, 1882, 64 L.Ed.2d

---

[1] Bronner v. City of Prichard, Alabama, 661 F.2d 1206 (11th Cir. 1981)(holding that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent on all federal courts within the Eleventh Circuit)

497 (1980)(Powell, J., concurring).

    6.    In the case at bar, the defendant was involved in a conspiracy, he had committed the crime of conspiring to possess with the intent to distribute and distribution of marijuana. Two witnesses, Robert Patrick Denton and Gary George, detailed for law enforcement how the defendant ran this drug distribution organization. (Transcript p. 8-10 and 15-24) These two witnesses outlined for law enforcement how this conspiracy to possess with the intent to distribute was run. Further, the agents were present when the defendant called Denton at 2:45 a.m.. (Transcript p. 22, lines 3-5) Agents overheard the conversation wherein the defendant stated that he was coming to Denton's residence to talk to Denton. (Transcript p. 21, lines 14-16; p. 22, lines 2-3) Agents saw the defendant arrive at Denton's residence, stay about five minutes and leave. (Transcript p. 22, lines 20-25; p. 23, line 1-6) While each of these activities alone could be construed as innocuous, these activities combined with the information provided by Denton cement the reasonable suspicion required to legally effect a stop of the defendant. The defendant's activities provide the corroboration to Denton and George's information necessary to establish reasonable suspicion. Further, the government contends that at the point of the stop, the government possessed probable cause necessary to effect an arrest of the defendant for conspiracy to possess with the intent to distribute and distribute marijuana. The phone call and visit from the defendant at 2:45 a.m. was nothing less than an overt act in furtherance of the conspiracy.

    7.    Moreover, an anonymous tip corroborated by independent police work can be reliable enough to provide reasonable suspicion of criminal activity sufficient to

support an investigatory stop. United States v. Gibson, 64 F.3d 617, 620 (11th Cir. 1995); citing, Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). Further, the Court has stated that a tip from a known, albeit unproven, informant coupled with subsequent corroboration of the tip's details can justify reasonable suspicion of criminality. United States v. Kent, 691 F.2d 1376, 1380 (11th Cir. 1982). In the instant case, law enforcement had more than an anonymous tip and more than a tip from a known tipster. Law enforcement had two witnesses who outlined the defendant's organization. The information provided by these witnesses was corroborated by law enforcement and was proven to be reliable. On November 15, 2003, George gave Agent DeJohn information about Charlotte Hensarling. (Transcript p. 10, lines 8-23) George explained that he and Denton were about to sell marijuana to Hensarling. (Transcript p. 10, lines 18-23) Once the sale was consummated, George called Agent DeJohn back with a description of the vehicle that Hensarling would be driving. (Transcript p. 11, lines 7-11) Based on George's description of the vehicle, Agent DeJohn had the vehicle stopped and inside the vehicle found the marijuana, just as George had reported. (Transcript p. 12, lines 8-15) Hensarling further admitted that she had just purchased the marijuana found in her vehicle from Denton and George. (Transcript p. 13, lines 5-7) This incident alone establishes George as a credible and reliable witness. Further, George told agents that he had witnessed approximately ten pounds of marijuana at Denton's residence on November 16, 2003. (Transcript p. 14, lines 8-13) Agents obtained a federal search warrant. (Transcript p. 14, lines 16, 22) Upon execution of the search warrant, agents found no marijuana, however, Denton admitted that he did in fact have marijuana. (Transcript p. 14, lines 21-24; p. 35 lines 3-

12) Denton further admitted that he had just gotten rid of such marijuana that day. (Transcript p. 35, lines 10-12) At the time Denton admitted to having the marijuana, agents had not informed Denton that George told them that Denton had the marijuana. Obviously, Denton had no reason to be untruthful with the agents. Denton's admitting that he possessed marijuana earlier in the day, corroborated George's information.

8. During the course of the suppression hearing, the Court stated to Assistant United States Attorney Miner, "But surely you are not proposing to this court that officers have the right to stop a motorist at any time without a warrant, without a crime being committed in the presence of the officers solely because he is reported to have participated in a crime." (Transcript p. 5, lines 23-25; p. 6, lines 1-3) The government respectfully disagrees with such proposition. As explained above, law enforcement may stop a vehicle based on reasonable suspicion without an arrest warrant. See, United States v. Roper, 702 F.2d 984, 985 (11th Cir. 1983)(holding that only reasonable suspicion is required to make an investigatory stop of a car). What the court in the present case is suggesting is that an officer must observe the criminal activity in order to legally stop a person operating a vehicle based on reasonable suspicion. Under that rationale, law enforcement could never stop a car based on the reasonable suspicion that the person operating the car was involved in a bank robbery without observing the actual bank robbery. Again, under that rationale, a person fitting the description of a kidnapper could never be legitimately pulled over based on reasonable suspicion unless the officer observed the kidnapper physically kidnap the victim. Obviously, in either of the hypotheticals above, law enforcement could arrest with an arrest warrant. However, if the sequence of events were such that time

6

prevented obtaining an arrest warrant, as in the case at bar, surely the court would agree that the vehicles in the hypotheticals above could legally be stopped upon the officers obtaining reasonable suspicion.

9.  If officers had to observe the crime in order to stop the vehicle, officers could not stop a vehicle based on an anonymous tip, a "BOLO" (Be On The Look Out), or information from other law enforcement officers received over the police radio. "A BOLO or anonymous tip may provide the reasonable suspicion required to justify an investigatory stop." United States v. Ceniceros, 204 F.3d 581, 584 (5th Cir. 2000). Further, the Eleventh Circuit held that an officer had reasonable suspicion to justify stop and detention of suspect's vehicle that matched the description of a vehicle involved in criminal activity broadcast over his police radio. United States v. Aldridge, 719 F.2d 368, 371 (11th Cir. 1983).

10.  Based on these facts, it is clear that law enforcement had reasonable suspicion to stop the defendant's vehicle.

WHEREFORE, the United States respectfully requests this Court deny defendant's Motion to Suppress.

Respectfully submitted, this the 11th day of March, 2004.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

*/s/ Clark Morris*
A. CLARK MORRIS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, A. Clark Morris, Assistant United States Attorney, hereby certify that I have this 11th day of March, 2004, served a copy of the foregoing motion upon the following, by US mail :

Ronald Wise
Counsel for Leon Carmichael
fax number (334) 260-8005

Stephen Glassroth
Counsel for Leon Carmichael
fax number (334) 263-9940

*Clark Morris*
Assistant United States Attorney