None of the cases cited above expressly stands for the proposition that a criminal defendant has a right to investigate his case. However, the rules elucidated in these cases strongly imply that a criminal defendant has a right protected by the Fifth and Sixth Amendments to look for material evidence and witnesses. Just as the right to compel witnesses' presence would be meaningless without the right to present that testimony to the court, <u>Taylor</u>, 484 U.S. at 409, 108 S.Ct. at 653, so too would the right to present witnesses be meaningless without the right to conduct an investigation in order to find witnesses to present. Similarly, it would be anomalous to hold that a criminal defendant--whose due-process interest in exculpatory evidence is so strong as to require the government to turn such evidence over even when he has not requested it, <u>United States v. Agurs</u>, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399 (1976)--has no due-process interest in

---

51. (...continued)
been called to the Court's attention." <u>Valenzuela-Bernal</u>, 458 U.S. at 870, 102 S.Ct. at 3448.

investigating his case to uncover exculpatory evidence on his own. Finally, the defendant's interest in obtaining the name of a confidential informant under Roviaro would surely be significantly less meaningful if he could not use the name to conduct an investigation.

The constitutional significance of pre-trial investigation is illustrated by the case law interpreting the Sixth Amendment's guarantee of a right to counsel. Criminal defendants generally have the right to effective assistance of counsel as a means to protect their broader right to a fair trial. See Strickland v. Washington, 466 U.S. 668, 684-86, 104 S.Ct. 2052, 2063 (1984). This right of the defendant's imposes, in turn, a duty on the part of counsel to perform a reasonable investigation. Id. at 691, 104 S.Ct. at 2066. The court is not suggesting that to prevent Carmichael from maintaining his website would deny him his right to effective assistance of counsel; rather, the court cites to Strickland to underscore the importance that investigation plays in the protection of a criminal

95

defendant's fair-trial rights. The court thus concludes that the protective order sought by the government would infringe Carmichael's Fifth and Sixth Amendment rights.

2. The Government's Interest

The government has a cognizable interest here as well, of course, in protecting its witnesses and agents. The Supreme Court has recognized the government's interest in protecting witnesses who come forward to testify in criminal trials, which advances the public's interest in effective law enforcement by encouraging future witnesses to come forward. Roviaro, 353 U.S. at 59, 77 S.Ct. at 627. The Supreme Court has also recognized the government's valid interest in the safety of its agents and officers. See, e.g., Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881 (1968). More specifically, a line of cases concerning the propriety of closing trials to the public recognizes that the government has an interest in keeping its undercover agents' identities secret and in protecting their safety.

See <u>Brown v. Kuhlmann</u>, 142 F.3d 529, 537-38 (2d Cir. 1998); <u>Ayala v. Speckard</u>, 131 F.3d 62, 72 (2d Cir. 1997) (en banc).

### 3. Balancing

No ready-made test exists for balancing a defendant's fair-trial rights against the government's interest in protecting its witnesses and agents in the context of a government request to foreclose a defendant's means of investigation. However, from the above case law, a number of factors emerge as relevant.

First, the court must consider the likelihood that Carmichael's website will produce evidence. In <u>Dickerson</u>, the Eleventh Circuit cited the probability of procuring the witness's testimony within a reasonable time as one relevant factor in determining whether the denial of a continuance to find a witness violates a defendant's Sixth Amendment rights. 667 F.2d at 1370. A similar inquiry makes sense in this case; Carmichael has a right to investigate his case, but that right will give way if his investigation is likely

97

to be fruitless. Second, the court has to consider the likely materiality of any evidence that will be turned up by the website. In all of the above cases, the key limit on the defendant's right to obtain witnesses or to obtain evidence from the government is materiality. See, e.g., Valenzuela-Bernal, 458 U.S. at 873, 102 S.Ct. at 3449; Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97; Roviaro, 353 U.S. at 60, 77 S.Ct. at 628. Third, the court must consider the government's interest in protecting its witnesses and agents. Roviaro, 353 U.S. at 59, 77 S.Ct. at 627.

a.  Likelihood of Producing Evidence

Some elements of Carmichael's site are closely analogous to familiar and time-tested investigative techniques. For example, the use of photographs and names of witnesses as a way to gather evidence in a criminal investigation is well-established. Agent Borland testified that DEA agents regularly look for information during investigations by showing photographs of the people under investigation. The

98

idea, presumably, is to gather impeachment evidence about the individuals. The more general request for information on the website is also a familiar technique. Thus, it would not be surprising if an attorney or private investigator working for Carmichael took the same photographs that are on the website and went door-to-door asking for information. Such an investigative tactic might well produce relevant evidence about the individuals pictured or about the case generally.

