IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:03-cr-259-001-T |
| | ) |
| LEON CARMICHAEL, SR., | ) |
| et al. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LEON CARMICHAEL'S MOTION TO STRIKE SURPLUSAGE FROM SUPERSEDING INDICTMENT

The motion to strike surplusage presents for consideration whether the government may add allegations to an indictment that relate not to any elements of the offense, but instead merely form a factual predicate for sentencing enhancements under the United States Sentencing Guidelines ("the Guidelines") that the government intends to seek. The government has done so in this case in order to protect its ability to obtain sentencing enhancements in case of conviction should the United States Supreme Court hold that *Blakely v. Washington*, 124 S.Ct. 2531 (2004), applies to the Guidelines. As discussed herein, the government's proposed procedure for evading *Blakely*'s possible effects on the federal guideline sentencing regime constitutes prejudicial surplusage, violates existing federal law and Circuit precedent requiring judicial sentencing, due process and other constitutional rights, and the doctrine of separation of powers. As shown below, Mr. Carmichael's motion should be granted.

### INTRODUCTION

On January 21, 2004, the grand jury returned a superseding indictment against Leon Carmichael, Sr., charging him with, in Count One, conspiracy to possess with intent to distribute and distribution of 1000 kilograms or more of marijuana, and, in Count Two, conspiracy to commit money laundering. In response to the *Blakely* decision, on August 17, 2004, the government obtained another superseding indictment from the grand jury.

In addition to certain changes that are not at issue here, the indictment changes Count One to allege that Mr. Carmichael conspired to possess with intent to distribute 3000 kilograms (rather



than 1000 kilograms or more) of marijuana, left Court Two unchanged and added an entirely new section called "Notice of Additional Factors." This new section sets out the sentencing enhancements the government apparently intends to seek, and seeks to lay a factual predicate for each enhancement. In that section, the government alleges that, in committing the offense charged in Count One of the indictment, Mr. Carmichael "was an organizer or leader of criminal activity that involved five or more participants and was otherwise extensive, as described in U.S.S.G. § 3B1.1(a)"; "used or attempted to use a person less than eighteen years of age to commit the offense and assist in avoiding detection of and apprehension for, the offense, as described in U.S.S.G. § 3B1.4"; "[r]ecklessly created a substantial risk of death and serious bodily injury to another person in the course of fleeing from a law enforcement officer, as described in U.S.S.G. § 3C1.2,"; and committed an offense in which "a dangerous weapon, to wit, four firearms... were possessed, as described in U.S.S.G. § 2D1.1(b)(1)." Superseding Indictment at 2-3 (August 17, 2004). The entire "Notice of Additional Factors" section should be stricken as surplusage, and any proof at trial on those issues should be precluded.

As the Court is aware, the United States Sentencing Guidelines created a complex system for setting a sentence for each convicted defendant based on numerous factors. Starting with a prescribed base offense level for the offense of conviction, an adjusted offense level is arrived at through the addition of various sentencing enhancements and the subtraction of various downward adjustments, where facts in support of each were found. As enacted, the determination of the applicability of each of the adjustments, upward and downward, is to be made by the sentencing judge, not the jury, unfettered by the rules of evidence, and on the basis of a preponderance of evidence, rather than beyond a reasonable doubt.

In *Blakely*, the Supreme Court held that the State of Washington's sentencing scheme, which is similar to the federal sentencing scheme, was unconstitutional under the Sixth Amendment in that it authorized sentences above the legally prescribed maximum sentence based on factors found by a judge, rather than either having been admitted by the defendant in a guilty plea or found by a jury

2

beyond a reasonable doubt. *Blakely* has created much confusion in the federal courts, and sent the Department of Justice scrambling for ways to respond to the opinion. Courts have reached conflicting conclusions over whether *Blakely* applies to the Guidelines, and the Supreme Court has granted certiorari in two cases, *United States v. Booker*, __ S.Ct. __, 2004 WL 1713654 (August 2, 2004), and *United States v. Fanfan*, __ S.Ct. __, 2004 WL 1713655 (August 2, 2004), that squarely present the issue. These cases are scheduled for oral argument on October 4, 2004.

