IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:03-cr-259-001-T |
| | ) |
| LEON CARMICHAEL, SR., | ) |
| et al. | ) |

### LEON CARMICHAEL'S MOTION IN LIMINE
### REGARDING ALLEGED STATEMENTS TO LAW ENFORCEMENT

Leon Carmichael, by undersigned counsel, moves the Court for the entry of an order directing the prosecution to refrain from introducing into evidence, eliciting any testimony relating to, in any way mentioning, or having any of its witnesses mention, or making any reference whatsoever to evidence of certain statements allegedly made by the accused to law enforcement outside the presence of counsel. In support of the motion, the following is shown to the Court:

1. Federal Rule of Evidence 402 provides that "evidence which is not relevant is not admissible." Federal Rule of Evidence 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

2. According to discovery provided by the government, on December 4, 2003, after the accused had retained counsel and the formal proceedings had begun, the accused went to the Montgomery District Office of the Drug Enforcement Administration to obtain seized items that were not being held as evidence. According to a DEA-6 prepared by Agent Raymond DeJohn, the accused stated during that meeting that "he had already resigned himself to the fact that he was going to prison for the rest of his life and that he considered a 10, 15, 20 year sentence to be a life



sentence. TFA DeJohn asked CARMICHAEL as to why did he say that. CARMICHAEL advised 'You got me.' Agents explained to CARMICHAEL that they were extending an opportunity to him (CARMICHAEL) to cooperate with law enforcement." DEA-6 prepared 12/06/03.

3. The Court should not allow any reference to the alleged statements of the accused that "he had already resigned himself to the fact that he was going to prison for the rest of his life" or the alleged comment, "you got me." These alleged statements have no probative value as to the elements of the offense, and accordingly should be deemed inadmissible under Rule 402. In addition, even if the statement were deemed somewhat probative, the admission of the statement would present a great potential for prejudice which would substantially outweigh any probative value the statement might have. The meaning of the statement and the accused's reason for making the alleged statement are unclear and suspectible to multiple interpretations. Such a statement might reflect a defeatist attitude or an assumption that the government always wins, regardless of innocence—a belief many people have. Alternatively, such a statement might refer to an expectation of conviction on one of the charged offenses, but not the other. Nevertheless, jurors might interpret the statements as a general admission of guilt, and might base their decision on this ambiguous statement rather than the evidence. The prejudice posed by the admission of this comment is further amplified because the accused would not be able to explain the meaning of the alleged comment or dispute whether he even said it without giving up his right not to testify. The Court should exclude this statement under Rule 403.

4. The Court should not allow any reference to the alleged statement "You got me" or any other statement allegedly made after that point in the conversation. As reflected in the the agent's own recounting of the conversation in the DEA-6, the agents purposefully elicited information and statements from an individual they knew to be represented by counsel outside the presence of counsel.

5. These alleged statements were obtained through violation of the accused's sixth amendment rights. The sixth amendment right to counsel attaches at the initiation of formal charges or proceedings. <u>Michigan v. Harvey</u>, 494 U.S. 344, 353 (1990). By time of this alleged interaction

with law enforcement, formal proceedings against Mr. Carmichael had already been initiated, as there had been a detention hearing. Furthermore, Mr. Carmichael had retained counsel and had exercised his right to rely on counsel "as a medium between him and the State..." Maine v. Moulton, 474 U.S. 159, 176 (1985).

6. The sixth amendment right to counsel imposes upon the government "an affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by [government] agents violates the accused's right to assistance of counsel must be made in light to this obligation." Id. "[K]nowing exploitation of the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to assistance of counsel as is the intentional creation of such an opportunity." Id.

7. As reflected in his own account of the events that transpired, Agent DeJohn knowingly exploited an opportunity to confront Mr. Carmichael by asking questions designed to elicit information and keeping him talking about his case. According to the agent's account, once Mr. Carmichael made a comment that believed he would be going to prison, the agent exploited the opportunity to confront him in the absence of counsel by asking him what he meant and offering him an opportunity to cooperate with the government. The agents' belated mention that the accused should consult with his attorney about the possibility of cooperating with the government did nothing to cure this blatant violation. Accordingly the Court should prevent the government from introducing all statements made after the agent began questioning the accused.

