# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES OF AMERICA    )
           )
       vs.            )        CASE NO.  2:03-CR-259-T
           )
LEON CARMICHAEL, SR., and    )
FREDDIE WILLIAMS         )

## DEFENDANTS' BRIEF IN SUPPORT OF
## DEFENDANTS' JOINT MOTION FOR CONTINUANCE OR CHANGE
## OF VENUE DUE TO PREJUDICIAL PRETRIAL PUBLICITY, AND MOTION FOR
## GAG ORDER TO PREVENT FUTURE PRESS RELEASES BY THE GOVERNMENT

The Defendants submit this brief in support of their *Motion for Continuance or Change Of Venue Due to Prejudicial Pretrial Publicity, and Motion for Gag Order to Prevent Future Press Releases by the Government* (hereafter "the Motion").  As detailed in the Motion, the United States government waited until shortly before the scheduled trial date to indict George David Salum III on obstruction of justice charges directly related to this case and then guaranteed that the venire would be contaminated with this information by issuing a press release regarding the indictment to major media outlets in the Middle District of Alabama.  That press release resulted in highly prejudicial news coverage throughout the Middle District of Alabama.  Mr. Carmichael seeks a continuance or a change of venue to ensure that he can obtain a fair trial before an unbiased jury.   In addition, although it would do nothing to correct the serious damage already done by the recent press release, Mr. Carmichael requests a gag order to prevent the United States government from issuing any more press releases related to this case or the Salum case during the pendency of this case.



GOVERNMENT
EXHIBIT
45

Background

This case has attracted major publicity in the Middle District of Alabama since its inception. The defendant, Leon Carmichael, is a prominent African-American businessman who is the owner of the Carmichael Center, a multi-use entertainment complex in Montgomery, operates various other businesses, including but not limited to a trucking company and nightclubs, and owns significant real estate and rental property.

The news media, particularly WSFA and the Montgomery Advertiser, among other media outlets viewable throughout the Middle District of Alabama, have run numerous stories about various highly prejudicial and inflammatory allegations against Mr. Carmichael. Numerous stories were run about his arrest, including a story run by WSFA falsely reporting that large amounts of marijuana were found in Mr. Carmichael's possession. During the summer of 2004, numerous stories ran regarding the government's efforts to shut down Mr. Carmichael's website, and this coverage regularly repeated the government's unproven accusations that Mr. Carmichael is involved in witness tampering or intimidation. News stories in November 2004 covered the withdrawal from the case of attorney Stephen Glassroth under accusations of criminal wrongdoing, despite the fact that this Court had imposed a gag order on the participants in the case. Stories in January 2005 reported that a grand jury was investigating Mr. Carmichael for statutory rape, despite the legally mandated secrecy of state grand jury proceedings. (The case was no-billed.) The news media have also run numerous stories on the criminal investigation regarding the accusations that a private investigator working on the Carmichael defense illegally obtained a photograph of DEA Task Force Agent David DeJohn.

This string of stories culminated with extensive media coverage last week regarding the indictment of George Salum for obstructing justice. See Motion. These stories insinuated that

Mr. Carmichael and his attorneys engaged in criminal conduct in an effort to intimidate

government witnesses, and the coverage could be read to suggest that Mr. Carmichael and his

lawyers were involved in bribing a police officer.   The stories also create the appearance that Mr.

Carmichael's current attorneys have engaged in wrongdoing, as there is no indication in many of

the stories which attorneys are alleged to have been involved in wrongdoing. This media

coverage has introduced irrelevant, prejudicial and misleading information about Mr. Carmichael

and his attorneys to the venire, which raises a serious risk that the jurors will render a verdict on

the basis of inadmissible and improper information.  The impact of the most recent stories as

well as the cumulative impact of all of the media attention has been to contaminate the jury pool

and make it impossible for Mr. Carmichael to pick a jury uninfluenced by media coverage.


