```
 1            IN THE UNITED STATES DISTRICT COURT
                              FOR
 2               THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5   THE UNITED STATES
        OF AMERICA
 6
         vs.                      CRIMINAL ACTION NO.
 7                                2:03-cr-259-T
     LEON CARMICHAEL
 8

 9

10

11

12

13
                       VOLUME XI OF XI
14                       11th DAY OF:
                    JURY TRIAL PROCEEDINGS
15

16

17              *  *  *  *  *  *  *  *  *

18
     BEFORE:        The Hon. Myron H. Thompson
19
     HEARD AT:     Montgomery, Alabama
20
     HEARD ON:     June 20, 2005
21
     APPEARANCES:  Terry Moorer, Esq.
22                 Stephen Feaga, Esq.
                   Clark Morris, Esq.
23                 Matthew Miner, Esq.
                   Susan James, Esq.
24                 Marion Chartoff, Esq.
                   Lisa Monet Wayne, Esq.
25                 Ronald R. Brunson, Esq.
```

GOVERNMENT EXHIBIT 50-XI

```
 1  WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
    THE HON. MYRON H. THOMPSON ON 20, 2005 AT THE UNITED
 2  STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4                    FORFEITURE PROCEEDINGS:

 5          THE COURT:  You wanted to put something on

 6  the record, Miss James?

 7          MS. JAMES:  Yes, Your Honor.

 8          THE COURT:  Go ahead.

 9          MS. JAMES:  After the conviction on Friday,

10  when Mr. Carmichael was transported to the Montgomery

11  City Jail by the U. S. marshals, I'm not sure who

12  transported him, I visited with him first thing

13  Saturday morning and he shared with me a conversation

14  that he had with either one or the other marshals and

15  I thought that it was important, given our concern

16  about the juror misconduct, that this be made part of

17  the record.

18          THE DEFENDANT:  The marshals just told me --

19          THE COURT:  Wait a minute now.  He's still

20  under oath?

21          MS. JAMES:  Yes.

22          THE DEFENDANT:  The marshal told me that the

23  jury was afraid of me, and he said I was staring at

24  them, making faces, and the marshals took me back

25  talking to me and asking me if everything was over
```

```
 1  with.  I asked him what he was talking about, he --
 2          THE COURT:  Which marshal told you that?
 3          THE DEFENDANT:  I don't know which marshal
 4  it was.  The two marshals that transferred me over to
 5  the jail.
 6          THE COURT:  I'm going to ask your lawyers to
 7  find out what marshal it was.  If you if you want to
 8  make a record, you really need do need to make a full
 9  record.  Also the U. S. Attorneys need to know what
10  you're saying.  So why don't you find out which
11  marshal it was and then we'll develop this more.
12          But if you just want to put this on the
13  record --
14          MS. JAMES:  Right.  And, Judge,
15  logistically, a lot of things, by the time we left
16  here Friday, getting things done by this morning it's
17  been difficult.
18          THE COURT:  Certainly.
19          MS. JAMES:  But he just shared that with me
20  and I thought it was important because that
21  conversation gave me pause to think that there had
22  been some communication from the jury to the Marshals
23  Service, which would not be appropriate.  And because
24  it wasn't just, you know, the jury was probably afraid
25  of you, he said they made comments that they thought
```

