IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:03-cr-259-T |
| | ) | |
| LEON CARMICHAEL, SR., | ) | |
| also known as, BEAVER LEON | ) | |
| CARMICHAEL, et al. | ) | |

**RESPONSE REGARDING COCONSPIRATOR STATEMENTS**

COMES NOW the United States of America by and through the United States Attorney for the Middle District of Alabama, Leura Garrett Canary, and responds to the court regarding the admissibility of certain coconspirator's statements. Statements that would otherwise be hearsay are admissible if they are made by a coconspirator of a party during the course of the conspiracy and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). For a declaration by one coconspirator to be admissible against other defendants under this section, the government must establish by preponderance of the evidence: (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. United States v. Miles, 290 F.3d 1341 (11th Cir. 2002). The Court may consider both the coconspirator's hearsay statement and independent outside evidence in determining the admissibility of the coconspirator statements. Id.; United States v. Byrom, 910 F.2d 725 (11th Cir. 1990).

1


GOVERNMENT EXHIBIT 6E

I.   **EXISTENCE OF THE CONSPIRACY BETWEEN THE DEFENDANTS**

The conspiracy in this case was initially established through the testimony of George and Patrick Denton. George testified that he helped Denton repackage marijuana for Leon Carmichael. George further testified that he had accompanied Denton to Leon Carmichael's residence and place of business to take Carmichael money owed to Carmichael from the sale of marijuana. Denton testified that he sold marijuana for Leon Carmichael beginning in 1999. At the direction of Carmichael, Denton eventually began "breaking down" the marijuana with Freddie Williams.

On November 17, 2003 at approximately 2:30 in the morning, after federal agents had executed a federal search warrant at Patrick Denton's residence, Leon Carmichael called Denton. During such conversation, which was overheard by federal agents, Carmichael stated that he was on his way to Denton's house. Several minutes later, agents watched a dark, colored Honda arrive at Denton's residence, stay for a few minutes and leave[1]. After the Honda left the residence, agents met with Denton who informed them that Carmichael came to his house and told him that the shipment of marijuana would be at Freddie Williams' residence that morning. A few hours later, agents met with Denton, equipped him with recording devices and sent him to 949 Ridgecrest Drive, Montgomery, Alabama, the residence of Freddie Williams. Williams was at the residence with approximately 574 pounds of marijuana. While agents were securing the scene, awaiting a search warrant, Carmichael drove by the house.

---

[1] Agents saw Carmichael driving a dark colored Honda earlier on the date of November 16, 2003.

2

While there are many other facts to establish a conspiracy, the facts above should be sufficient to meet the preponderance standard that a conspiracy existed involving the defendants.

II. **DECLARANT WAS PART OF THE CONSPIRACY AND THE STATEMENTS MADE WERE DURING THE COURSE OF AND IN FURTHERANCE OF THE CONSPIRACY**

Based on the above cited facts, it is clear that the defendants were members of a drug conspiracy. Whether the declarant is a member of the conspiracy and whether the statements the declarant made were during the course and in furtherance of the conspiracy must now be addressed.

It is the government's position that there are many members of this drug distribution conspiracy, however, only those coconspirators that made statements during the course and in furtherance of the conspiracy will be addressed in this section. See, Fed. R. Evid. 801(d)(2)(E).

A. Patrick Denton

According to the testimony, Gary George helped Denton "break down" and repackage the marijuana shipments after Leon Carmichael brought the marijuana into the Montgomery, Alabama area. Leon Carmichael directed Denton to break down this marijuana and Denton directed George to help him break it down. Further, George accompanied Denton to Leon Carmichael's residence and business to return payment for the marijuana that Denton and George sold for Carmichael. Clearly, Denton was a member of the conspiracy. Denton told George that he (Denton) was distributing

3

marijuana for Leon Carmichael. Denton also regularly made statements to George that they were going to Carmichael's house or Carmichael business to repay money owed to Carmichael from the sale of marijuana. George and Denton would then take the drug proceeds to Carmichael at either his residence or business. Denton made these statements to George in order to obtain George's help in the repackaging and distribution of marijuana and in the payment of drug proceeds to Leon Carmichael. Obviously, these statements were made during the course and in furtherance of the conspiracy.

Denton further told George when the loads of marijuana were coming into Montgomery. Those statements were made in during the life of the conspiracy. Denton told George when the loads of marijuana were coming to Montgomery so that George would be ready to help Denton repackage the marijuana. Therefore, the statements were made in furtherance of the conspiracy.

B. Kena Whisenant

On November 17, 2003, Kena Whisenant called Sherry Pettus and told her that Freddie Williams' house had been raided and that the stuff[2] inside of the house was Leon's. Kena Whisenant further told Pettus that Leon Carmichael was a drug dealer.