The fact that Carmichael is using an internet website does not necessarily make this tactic less likely to produce evidence. Indeed, a number of federal investigative agencies put 'wanted posters' accompanied by requests for information on their websites.[52] The use of a website would be particularly useful for a defendant with few resources;

---

52. See, e.g., Federal Bureau of Investigation, Most Wanted, at http://www.fbi.gov/mostwant.htm (last visited June 15, 2004); Drug Enforcement Administration, DEA Fugitives, New Orleans Fugitives, at http://www.dea.gov/fugitives/orleans/orl-list.htm (last visited June 15, 2004).

99

they are relatively inexpensive to produce and can reach a wide audience.

That being said, the court has some difficulty finding that Carmichael's web-page will produce evidence. First, the site is virtually impossible to find on the internet without knowing the exact internet address. A "Google" search for "Carmichael case," "Leon Carmichael," and the names of the witnesses and agents pictured on the site does not produce the site. This means that it is less likely that a person previously unknown to Carmichael with information about his case will see the site.[53] The newspaper advertisement featuring the website probably drew viewers to the site, however, and, it must be noted, the government's efforts to shut the site down, and the media coverage thereof, probably drew yet more viewers. Second, the www.carmichaelcase.com site does not include a way to

---

53. This fact also casts a doubt on the utility of the 'wanted poster' format as a means to get the viewer's attention; the only people who will see the site are those already interested enough to type in the internet address.

100

post information or send an email with information. This too makes it less likely that the site will actually result in evidence or information about the site.

b. Materiality

Carmichael's claim here rests on his right to look for evidence that he does not already have and witnesses he has not already interviewed; thus it will be difficult for him to articulate how his website will produce material evidence. Accordingly, in assessing the likely materiality of any evidence or testimony that Carmichael could uncover with his website, the court applies a less rigorous test for materiality. See Valenzuela-Bernal, 458 U.S. at 870, 102 S.Ct. at 3448.

Because Carmichael is looking for information about particular individuals--'informants' and 'agents'--the relevant factors in the Roviaro line of cases are a useful way of assessing materiality. In Roviaro, the Supreme Court held that the government's privilege to withhold the

identity of informants must give way if "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." 353 U.S. at 60, 77 S.Ct. at 628. The Eleventh Circuit has identified two factors useful for determining the relevance of an informant's identity: "the extent of the informant's participation in the criminal activity" and "the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant." United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985). Although the court is not aware of Carmichael's asserted defense, these factors are nonetheless useful for determining whether any information that could result from the Carmichael case web-page would be material to his defense.

The court has no basis for determining "the extent of [Pettis's and Salery's] participation in the criminal activity," Tenorio-Angel, 756 F.2d at 1509, and thus has no

102

way of deciding the extent to which information about them would be material to Carmichael's defense. The court has heard nothing about Salery, and Pettis's testimony at this court's hearing revealed nothing about her role in the offense. In fact, Pettis stated that she knows of nothing illegal done by Carmichael.

The court is familiar with Denton and George from Carmichael and his co-defendant Freddie Williams's motions to suppress evidence. <u>United States v. Williams</u>, Crim. Action No. 2:03cr259-T, 2004 WL 936340, at *1-3 (M.D. Ala. Apr. 8, 2004) (Thompson, J.). Both Denton and George have told investigators that they worked for Carmichael as part of his drug-distribution operation, and it appears that Denton and George played substantial roles in the alleged criminal activity at issue here. Perhaps more importantly for assessing the possible materiality of impeachment evidence about them, it appears that they will be important witnesses against Carmichael. Thus, it is likely that

impeachment evidence about Denton or George would be material to Carmichael's defense.