On September 2, 2004, the Eleventh Circuit held that *Blakely* does not apply to the Guidelines. *United States v. Reese*, _ F.3d _, 2004 WL 1946076 (11th Cir. 2004). "*Blakely* [does not] compel[s] an alteration of the established view of the Guidelines as a tool for channeling the sentencing court's discretion within a crime's minimum and maximum sentence provided in the United States Code, with that maximum being the only constitutionally relevant maximum sentence." *Id.* at *4. The court accordingly instructed district courts to continue sentencing under the Guidelines until the Supreme Court issues its opinion on the issue. *Id.* That decision of course, governs the actions of this Court unless and until the United States Supreme Court overrules *Reese*.

*Reese* has, at least for the time being, obviated any need for inclusion of sentencing factors in the indictment. Accordingly, the "Notice of Additional Factors" section should be stricken. Under applicable Eleventh Circuit law, there is no need for a jury finding of facts necessary to impose sentencing enhancements; were there a conviction, the Court, not the jury, would determine whether the various sentencing enhancements described in the superseding indictment apply.

In this case, the government sought, and the grand jury issued, a superseding indictment prior to the Eleventh Circuit's decision in *Reese*. The government inserted the "Notice of Additional Factors" section in an effort to ensure, in its view, that the indictment may be sufficient should the Supreme Court declare Blakely applicable to the Guidelines. The question before the Court at this time is whether that measure was appropriate. As discussed herein, it is not.

By inserting the "Notice of Additional Factors" section, the government seems to assume that if the Supreme Court rules Blakely applicable to the Guidelines, the Guidelines will remain

3

intact and fully controlling of any sentence to be calculated. The government's apparent proposal to rescue the Guidelines is to simply insert the jury as the entity to determine the upward adjustments the government will seek to impose. It evidently leaves to the court, not the jury, determination of all other facts, including all potential downward adjustments.

This procedure is neither legally permissible nor sensible. As an initial matter, the procedure anticipated by the insertion of the "Notice of Additional Factors" section depends upon a determination by this Court that the guidelines are severable – in other words, that the unconstitutional parts of the guidelines can be severed but that the system will otherwise remain intact. This is a risky assumption, and one that several courts have rejected. *See, e.g., United States v. Mueffelman*, 327 F.Supp.2d 79 (D. Mass. 2004); *United States v. Einstman*, 325 F.Supp.2d 373 (S.D.N.Y. 2004); *United States v. Marrero*, 325 F.Supp.2d 453 (S.D.N.Y. 2004); *United States v. Lamoreaux*, 2004 WL 1557283 (W.D. Mo. July 7, 2004). This is also contrary to the position the government has taken with respect to the severability of the Guidelines. In any case, because the law of this Circuit is that the Guidelines are unaffected by *Blakely*, and because this Court is bound by the Circuit precedent, any analysis of the severability of the Guidelines is inapplicable.

Instead, this memorandum will focus on other issues. Those issues are whether the Notice of Additional Factors should be stricken as surplusage, whether the Court has the authority to do what the government requests, and whether the insertion into the indictment of sentencing enhancements promulgated by the Sentencing Commission violates the separation of powers doctrine.

I.  **The "Notice Of Additional Factors" Section Constitutes Prejudicial Surplusage Which Should Be Stricken Under Federal Rule Of Criminal Procedure 7(d)**

In an attempt to preserve its ability to apply sentencing enhancements to Mr. Carmichael should he be convicted, the government has added to the superseding indictment various sentencing factors. However, the presence of these factors in the indictment violates Mr. Carmichael's constitutional rights. Furthermore, the allegations are prejudicial and irrelevant to the charged

4

offense. Accordingly, they should be stricken from the indictment.

The purpose of an indictment is to inform the accused "of the nature and cause of the accusation" against him and to protect him from being subjected to double jeopardy. United States Constitution Amendments V, VI. Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite statement of the essential facts constituting the offense charged...." *See also Hamling v. United States*, 418 U.S. 87, 117-18 (1974); *United States v. Debrow*, 346 U.S. 374, 376 (1953). This rule places limitations on what can be included in an indictment. As the former Fifth Circuit explained,

> The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts involved surely can be prejudicial.... Although the path between overly cryptic brevity and prejudicial superfluity in all portions of the indictments may be narrow, the "plain, concise and definite written statement of the essential facts constituting the offense charged," required by Fed. R. Crim. P. 7(c), is the only legal way through the gate.