8. Agent DeJohn also claims that during the conversation he conducted with the accused, the accused stated that "he could not trust his own attorneys and that he "had an attorney that called the United States Attorney's Office and stated that he had a client that wanted to provide information about" him. According to DeJohn, Mr. Carmichael also insinuated that his other attorneys just had their hands out for his money."

9. The Court should prohibit introduction of or reference to these statements because they are completely irrelevant and pose an unjustifiable risk of substantial and unfair prejudice.

These statements, if brought to the attention of the jury, would be likely to bias the jurors against the defendant's counsel, and would lead them to believe that defense counsel is unethical or greedy. Introduction of such evidence would present a serious risk of discrediting the arguments and work of defense counsel for emotional reasons. The potential consequences of bias against defense counsel would be devastating for the accused, and would tend to sway the jury against the accused on the basis of feelings about defense counsel, rather than facts. Accordingly, these statements should be excluded under Federal Rules of Evidence 402 and 403.

10. Agent DeJohn further alleged: "During the conversation CARMICHAEL stated that his attorney explained that several individuals were coming forward and providing information about him (CARMICHAEL). CARMICHAEL advised that most of those people would be lying, indicating that individuals would not be lying."

11. The Court should prohibit introduction of or reference to these alleged statements, and to Agent DeJohn's interpretation of the implication of the alleged statements. As mentioned above, these statements were elicited by Agent DeJohn in the absence of counsel in derogation of his affirmative obligation to uphold the accused's right to counsel. Moreover, these statements are not probative of the elements of the offenses charged. The fact that witnesses are cooperating with the government does not by itself prove guilt.

12. Furthermore, admitting Agent DeJohn's speculation about the implied meaning of the accused's alleged statement would be highly prejudicial. Agent DeJohn does not know what Mr. Carmichael meant by the alleged statement. The actual words allegedly used could have resulted from a poor choice of words or bad grammar. Moreover, Mr. Carmichael cannot take the stand to explain whether he made the statement and what he meant by it without forfeiting his right not to testify. Given the non-existent or slight probative value of the alleged statement, and the high potential of serious prejudice from the alleged statement, the Court should exclude evidence of the alleged statement.

6. An order entered in limine is the most effective means in terms of judicial economy, to deal with this matter and to ensure that repeated delays in the course of the trial will not occur,

as each matter may be broached by the prosecution.

WHEREFORE, Mr. Carmichael prays the Court will consider the matters set forth herein and, after due consideration and a hearing on the matter, enter an order, in limine, prohibiting the government from commenting upon, mentioning, eliciting testimony from witnesses, or permitting its witnesses to make any mention of the matters set forth herein.

RESPECTFULLY SUBMITTED this the 3rd day of November, 2004.

s/Marion Chartoff
STEPHEN R. GLASSROTH (GLA005)
LISA MONET WAYNE
MARION CHARTOFF (CHA074)
Attorneys for the defendant
Stephen R. Glassroth
THE GLASSROTH LAW FIRM, P.C.
615 S. McDonough Street
Post Office Box 910
Montgomery, Alabama 36101-0910
(334) 263-9900
(334) 263-9940 - fax
firm@glassrothlaw.com

OF COUNSEL:

THE GLASSROTH LAW FIRM, P.C.
615 S. McDonough Street
Post Office Box 910
Montgomery, Alabama 36101-0910
(334) 263-9900
(334) 263-9940 - fax

Ms. Lisa Monet Wayne
950 17 Street, Suite 1700
Denver, Colorado 80202

Ms. Marion Chartoff
Law Office of Marion Chartoff

505 S. Perry Street
Montgomery, Alabama 36104
334-264-0609
334-263-4766 - fax
mchartoff@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2004 , I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following: Matthew S. Miner, A. Clark Morris, A. Wesley Pitters, Barry Elvin Teague, Stephen R. Glassroth and Lisa Monet Wayne.

                                              Respectfully submitted,
                                              s/Marion Chartoff
                                              Ms. Marion Chartoff
                                              Law Office of Marion Chartoff
                                              505 S. Perry Street
                                              Montgomery, Alabama 36104
                                              334-264-0609
                                              334-263-4766 - fax
                                              mchartoff@bellsouth.net