Motion for a Continuance

One of the remedies courts have for ameliorating the harmful impact of pretrial publicity

is a continuance.  As the United States Supreme Court explained:

> Due process requires that the accused receive a trial by an impartial jury free from outside
> influences. Given the pervasiveness of modern communications and the difficulty of
> effacing prejudicial publicity from the minds of the jurors, the trial courts must take
> strong measures to ensure that the balance is never weighed against the accused...
> *[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent
> a fair trial, the judge should continue the case until the threat abates,* or transfer it to
> another county not so permeated with publicity.

Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522 (1966).

The most recent publicity regarding the indictment of David Salum, coming as close as it

has before the trial date, has created a reasonable likelihood that Mr. Carmichael will not be able

to receive a fair trial by an impartial jury.  As discussed in the Motion, coverage of the Salum

story ran on the front page above the fold of the May 27, 2005 Montgomery Advertiser, under the

Case 2:03-cr-00259-MHT -WC Document 390 Filed 06/03/05 Page 4 of 9

sensational headline "Ex-police lieutenant indicted" with the following subtitle: "George David

Salum III is charged with obstructing justice in federal drug case." The story was also covered

on WSFA and picked up by the Associated Press, which distributed the story to various

newspapers, including the Ledger-Enquirer in Phenix City. The story was disseminated

throughout the Middle District of Alabama.[1] The media coverage included very damaging

allegations against Mr. Carmichael and his counsel. Given this extensive and damaging

publicity, there is a serious concern that the Mr. Carmichael cannot obtain a jury untainted by this

prejudicial press coverage. Thus, under the test set forth in Sheppard, Mr. Carmichael is entitled

to a continuance so that the impact of the recent media stories will have time to dissipate.


Motion for Change of Venue

In the alternative, Mr. Carmichael moves for a change of venue so that he can obtain a

jury not compromised by the extensive, highly prejudicial press coverage of this case and the

Salum investigation and indictment.

Fed. R. Crim. Pro. 21(a) provides for transfer from one federal district to another for trial

by reason of prejudice in the district. Specifically, Rule 21(a) instructs that:

> The court upon motion of the defendant shall transfer the proceeding as to that defendant
> to another district whether or not such district is specified in the defendant's motion if the
> court is satisfied that there exists in the district where the prosecution is pending so great
> against the defendant that the defendant cannot obtain a fair and impartial trial at any
> place fixed by law for holding court in that district.

---

[1]The defense believes the story was distributed to other media outlets as well, as it was picked up by the Associated Press. However, counsel have not had sufficient time to gather all of the media coverage relevant to this motion because of the impending trial date and the very recent decision to file this motion based on the unexpected government press release about the Salum indictment. The defendant requests additional time to obtain all of the media coverage and submit additional evidence to the Court.

The Supreme Court has held that in some cases, pretrial publicity may be so widespread that a court contemplating a change of venue can presume prejudice. Irvin v. Dowd, 366 U.S. 717, 723 (1961) ("[T]he test is whether the nature and strength of the opinion formed are such as in law necessarily raise the presumption of partiality." (citation omitted.)) While the Court acknowledged that "[i]t is not required [] that the jurors be totally ignorant of the facts and issues," it cautioned that the modern availability of "widespread and diverse methods of communication . . . cannot foreclose inquiry as to whether, in a given case," a defendant is deprived of liberty without due process because of jurors' preconceptions. Id. Presumptive prejudice can be proven when the "defendant proffers evidence of pervasive community prejudice in the form of highly inflammatory publicity or intensive media coverage." Capo v. Lukefahr, 595 F.2d 1086, 1090 (5th Cir. 1979). As stated above, the test is whether "there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial;" if such conditions exist, the judge should continue the case or transfer it to another district where the publicity will pose less of a problem. Sheppard, 384 U.S. at 363, 86 S. Ct. 1507 (1966).