1  you were staring at them and making faces at them and
2  they were scared.
3           THE COURT:  Okay.  I'll leave it up to you
4  all to look into this.  Why don't you put this in a
5  formal motion, and we'll just have a hearing on it.
6           MS. JAMES:  Okay.  But, Judge, I wanted Mr.
7  Carmichael, given I wasn't party to the conversation,
8  I wanted him to tell the Court what had transpired.
9           THE COURT:  Right.  Well, I have no idea
10 what to do with this information until you put it in
11 for a formal motion and I'll set it down for a
12 hearing.  We'll need to find out which marshal it was,
13 and then we'll see what the law is on it.
14          Anything else before we then --
15          MS. JAMES:  Judge, we're going to need to
16 consult with Mr. Carmichael in order to resolve all of
17 these matters this morning.  Do you just want to leave
18 him in the courtroom?
19          THE COURT:  I'll leave that up between you
20 and the marshals.
21          Now, counsel, I have this jury here and if
22 you're going to resolve this you'll probably do this
23 within the next fifteen minutes, is that right?
24          MS. JAMES:  It's going to take a few
25 minutes.  They're going to take them back downstairs,

```
 1  is what she said.
 2           THE COURT:  Well we need to keep them up
 3  here so that we can find out if we are going to
 4  resolve this.  So we'll keep them up here for right
 5  now.
 6           MS. JAMES:  We can do it sitting right here.
 7           THE COURT:  That's what I'm saying.  Okay.
 8  I'll give you fifteen minutes.
 9           (Whereupon, a recess was taken.)
10           THE COURT:  Counsel, how do you suggest we
11  proceed on the forfeiture matter?
12           MS. MORRIS:  Your Honor, we are still in the
13  middle of attempting to --
14           THE COURT:  I know but I can't leave this
15  jury hanging while you all negotiate.  We have to get
16  started.
17           MS. JAMES:  Well, Judge, to me, and in all
18  due respect, it seems to be the best solution for
19  everybody, we're negotiating in good faith, we can
20  save the jury being here two days at the expense of
21  another thirty minutes.  And quite frankly we've had
22  them on hold a lot during this trial for various legal
23  issues, and --
24           THE COURT:  Well I have no problems with
25  your negotiating, and you can continue to negotiate
```

```
 1  even while the trial is going on.  I just don't want
 2  the jury sitting here until noon and then we start up
 3  the trial.  Many parties tell me in civil cases, and
 4  this rarely happens in a criminal case, but in a civil
 5  case you get the negotiations going on and we have to
 6  keep the trial moving.  And unless you wanted to
 7  represent to me that you think you all have a
 8  settlement, then that's fine.  But if not, we've got
 9  to keep my jury moving.  You can continue to negotiate
10  behind the scenes.  I have no problems with that.
11            MS. JAMES:  Judge, the only thing I would
12  point out is I think that we are very close to a
13  settlement.  Very close.  And I think we're having to
14  work through United States' Attorney and Mr. Harmon
15  both of who -- neither of them are here.
16            THE COURT:  Why not?
17            MS. JAMES:  Well they're working over there
18  trying to get the paperwork together.  So everybody's
19  working.  But I can see this matter being resolved by
20  ten o'clock.
21            THE COURT:  Ten o'clock it is.
22            MS. JAMES:  Hold on, they're saying
23  ten-thirty.  I'll take any time you'll give me.
24            THE COURT:  Ten-fifteen.  We've got to start
25  this case.
```

```
 1              MS. JAMES:  Thank you.
 2          (Whereupon, a recess was taken.)
 3                  IN-CHAMBERS CONFERENCE:
 4              MR. BRUNSON:  Your Honor, it looks like
 5   we've come to an agreement.  We have an oral
 6   understanding, at least.
 7              THE COURT:  Do you want to put it on the
 8   record?
 9              MR. BRUNSON:  The question is there are a
10   lot of factors here, including the fact that this is
11   an ongoing business.  The Carmichael Center has
12   outstanding contracts.  Mr. Harmon, Mr. Feaga and the
13   rest of the prosecutors have been very flexible in
14   working with us attempting to transfer ownership or at
15   least direction of the Carmichael Center without Mr.
16   Carmichael being present, who is an integral part of
17   the Center and the profit that it's made and so forth.
18              He's willing to assist them in this
19   transition.  And we're hoping they can even be more
20   flexible to allow him to assist a great deal in the
21   handling of this.
22              THE COURT:  What is this transition?
23              MR. BRUNSON:  We've agreed to forfeit the
24   Carmichael Center and the property.
25              MS. JAMES:  Providing the outcome of the
```

1  appeal.

2          MR. BRUNSON: With that caveat. And we've
3  also agreed to forfeit the surrounding property of the
4  Carmichael Center, which is not a part of this
5  indictment, up to a million dollars in value. In
6  other words, if the government were to sell the
7  property for more than a million dollars, we would get
8  whatever excess over a million --

9          THE COURT: That's the whole the Carmichael
10 Center?

11         MS. JAMES: There is three hundred plus
12 acres.

13         THE COURT: So if the government sold it and
14 got more than a million, Mr. Carmichael would get the
15 difference.