Kena was a member of this conspiracy. Denton testified that he took money to Leon Carmichael at Kena Whisenant's house. Upcoming testimony will show that Kena Whisenant lives at 970 Ridgecrest Drive, Montgomery, Alabama. In April of 2002, Freddie Williams bought the residence located at 970 Ridgecrest Drive for

---

[2] It is clear from the context of the testimony that "the stuff" is referring to the marijuana seized from Freddie Williams residence.

4

approximately $40,000. In January of 2003, Leon Carmichael purchased said residence from Freddie Williams for approximately $9,000. While presence at the scene is insufficient to prove participation in a conspiracy, presence is a material and probative factor in which the jury may consider in reaching its decision. United States v. Brazel, 102 F.3d 1120 (11th Cir. 1997); United States v. Hernandez, 896 F.2d 513 (11th Cir. 1990); United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997). Moreover, historically, courts have stated that the government only need present "slight evidence of the defendant's participation in a conspiracy." See, United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997). Slight evidence refers to the extent of a conspirator's connection to the conspiracy. See, United States v. Toler, 144 F.3d 1423 (11th Cir. 1998). Whisenant's statement to Pettus makes clear that Whisenant was a part of the conspiracy. How else would she know that the marijuana inside of Freddie Williams' house belonged to Carmichael? How can one explain her knowledge that Carmichael was dealing drugs? The fact that Denton took money to Whisenant's house combined with the statement to Sherry Pettus makes clear that Whisenant was a member of the conspiracy.

The statements were made in during the course and in furtherance of the conspiracy. The charged drug conspiracy was ongoing through November 17, 2003. The statement was made on November, 17, 2003, therefore, the statement was made during the course of the conspiracy. Whisenant told Pettus about the marijuana at Freddie Williams' house in order to enlist Petus' help in concealing the conspiracy. "[C]oncealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the

5

charged conspiracy." United States v. Griggs, 735 F.2d 1318, 1325 (11th Cir. 1984); quoting, United States v. De Valle, 587 F.2d 699, 704(5th Cir.), cert denied, 442 U.S. 909 (1979). Pettus testified that Whisenant was attempting to find Carmichael and only when she was unable find Carmichael did she make the statements to Pettus. Obviously, Whisenant was attempting to preserve the conspiracy and drug organization by attempting to notify Carmichael of law enforcement's presence at Freddie Williams' house. When she was unable to find Carmichael, she decided to enlist Pettus' help in finding Carmichael, warning him of law enforcement and moving any incriminating evidence. Therefore, this statement was made in furtherance of the conspiracy.

### C. Valerie Carmichael

On November 17, 2003, Valerie Carmichael told Sherry Pettus that she knew Carmichael was selling drugs. More specifically, Valerie Carmichael told Pettus that she found out about Carmichael's drug distribution when she came home from church and saw Carmichael with the marijuana.

Valerie Carmichael is a member of this conspiracy. Denton testified that during one of his first drug encounters with Leon Carmichael, Carmichael directed Valerie Carmichael to retrieve the marijuana. Valerie Carmichael obtained approximately two pounds marijuana, handed it to Carmichael who, in turn, gave it to Denton. Moreover, according to Sherry Pettus, Valerie Carmichael helped count the million dollars in cash that had been dug up from the ground. Denton and Sherry Pettus' testimony establish by a preponderance of the evidence that Valerie Carmichael is a member of this conspiracy.

6

Valerie Carmichael's statement that Leon Carmichael was involved in drug distribution was made during the course and in furtherance of the conspiracy. This statement was made after Carmichael's arrest, but when Pettus and Valerie Carmichael had just gotten the money out of defendant Carmichael's residence. Valerie and Pettus were driving to the Carmichael Center discussing Carmichael's arrest and presumably attempting to figure out how to handle it. The conspiracy had not ended because the objects of the conspiracy had not been fully obtained. Further, the indictment charges that the conspiracy continues through November 17, 2003, the date of the statement. Such statement was made in furtherance of the conspiracy because the statement was made to Sherry Pettus in order to enlist her help in concealing the conspiracy. Valerie Carmichael needed an ally to help her sanitize her house, take money to her brother and otherwise help cover-up the drug distribution conspiracy. In order to attain Pettus help, she had to tell Pettus why she needed this help. Basically, she had to tell Pettus the truth to obtain Pettus' help in concealing the conspiracy. As stated above, concealment is sometimes a necessary part of a conspiracy, statements made to aid the concealment are made during and in furtherance of the charged conspiracy. Id. Because Valerie Carmichael's statements to Sherry Pettus meet the requirements of Fed. R. Evid. 801(d)(2)(E), they are admissible.