The court must modify its inquiry with respect to the agents pictured on Carmichael's site, DeJohn, Whittle, Halasz, and Greenwood. Obviously, the court should not ask about their role in the criminal activity; rather, it makes sense to ask about their role in the investigation of Carmichael. The greater their role, the more likely it is that impeachment evidence about them will be material to Carmichael's defense. The court is not aware of Whittle and Greenwood's role in the investigation of Carmichael. DeJohn was very involved in the investigation, however; from what appears in the record, he made the initial contact with George and Denton, and he supervised the search of Williams's residence. Halasz appears in the record as the agent who arrested Carmichael in November 2003. Accordingly, the court finds it conceivable--albeit very unlikely--that if information came in from Carmichael's

104

website about DeJohn or Halasz, it would be material to Carmichael's defense.

### c. The Government's Interest

The court addressed the government's interest in protecting its witnesses and agents above and concluded that the evidence in this case does not show that Carmichael's website poses a serious and imminent risk to either.[54]

As with the court's discussion of Carmichael's First Amendment rights, the court finds that the protective order sought by the government is not warranted.

## IV. CONCLUSION

This case presents a conflict between, on the one hand, the government's interests in protecting the safety of its witnesses and agents and in enforcing the law, and, on the other hand, Carmichael's less tangible constitutional interests in free speech and preparing his defense.  Put

---

54. See supra pp. 87-90.

105

another way, the government has argued that if Carmichael's site stays up, physical harm could come to witnesses and agents and the government could be inhibited from enforcing the law in the future, while Carmichael has argued that, if the site is taken down, his rights will be violated. The court has thus been asked not only to weigh very dissimilar interests but to predict the likelihood that future events will implicate those interests.

As professors Rotunda and Nowak have observed in writing about the constitutionality of prior restraints on speech, this posture creates an incentive for the court to over-predict the danger posed by Carmichael's website.[55] If the court permits the site to remain up and a witness or agent is harmed, the court will be blamed for predicting incorrectly. However, if the court restricts or prohibits Carmichael's site, few will even be able to judge whether the court predicted accurately because the site will no

---

55. 4 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure 320-21 (3d ed. 1999).

106

longer be available in the same form, if at all. Thus, the safest course for the court is to over-predict the danger posed by Carmichael's site. Indeed, when confronted with a conflict between the public safety and an individual's rights, it is almost always going to be most comfortable to err on the side of public safety.

The antidote to this incentive is to examine rigorously the government's claim that Carmichael's website poses a threat. The court has done this and concludes that, while the website certainly imposes discomfort on some individuals, it is not a serious threat sufficient to warrant a prior restraint on Carmichael's speech or an imposition on his constitutional right to investigate his case. This court appreciates the discomfort that attends involvement in matters of public controversy, but it is bound to weigh the interests of all parties.

The court emphasizes, though, that a few differences in Carmichael's site could have changed the court's calculus. Nonetheless, for the reasons discussed above, the government

107

has not made its case that the protective order it seeks is warranted.

Accordingly, it is ORDERED that the renewed motion for a protective order, filed by the government on April 27, 2004 (doc. no. 181), is denied.

DONE, this the 20th day of July, 2004.

                                      /s/ Myron H. Thompson
                                   UNITED STATES DISTRICT JUDGE

# WANTED

## Information on these Informants and Agents


**Robert Patrick Denton**
(Informant)


**Sherry D. Pettis**
(Informant)


**Gary Wayne George**
(Informant)


**Wallace Salery**
(Informant)

(Picture Coming)
**Raymond David DeJohn**
(Agent)

(Picture Coming)
**Devin Whittle**
(Agent)

(Picture Coming)
**Thomas Halasz**
(Agent)

(Picture Coming)
**Robert Greenwood**
(Agent)

If you have any information about these informants and agents, regardless of how insignificant you may feel it is.
Please contact:

Attorney Steve Glassroth: (334) 263-9900

Attorney Ron Wise: (334) 260-0003

Attorney Wesley Pitters: (334) 265-3333

Attorney Elizabeth Anthony: (205) 930-5900

**If incarcerated, please call collect.**

(Please note: This web site, or any posters, and advertisements concerning the Carmichael Case, is definitely not an attempt to intimidate or harass any informants or agents, but is simply to an attempt to seek information. The Carmichael Case will not be a "closed door" case. Pictures (when available), names and testimonies of informants, agents and witnesses will be on television, on the web site, on radio and published in newspapers. Mr. Carmichael maintains his innocence and wants the public to know all the facts as well as the all the parcipants in this case).