*United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

Federal Rule of Criminal Procedure 7(d) provides defendants with a mechanism for challenging indictments that do not comply with Rule 7(c)(1). It states: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d) (2004). As the advisory notes to Rule 7(d) explain, "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." A motion to strike surplusage is committed to the sound discretion of the trial court, and will be granted only where the defendant can show that the challenged words are immaterial to the offense charged and inflammatory and prejudicial. *See, e.g., Bullock*, 451 F.2d at 888.

The challenged language is immaterial to the offense charged and prejudicial. The sentencing enhancements are neither elements nor requirements for a conviction under the relevant charged offense, a violation of 21 U. S. C. § 846. In addition, the presence of the sentencing

5

enhancements in the indictment violates the constitutional rights of the accused.

The Grand Jury Clause of the Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury ... nor shall any person ... be deprived of life, liberty, or property without due process of law ...." The sentencing enhancements stated in the superseding indictment are not infamous crimes, nor are they elements of such crimes. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Staples v. United States*, 511 U.S. 600, 604 (1994); *Liparota v. United States*, 471 U.S. 419, 424, 105 S. Ct. 2084, 2087 (1985) (citing *United States v. Hudson*, 7 Cranch 32, 3 L.Ed. 259 (1812)). Because the Guidelines sentencing enhancements were created by the U.S. Sentencing Commission, an agency of the judiciary, rather than by Congress, and are not statutory offenses with a basis in the United States Code, they may not be treated as elements of infamous crimes under the Fifth Amendment. *See United States v. Mutchler*, _ F.Supp.2d _, 2004 WL 2004080 *3-4 (S.D. Iowa).[1]

Additionally, the sentencing allegations added to the superseding indictment are highly prejudicial and inflammatory. The superseding indictment contains allegations that Mr. Carmichael was the organizer and leader of an extensive criminal activity, used or attempted to use minors to commit the offense and to assist in avoiding detection, recklessly created a substantial risk of death and serious bodily injury while fleeing a law enforcement officer, committed an offense in which four firearms were possessed. It is plain to see that these allegations describe matters that are not only inflammatory and prejudicial, but also unnecessary for a conviction of the offense charged. Furthermore, the presence of these factors in the indictment would likely confuse the jury.

The court in *United States v. Mutchler*, faced with the same issue and arguments, granted the

---

[1] For the same reason, this Court lacks jurisdiction over the matters asserted in the aggravating factors. 18 U.S.C. § 3231 vests the district courts of the United States with jurisdiction "of all offenses against the laws of the United States." Sentencing enhancements are not "offenses against the United States." Accordingly, this Court lacks subject matter jurisdiction over the trial of the matters asserted in the aggravating factors.

6

defendant's motion to strike. The court agreed "that the aggravating factors are not criminal conduct defined by Congress and, as such, have no place within the charging documents against the Defendants." 2004 WL 2004080 at *4 (citing *United States v. Worrall*, 2 U.S. 384 (28 F. Cas. 774, 776) (1798) ("It will be admitted, that all the judicial authority of the Federal Courts, must be derived, either from the Constitution of the United States, or from the Acts of Congress made in pursuance of that Constitution."); *Kitchens v. Steele*, 112 F. Supp. 383, 386 (W.D.Mo.1953) ( "[In] criminal cases ... [t]he jurisdiction of [Federal] Courts is wholly derived from Acts of Congress."). Rather than defining criminal offenses, "the [sentencing] factors themselves are based in sentencing guidelines with the power to do nothing more 'than fetter the discretion of sentencing judges to do what they have done for generations--impose sentences within the broad limits established by Congress.'" *Mutchler* at *4 (citing *Mistretta v. United States*, 488 U.S. 361, 396-97 (1989)). Given their status as "guidelines meant to act as procedural rules for the court," rather than statutory offense definitions, the court held that the sentencing enhancements charged in the indictment "do not provide sufficient authority to bring the allegations contained within them properly before a trier of fact in a United States courtroom." *Id.*

On the issue of prejudice, the *Mutchler* court also found for the defendant. The indictment in that case, which charged conspiracy to manufacture and distribute methamphetamine, contained sentencing-related allegations regarding drug amounts, substantial risk to human health and the environment, and conspiracy leadership. The court found the inclusion of these prejudicial, explaining that "the aggravating factors in the present case invite the jury to consider a long narrative of highly prejudicial and confusing allegations... untethered to the statutory basis for the original count one in the Indictment." *Id.* at * 5. The same holds true in this case.