The Defendant's burden is not a heavy one. "The right to a change of venue is a constitutional right. If it is improbable that a fair and impartial trial can be given to the defendant, the court may not refuse a motion." Harvey v. State, 887 S.W.2d 174, 1 75-76 (Tex. App. 1994). See also United States v. Green, 373 F. Supp. 149, 151 (E.D. Pa. 1974) (defendant must be protected and prejudicial news coverage that prevents a fair trial; transfer of venue is a proper safeguard against such prejudice (citing Sheppard)).

In this case, highly prejudicial news coverage has severely undermined Mr. Carmichael's right to a fair trial. If the Court does not grant a continuance, the Court should grant a motion for change of venue to protect the defendant's right to a fair trial.

Motion for Gag Order

Although the damage from the government's recent press release cannot be undone, the

Defendant requests that the Court impose a gag order on the United States government to prevent

future press releases and attempts to influence the venire during the remainder of the case.   It is

well established that a court may issue a gag order to restrain trial participants from making

extrajudicial statements when there is a reasonable likelihood that prejudicial publicity may

prevent a fair trial.  See Robert S. Stephen, *Prejudicial Publicity Surrounding a Criminal Trial:*

*What a Trial Court Can Do To Ensure a Fair Trial in the Face of a "Media Circus,"* 26

SUFFOLK U. L. REV. 1063, 1084 (1992).  By issuing a gag order, a trial court may prohibit

lawyers, court personnel, and others directly involved with the trial from making any harmful

extrajudicial statements outside the courtroom setting.  *Id.*  In Sheppard, a case in which there

was extensive media coverage throughout the trial– as there surely will be in this case– the

United States Supreme Court stated that the trial court should have prohibited extrajudicial

statements by trial participants due to the intense media scrutiny surrounding the case. 384 U.S.

333, 361 (1966).  The Court held that the trial court's failure to protect the defendant from the

prejudicial publicity denied him his right to a fair trial in violation of due process. Id. at 335.

The Court further stated that the trial court should have controlled the release of information to

the media, and made clear that it would permit a trial judge to issue a gag order to prevent trial

participants from frustrating the proper functioning of court proceedings in circumstances where

pretrial publicity would threaten a defendant's constitutional right to a fair trial.  Id. at 361-362.

In this case, the United States government has already issued one very suspiciously timed

press release that has had deleterious effects on Mr. Carmichael's ability to obtain a fair trial.

Mr. Carmichael respectfully requests that the Court impose a gag order on the United States and

its agents to prevent any future releases or statements about this case or the Salum case to the

media during the pendency of this case.

Respectfully submitted, this the 3rd day of June, 2005.

/s/ Marion Chartoff
MARION CHARTOFF
ATTORNEY FOR LEON CARMICHAEL, SR.
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
(334) 263-4766

OF COUNSEL:

RONALD R. BRUNSON
2126 Morris Avenue
Birmingham, Alabama 35203
(205) 252-2100
fax: (205) 252-2187

MARION CHARTOFF (CHA074)
Law Office of Marion Chartoff
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
Fax: (334) 263-4766
mchartoff@bellsouth.net

SUSAN G. JAMES (JAM012)
Susan G. James & Associates
600 South McDonough Street
Montgomery, Alabama 36104
(334) 269-3330
Fax: (334) 263-4888

LISA MONET WAYNE, ESQ.
950 17th Street, Suite 1800
Denver, Colorado 80202
(303) 837-1837
Fax: (303) 860-1665

BARRY ELVIN TEAGUE
ATTORNEY FOR FREDDIE WILLIAMS
P. O. Box 586
Montgomery, Alabama 36101
(334) 834-4500
Fax: (334) 834-4501

CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2005, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew S. Miner, Stephen Feaga, A. Clark Morris, and Barry Elvin Teague.

Respectfully submitted,

/s/ Marion Chartoff
MARION CHARTOFF
ATTORNEY FOR LEON CARMICHAEL, SR.
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
Fax: (334) 263-4766