16         MR. BRUNSON: To the acreage.

17         MR. FEAGA: The Carmichael Center, whatever
18 we sell that for the government keeps.

19         THE COURT: Oh, I see. This is only the
20 land.

21         MR. FEAGA: But the land, the government
22 also asked for a million dollars in this forfeiture,
23 and so if we get a million out of the sale and get
24 more than that, then we agree he'd be entitled to the
25 difference.

```
 1              MR. BRUNSON:  The government has agreed not
 2    to not go forward on the other property named in the
 3    indictment, and they have agreed not to go after his
 4    personal residence.
 5              THE COURT:  So your wife is taken care of.
 6              THE DEFENDANT:  Yes, sir, and I really
 7    appreciate that.
 8              MR. BRUNSON:  And enough rental property
 9    that's out there hopefully generating enough profit to
10    keep the house and the wife going on.
11              So in essence --
12              THE COURT:  Is that the essence of the
13    agreement, Mr. Harmon?
14              MR. HARMON:  And they have agreed to forfeit
15    the car, Your Honor, the Honda.
16              THE COURT:  Now the money part, the four
17    million or --
18              MR. HARMON:  One million dollars.
19              THE COURT:  I mean one million dollars.  Oh,
20    in the indictment?  Is it one million in the
21    indictment?
22              MR. HARMON:  Yes, sir.
23              THE COURT:  Then there's a thousand dollars?
24              MR. HARMON:  There was a five thousand
25    dollar cash -- about six thousand I think, Your Honor,
```

```
 1   six or seven thousand.
 2            THE COURT:  That's resolved with this?
 3            MR. HARMON:  That's going to be returned to
 4   Mr. Carmichael.  That six or seven thousand dollars
 5   will be returned to him.
 6            THE COURT:  What about the one million?
 7            MR. HARMON:  The one million was the
 8   proceeds that that's going to be subsumed into the
 9   additional real property.
10            THE DEFENDANT:  Y'all keep the Honda?  My
11   Lexus is a --
12            THE COURT:  You shouldn't engage in
13   negotiations in front of me.
14            MR. FEAGA:  We'll let you keep the Lexus.
15            THE COURT:  If you all have something
16   outstanding, you need to step outside to clear it up.
17   Do you have something you need to clear up on this
18   car?
19            MR. MOORER:  We just did, I think.
20            THE COURT:  What is it about the car?
21   What's your settlement on the Honda?
22            MR. HARMON:  It's to be forfeited.
23            THE COURT:  Is that acceptable, Miss James?
24            THE DEFENDANT:  Yeah.
25            MR. BRUNSON:  Yes it is, Judge.
```

```
 1            MR. HARMON:  Your Honor, we will be -- of
 2  course there is Carmichael's residence, and I think
 3  the Club Unique will be released.
 4            THE COURT:  Why am I hearing all this back
 5  here?  Why isn't this a public record?
 6            MR. HARMON:  Your Honor, I think Mr.
 7  Brunson, we've gotten sidetracked.  I think he had an
 8  issue regarding just the settlement, not the specifics
 9  of the settlement but the effect.
10            MR. BRUNSON:  Judge, the Carmichael Center
11  is an ongoing business that attracts business, and
12  there's again a transitional period here going from
13  Mr. Carmichael's and the marshals may be running the
14  business.  I was hoping to have this in an in-camera
15  -- this agreement in an in-camera type of setting in
16  order to avoid the publicity relating to the
17  Carmichael Center.
18            THE COURT:  What are you going to say?  The
19  public will have a right to come in an look at that.
20            MR. BRUNSON:  I understand that, but still,
21  with the reporters out there and the contracts we have
22  outstanding right now, I was hoping to make it more of
23  less of a profile.
24            MS. JAMES:  And this is for the benefit of
25  both parties, because the value of that asset,
```

```
 1  depending upon what happens with Mr. Carmichael on
 2  appeal or the government on appeal, the property needs
 3  to be protected.
 4          THE COURT:  So someone can look at this
 5  proceeding.  They can ask to see it.
 6          MR. FEAGA:  I think realistically, Judge,
 7  it's probably going to come out anyway because I would
 8  imagine it's going to be asked and the U. S. Attorney
 9  is probably going to release it anyway.  If we're
10  taking the Carmichael Center and a million out of the
11  land, it really doesn't matter to him any more whether