D. Sandra Jones

On November 2, 1995, Sandra Jones told Detective Chavez that she was afraid to tell Detective Chavez who was the actual owner of the $42,000 in currency that was found in her possession. At the time of the statement, Sandra Jones was a member of the conspiracy charged in the instant case. Indeed, on July 29, 1997, two years later

7

she was stopped by the Mississippi Department of Transportation driving one of the defendant Carmichael's tractor-trailer trucks containing approximately 64.2 kilograms of marijuana.

Moreover, such statement was made during the conspiracy. Even if Sandra Jones' participation in the conspiracy began on November 2, 1995, the day she was stopped with the $42,000, she remained in the conspiracy at least until July 29, 1997, the day she was stopped with the marijuana in defendant Carmichael's truck. Thus, such statement was made during the course of the conspiracy. Further, this statement was made in furtherance of the conspiracy. As fully discussed above, concealment is often a necessary part of a conspiracy, so that statements made to aid the concealment are in fact made during and in furtherance of the charged conspiracy." Id. Had Sandra Jones given Detective Chavez information regarding the actual owner of the money, the conspiracy could have been terminated. In order to protect the existence of the conspiracy, Sandra Jones could not reveal the identity of the owner of the currency. Moreover, law enforcement recognizes that often those involved in drug distribution networks are dangerous people. It is not uncommon for an otherwise cooperating witness to refuse to give certain information for fear of retribution. By Sandra Jones stating that she was afraid to tell Detective Chavez the identity of the true owner of the money, she was taking advantage of this fact with full knowledge that Detective Chavez would understand her fear and possibly not require her to give the name of the true owner. Therefore, her stating that she was afraid to tell Detective Chavez the identity of the actual owner was in furtherance of the charged conspiracy.

8

### E. Santiago Hernandez

Hernandez made the statement to Detective Chavez that he did not know Sandra Jones. This statement was made after law enforcement had observed Jones and Hernandez talking and walking together through the airport. Further, Hernandez waited on Sandra Jones while she was in the restroom. Obviously, they knew each other. Sandra Jones was traveling to El Paso, a city which is known to be a source for narcotics, as explained by El Paso Police Detective Chavez. Chavez further explained to the jury that El Paso is a source city because of its close proximity to the Mexican border. Drugs are smuggled over the Mexican/American border and taken to El Paso for distribution. Jones was traveling to this source city with $42,000 hidden on her person. A trained drug canine alerted to this money when it was placed in a box among a row of empty boxes. Jones' pager contained Hernandez' phone number.

Further, on July 29, 1997, Jones was arrested for possessing 62.4 kilograms of marijuana in one of the defendant Carmichael's tractor trailer trucks. The facts establish by preponderance of the evidence that Jones was traveling to the source city of El Paso to purchase marijuana. The purpose of Jones' travel to El Paso combined with her meeting with Hernandez and his denial that he knew her establish Hernandez as a member of the conspiracy. As cited above, Courts have stated that the government only need present "slight evidence of the defendant's participation in a conspiracy." See, Calderon at 1314. Slight evidence refers to the extent of a conspirator's connection to the conspiracy. See, Toler at 1423. The statement that Hernandez did not know Sandra Jones was made in order to conceal the nature of their meeting in order to continue the conspiracy. If the police were able to positively tie

9

Hernandez and Jones together, it could cause an investigation and terminate the conspiracy.

## III. **CONCLUSION**

Because all of the statements listed above meet the elements for admissibility under Fed. R. Evid. 801(d)(2)(E), all of the statements discussed above are admissible. However, the government has not completed its case-in-chief. Therefore, the government requests leave of the Court to supplement the record if other admissible coconspirator statements are mentioned by witnesses who have yet testified.

Respectfully submitted this the 13th day of June, 2005.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

s/ A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: clark.morris@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 2:03-cr-259-T |
| ) | |
| LEON CARMICHAEL, SR., ) | |
| also known as, BEAVER LEON ) | |
| CARMICHAEL, et al. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Ronald R. Brunson, Marion D. Chartoff, Susan G. James, Barry E. Teague, and Lisa Monet Wayne.

                                                        LEURA GARRETT CANARY
                                                        UNITED STATES ATTORNEY

                                                        s/ A. Clark Morris
                                                        A. CLARK MORRIS
                                                        Assistant United States Attorney
                                                        One Court Square, Suite 201
                                                        Montgomery, Alabama 36104
                                                        Telephone: (334) 223-7280
                                                        Fax: (334) 223-7135
                                                        E-mail: clark.morris@usdoj.gov