## II.  The Procedure Proposed By the Government Constitutes an Impermissible Exercise of Court Power

The procedure the government is suggesting the Court to engage in here is an impermissible exercise of court power because the Court has no authority to fashion the remedy requested by the

7

government here. Fed. R. Crim. P. Rule 32(i)(3) specifically reserves to the judge, not the jury, the duty of making sentencing findings. U.S.S.G. § 6A1.3(b) assigns the role of factfinder to the judge, not the jury, and that provision is made mandatory by 18 U.S.C. § 3553(b). Thus the proposed submission of these issues to the jury is in direct contradiction to those provisions, as well as *Reese*.

In *United States v. Jackson*, 390 U.S. 570, 578-81 (1968), the Supreme Court held that, where a particular federal sentencing statute is unconstitutional, a federal judge has no authority to devise his own procedure, unauthorized by statute or rule, simply because the procedure devised, if properly enacted by Congress, would itself pass constitutional muster. In *Jackson*, the Court considered the federal kidnapping statute. It contained a mandatory death penalty where a trial jury recommended it, thereby making that penalty possible only for those defendants who exercised the right to trial by jury. After agreeing with the lower courts that the procedure was unconstitutional, the Court considered the government's claim that the trial court in every case could convene a special penalty phase jury. The Court rejected the notion, declining to read into a silent statute Congressional authority to develop a procedure for effectuating Congress's intent.

Applying that same reasoning here, the fact that Congress could authorize the submission of sentencing factors to juries does not, without properly enacted legislation, allow this Court to do it on its own. That is particularly true where doing so directly contradicts current law, as submission to the jury of sentence enhancement factors would be here.

### III. The Procedure Proposed By the Government Violates The Separation of Powers Doctrine

With the inclusion of sentencing enhancements in the superseding indictment in case the Supreme Court holds that *Blakely* applies to the Guidelines, the government presumably takes the position that imposition of Guidelines sentencing enhancements would pass constitutional muster so long as those enhancements were alleged in a grand jury indictment and proven beyond a reasonable doubt. On the contrary, such procedure would undermine the constitutional doctrine of separation of powers, as it would effectively place the purely legislative function of defining the

8

elements of crimes in the judicial branch.

The separation of powers doctrine is implied in the Constitution. The doctrine's purpose is to guarantee independence to each of the three branches of the federal government. "[I]n our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial functions." *United States v. Evans*, 333 U.S. 483, 486 (1948) (footnote omitted). *See also Patterson v. New York*, 432 U.S. 197, (1977) (defining criminal conduct as a task "left to the legislative branch").

In *Mistretta v. United States*, the Supreme Court upheld against a separation of powers challenge Congress's decision to place the Sentencing Commission within the judicial branch of the United States. In cases involving the judicial branch, the Court explained, "we have expressed our vigilance against" the danger "that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches.'" 488 U.S. at 383 (quoting *Morrison v. Olson*, 487 U.S. 654, 680-681 (1988)). "Consistent with the separation of powers, Congress may delegate to the Judicial Branch nonadjudicatory functions that do not trench upon the prerogatives of another Branch and that are appropriate to the central mission of the Judiciary." *Mistretta*, 488 U.S. at 388. *See also id.* at 385 ("Congress' decision to create an independent rulemaking body to promulgate sentencing guidelines and to locate that body within the Judicial Branch is not unconstitutional unless Congress has vested in the Commission powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary.")

In holding that Congress's creation of the Sentencing Commission in the judicial branch presented no separation of powers problem, the Court first explained why the placement of the sentencing commission within the judiciary had not improperly increased, or "aggrandized," the power of that branch.