12  it continues and in what fashion it's an ongoing
13  concern anyway.  But I think it's getting out, quite
14  frankly.  We could do it back here, but I still think
15  it's going to come out.
16          THE COURT:  I don't have any gag order on
17  releasing this agreement.
18          MR. BRUNSON:  We understand that, Judge.
19          THE COURT:  All right.  Okay.  Let's go out
20  and release the jury.  The forfeiture proceeding,
21  then, is essentially on hold.
22          MR. HARMON:  I think it would be of benefit
23  if we could in court to put on some of the provisions.
24  We don't have a written agreement at this time, this
25  has been highly fluid, so I would ask --
```

```
 1              THE COURT:  You have the agreement right
 2   here.  It's an enforceable agreement.
 3              MR. HARMON:  Okay, if that's sufficient.
 4              THE COURT:  It's an enforceable agreement.
 5              MR. FEAGA:  I'd let the Court know as part
 6   of this settlement, that when we get to sentencing,
 7   the United States' position will be that any
 8   additional fine is not necessary or appropriate.
 9              THE COURT:  Okay, very good.
10                        IN OPEN COURT
11                   (THE JURY IS NOT PRESENT):
12              THE COURT:  Counsel, I understand that
13   you've settled the forfeiture matter?  I'll bring in
14   the jury and discharge the jury.
15              MR. HARMON:  The Court is correct, Your
16   Honor.
17              THE COURT:  All right, bring in the jury.
18              (Whereupon, the jury was escorted into the
19   courtroom.)
20              THE COURT:  Please stand right across the
21   back.  Right across the back will be fine.
22              Members of the jury, I am pleased to inform
23   you that the matter of the forfeiture has been
24   resolved.  I know you thought we had forgotten about
25   you but we were very busy this morning.  So you are
```

```
 1   discharged at this time.
 2              I know it's been an inconvenience for you to
 3   serve on this jury, but as you know serving on a jury
 4   is a way we serve our country.  And you are all
 5   excused at this time.  Thank you very much.  You're
 6   free to go.
 7              (Whereupon, the jury was escorted out of the
 8   courtroom and the following colloquy ensued):
 9              THE COURT:  Counsel, before you leave I just
10   want to take up one other matter.  How long will it
11   take you to get this to me in a formal document?
12              MR. HARMON:  Your Honor, I will work with
13   opposing counsel.  I believe by tomorrow we should
14   have a stipulation and proposed restraining order and
15   preliminary order of forfeiture.
16              THE COURT:  Very good.
17              Miss James, on this jury matter, I won't
18   take any action on that until you file a formal
19   motion.
20              MS. JAMES:  Do you want a formal written
21   motion?
22              THE COURT:  Yes.  You'll need to file a
23   formal written motion indicating the relief you're
24   asking for and I'll set it down for hearing.
25              MS. JAMES:  I thought you said earlier you
```

```
 1   might want us to see Judge Boyd while we're here.
 2            THE COURT:  That's on the jury matter
 3   involving Mr. Carmichael and the U. S. Marshal.  Two
 4   different jury matters.  You need to file a formal
 5   motion on that setting forth your basis and what your
 6   relief is, just like you would anything else.  And
 7   then I'll have to decide whether I'll hear it or Judge
 8   Boyd will hear it.
 9            Anything else, counsel?
10            MS. MORRIS:  No, Your Honor.
11            THE COURT:  Very good.  Everyone is excused.
12            (Whereupon, the proceedings were concluded.)
13
14
15
16
17
18
19
20              * * * * * * * * *
21
22
23
24
25
```

```
 1
 2                    COURT REPORTER'S CERTIFICATE
 3
 4         I certify that the foregoing is a correct
 5   transcript from the record of proceedings in the
 6   above-entitled matter as prepared by me to the best of
 7   my ability.
 8
 9         I further certify that I am not related to
10   any of the parties hereto, nor their counsel, and I
11   have no interest in the outcome of said cause.
12
13         Dated this 12th day of September 2005.
14
15                              _____
                                MITCHELL  P.  REISNER,  CM, CRR,
16                              Official US Dist. Court Reporter
                                Registered Professional Reporter
17                              Certified   Real-Time   Reporter
18
19
20
21
22
23
24
25
```