> [A]lthough the Commission wields rulemaking power and not the adjudicatory power exercised by individual judges when passing sentence, the placement of the Sentencing Commission in the Judicial Branch has not increased the Branch's authority. Prior to the passage of the Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission: what sentence is appropriate

9

> to what criminal conduct under what circumstances. It was the everyday business of judges, taken collectively, to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them. The Sentencing Commission does no more than this, albeit basically through the methodology of sentencing guidelines, rather than entirely individualized sentencing determinations. Accordingly, in placing the Commission in the Judicial Branch, Congress cannot be said to have aggrandized the authority of that Branch or to have deprived the Executive Branch of a power it once possessed. Indeed, because the Guidelines have the effect of promoting sentencing within a narrower range than was previously applied, the power of the Judicial Branch is, if anything, somewhat diminished by the Act. And, since Congress did not unconstitutionally delegate its own authority, the Act does not unconstitutionally diminish Congress' authority. Thus, although Congress has authorized the Commission to exercise a greater degree of political judgment than has been exercised in the past by any one entity within the Judicial Branch, *in the unique context of sentencing*, this authorization does nothing to upset the balance of power among the Branches.

488 U.S. at 396 [emphasis added]. In sum, the Court held that because sentencing was within the basic powers of the judicial branch, Congress's delegation of authority in that area posed no threat to the balance of powers. The Court further explained:

> Nor do the Guidelines, though substantive, involve a degree of political authority inappropriate for a nonpolitical Branch. Although the Guidelines are intended to have substantive effects on public behavior (as do the rules of procedure), they do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations-- impose sentences within the broad limits established by Congress. Given their limited reach, the special role of the Judicial Branch in the field of sentencing, and the fact that the Guidelines are promulgated by an independent agency and not a court, it follows that as a matter of "practical consequences" the location of the Sentencing Commission within the Judicial Branch simply leaves with the Judiciary what long has belonged to it.

488 U.S. at 396. The Court concluded that "since substantive judgment in the field of sentencing has been and remains appropriate to the Judicial Branch, and the methodology of rulemaking has been and remains appropriate to that Branch, Congress' considered decision to combine these

10

functions in an independent Sentencing Commission and to locate that Commission within the Judicial Branch does not violate the principle of separation of powers." *Id.* at 396-97.

The government now asks this Court to use a jury to decide aggravating facts that support offense level increases. In making that suggestion, the government tacitly argues that, even if applied to the Guidelines, *Blakely* would not nullify the guidelines' enhancement provisions, but instead would merely require that such provisions apply only upon proof to a jury beyond a reasonable doubt. If the jury finds the government has proven those facts beyond a reasonable doubt, then this Court can apply the guideline enhancements that the facts trigger. The defendant disagrees.

Congress never delegated to the Sentencing Commission the authority to define elements of crimes, in whole or in part. As *Mistretta* makes clear, Congress gave the Sentencing Commission only the power to set out penalty ranges for committing such crimes. Yet to apply the Guidelines so that the enhancement provisions depend upon the Sixth Amendment right to a jury trial would be to construe such provisions as defining criminal offenses. Since Congress never delegated to the Sentencing Commission the power to enact or define crimes, even were such a delegation in principle permissible under our constitutional framework, the enhancement provisions cannot be rendered constitutional by reading into them a right to jury trial. Only Congress can make the enhancement provisions elements of crimes.

A line of Supreme Court cases makes clear that for constitutional purposes, a fact either is an element of an offense (with a constitutional guarantee that it is charged in an indictment and proved to a jury beyond a reasonable doubt) or is a mere sentencing factor, something a court can elect to take into account in sentencing within the bounds of discretion. *See, e.g., Blakely; Apprendi v. New Jersey,* 530 U.S. 466 (2000); *Castillo v. United States,* 530 U.S. 120 (2000) ("In this case we once again decide whether words in a federal criminal statute create offense elements (determined by a jury) or sentencing factors (determined by a judge)."); *Jones v. United States,* 526 U.S. 227, 232 (1999) ("Much turns on the determination that a fact is an element of an offense rather

11

than a sentencing consideration, given that elements must be charged in an indictment, submitted to a jury and proven by the Government beyond a reasonable doubt.") The Supreme Court has never left open the possibility that there could be a third classification, sentencing factors that must be proved to a jury beyond a reasonable doubt. In effect, the government proposes creating such a classification here.

Neither *Blakely* nor *Apprendi* leaves any conceptual space for a hybrid third category. Under the reasoning of these cases, any fact, other than a previous conviction, that increases the statutory maximum penalty is an element of an offense and must be charged in an indictment and proven beyond a reasonable doubt to a jury. Accordingly, if a court were to attempt to require that predicate facts for guideline enhancements be charged in an indictment and proven to a jury beyond a reasonable doubt, then this construction of the sentencing guidelines and their enabling act transforms the predicate facts into elements of aggravated crimes.

Doing so would present problems under the separation of powers doctrine. Allowing juries to consider factual questions that the Sentencing Commission alone has identified would transform the Commission's work into rules that bind or regulate the "primary conduct" of the public. *Mistretta*, 488 U.S. at 396. Yet the Court made clear in *Mistretta* that such a role would render the Sentencing Commission's work violative of the separation of powers doctrine. Indeed, allowing juries to decide facts that the Sentencing Commission -- rather than Congress – defined as significant would put the Commission in the business of exercising "legislative responsibility for establishing minimum and maximum penalties for every crime." *Id.* at 396. The *Mistretta* Court concluded that the Sentencing Commission did not have such responsibilities, and relied upon that conclusion in upholding Congress's placement of the sentencing commission in the judicial branch.

Put another way, *Mistretta* makes clear that federal courts may not extend the Sentencing Commission's role to selecting facts that juries will be asked to find. Doing so would place the Sentencing Commission in the exclusively legislative role of setting maximum sentences and elements of crimes. This would violate the separation of powers doctrine. While *Blakely* holds that

12

a jury must find the facts that render a defendant eligible for a particular maximum sentence, *Mistretta* means that the Sentencing Commission cannot promulgate such facts for a jury's determination; only Congress can. Thus, even if the Supreme Court were to apply *Blakely* to the Guidelines, it would violate the separation of powers for a jury to be asked to find the facts necessary for the current guideline enhancements and for a judge to impose the enhancements on that basis.

The procedure proposed by the government also raises the specter of an improper delegation of legislative authority to the judicial branch. In the Sentencing Reform Act of 1984, Congress delegated to an agency within the judicial branch specific powers with regard to federal sentencing law. It did not delegate the authority to define or expand any federal offenses. Nor did any other Congressional Act enact such a delegation. The authority to create and define crimes by naming their elements resides with Congress alone and is a core legislative power. Since construing guideline enhancement provisions to comply with the procedural protections of *Apprendi* and *Blakely* would transform the triggering facts into elements of new crimes, such a construction of the federal guidelines is unconstitutional, and would entail an improper delegation of legislative power to the judiciary.

The Court must strike the enhancement-related language in the superseding indictment in order to preserve the separation of powers.

## IV. Conclusion

For all the foregoing reasons, it is clear that the section entitled :Notice of Additional Factors" contained in the superseding indictment constitutes impermissible surplusage. The Court should grant the relief sought by Mr. Carmichael and enter an order directing that section be stricken.

RESPECTFULLY SUBMITTED this the 24th day of September, 2004.

s/Stephen R. Glassroth
STEPHEN R. GLASSROTH (GLA005)
LISA MONET WAYNE

13

                        Attorneys for the defendant
                        Stephen R. Glassroth
                        THE GLASSROTH LAW FIRM, P.C.
                        615 S. McDonough Street
                        Post Office Box 910
                        Montgomery, Alabama 36101-0910
                        (334) 263-9900
                        (334) 263-9940 - fax
                        firm@glassrothlaw.com

OF COUNSEL:

THE GLASSROTH LAW FIRM, P.C.
615 S. McDonough Street
Post Office Box 910
Montgomery, Alabama 36101-0910
(334) 263-9900
(334) 263-9940 - fax

Ms. Lisa Monet Wayne
950 17 Street, Suite 1700
Denver, Colorado 80202

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Matthew S. Miner, A. Clark Morris, A. Wesley Pitters, Barry Elvin Teague, Mary Elizabeth Anthony, Ronald W. Wise and Lisa Monet Wayne.

                        Respectfully submitted,
                        s/Stephen R. Glassroth
                        Stephen R. Glassroth
                        THE GLASSROTH LAW FIRM, P.C.
                        615 S. McDonough Street
                        Post Office Box 910
                        Montgomery, Alabama 36101-0910
                        (334) 263-9900
                        (334) 263-9940 - fax
                        firm@glassrothlaw.com