IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:03-CR-259-T |
| | ) | |
| LEON CARMICHAEL, SR., and | ) | |
| FREDDIE WILLIAMS | ) | |

## LEON CARMICHAEL'S BRIEF ON THE ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS

COMES NOW, the defendant, Leon Carmichael, and submits this brief pursuant to the Court's order regarding the admissibility of alleged co-conspirator statements.[1]

### APPLICABLE LAW

Fed. R. Evid. 801(d)(2)(E) provides:

A statement is not hearsay if... [t]he statement is offered against a party and is (E) a statement by a coconspirator during the course of and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

A trial court may only admit an alleged co-conspirator statement under this Rule after finding by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the person against whom the evidence is offered were members of the conspiracy; (3) the statement was

---

[1] The defendant respectfully requests that the Court order the court reporter to provide a "dirty copy" of the testimony thus far so that counsel can better address the admissibility of the statements that have been made, as there has been voluminous testimony in the case so far and defense counsel has been unable to keep a complete record of all the statements introduced into evidence that arguably fall in the co-conspirator statement category.

1



GOVERNMENT
EXHIBIT
6 H

made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987). "[C]oconspirator statements introduced pursuant to Fed.R.Evid. 801(d)(2)(E) are not properly admitted until, as a preliminary matter, the government shows *substantial independent evidence of a conspiracy*" that demonstrates all of the above-listed factors. United States v. Fernandez, 797 F.2d 943, 945 (11th Cir. 1986) (italics added).

"In determining whether the proponent has made a showing sufficient to permit the introduction into evidence of the co-conspirator's statement, the district court must bear in mind that out-of-court statements are presumptively unreliable." United States v. Silverman, 861 F.2d 571, 578 (9th Cir. 1988) (citing Bourjaily, 107 S. Ct. at 2781). Because of the "presumptive unreliability" of such statements, "a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence." Id.

A conspiracy is an agreement to commit an illegal act. Iannelli v. United States, 420 U.S. 770, 777 (1975). The government must prove that the defendant and the declarant knew of the conspiracy, purposefully associated with it and affirmatively cooperated in it it, or at least agreed to cooperate in the objective of the conspiracy. United States v. Cox, 942 F.2d 1282 (8th Cir. 1991). Discussions of past drug deals, plus the offered hearsay statement itself, do not provide sufficient evidence of the existence of a conspiracy. Fernandez, 797 F.2d at 946-47.

Mere knowledge of the existence of a conspiracy or mere presence or association with individuals engaged in illegal conduct is not sufficient to establish that a party knowingly contributed efforts in furtherance of a conspiracy and thus participated in a conspiratorial agreement. See, e.g., United States v. Castaneda, 16 F.3d 1504, 1508-09 (9th Cir. 1994); United

2

States v. Beckham, 968 F.2d 47, 50-51 (D.C. Cir. 1992); United States v. Soto, 716 F.2d 989 (2d Cir. 1983).

Single acts, without more, are generally insufficient to link an individual to a conspiracy. See United States v. DeLutis, 722 F.2d 902 (1st Cir. 1983) (reversing conviction for conspiracy to distribute cocaine because of evidence of single isolated act by defendant was insufficient to establish his knowledge of the conspiracy). Merely purchasing the services of a conspiracy is not sufficient to establish a person's participation in that conspiracy. United States v. Arvanitis, 902 F.2d 489 (7th Cir. 1990).

Statements made after the completion of a conspiracy are not made during the course of a conspiracy and therefore, are not admissible under Rule 801(d)(2)(E). See, e.g., United States v. Perez-Garcia, 904 F.2d 1534 (11th Cir. 1990) (error to admit co-conspirator's statement made after the declarant and his co-conspirators had been arrested because the conspiracy had terminated by that point).

Contrary to the government's assertions, not all efforts to conceal a conspiracy are statements "in furtherance of" a conspiracy. Efforts to conceal a conspiracy after it ended are not made in the course of the conspiracy. Grunewald v. United States, 353 U.S. 391 (1957). "[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." Id. at 405. As the Court explained:

> Kidnapers in hiding, waiting for ransom, commit acts of concealment in furtherance of the objectives of the conspiracy itself, just as repainting a stolen car would be in furtherance of a conspiracy to steal; in both cases the successful accomplishment of the

3

crime necessitates concealment. More closely analogous to our case would be conspiring kidnapers who cover their traces after the main conspiracy is finally ended-- i.e., after they have abandoned the kidnaped person and then take care to escape detection. In the latter case, as here, the acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended--a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord.

Id. at 405-06. Accordingly, the Court held that whereas acts of concealment during the course of the conspiracy that are necessary for accomplishment of the primary goal are done "in furtherance of the conspiracy," mere efforts to hide the fact that a crime occurred after the conspiracy is complete are not "in furtherance "under Rule 801(d)(2)(E). Id.

To be "in furtherance" of a conspiracy, it is not enough that the statement "merely inform[s] the listener of the declarant's activities." United States v. Snider, 720 F.2d 985, 992 (8th Cir. 1983) (court found that a co-conspirator's statements to an individual outside the conspiracy merely describing a marijuana-growing farm were not sufficiently "in furtherance of" the conspiracy to qualify for admission under the co-conspirator exception to the hearsay rule). In United States v. Bibbero, 749 F.2d 581 (9th Cir. 1984), the court reversed a defendant's conviction when it concluded that a comment by a co-conspirator attributing the ownership of marijuana to the defendant was not made in furtherance of the conspiracy. "To come within the co-conspirator exception, the evidence must indicate that the statement furthered the common objectives of the conspiracy.... 'Mere conversation between conspirators' is not admissible." Id. at 583-84.

Statements consisting of narratives of past activities, and statements that are mere "puffing" or "idle chatter" are not in furtherance of the conspiracy and should not be admitted. See, e.g., United States v. Johnson, 200 F.3d 529 (7th Cir. 2000). The phrase "in furtherance of

4

the conspiracy" for purposes of admissibility of co-conspirators' hearsay statements implies that the statements must in some way have been designed to promote or facilitate achievement of the goals of the ongoing conspiracy. United States v. Diaz, 176 F.3d 52 (2d Cir. 1999). Statements that merely "spill the beans" about a conspiracy are not in furtherance of the conspiracy. United States v. LiCausi, 167 F.3d 36 (1st Cir. 1999); United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (to be in furtherance, a statement must be more than a narrative of past events).

## INDIVIDUAL ALLEGED CO-CONSPIRATORS

Kina Whisenant

On November 17, 2003, Kina Whisenant allegedly called Sherry Pettus and told her that Freddie Williams' house had been raided and that "the stuff inside the house was Leon's." She also allegedly told Pettus that Leon was a drug dealer.

The government has not proven by a preponderance of the evidence that there existed a conspiracy involving Mr. Carmichael and Kina or, in other words, that Kina was a member of the alleged conspiracy. Denton testified that he took money to Mr. Carmichael while Mr. Carmichael was at Kina's house. However, there was uncontradicted testimony that Kina was a friend of Mr. Carmichael's. Therefore, the fact that Mr. Carmichael allegedly received money while at her house is meaningless. There was no evidence to suggest that Kina did anything to support the conspiracy, such as, for example, keeping drugs at her house or selling drugs. There was never any evidence presented to prove that Kina had personal knowledge that the "stuff" at Freddie Williams' house was Mr. Carmichael's. Indeed, Sherry Pettus testified that when Kina called her, the information Kina communicated was merely *rumors* Kina had been hearing that day.

5

The government asserts that it will put forward evidence that Kina Whisenant lives at 970 Ridgecrest Drive, Montgomery, Alabama, and that this house is owned by Mr. Carmichael. Mr. Carmichael is a landlord who owns houses all over Montgomery, and Ms. Whisenant is a tenant. This does not establish that Kina is a member of any conspiracy. Mere presence or association with individuals engaged in illegal conduct is not sufficient to establish that a party knowingly contributed efforts in furtherance of a conspiracy and thus participated in a conspiratorial agreement. See, e.g., United States v. Castaneda, 16 F.3d 1504, 1508-09 (9th Cir. 1994); United States v. Beckham, 968 F.2d 47, 50-51 (D.C. Cir. 1992); United States v. Soto, 716 F.2d 989 (2d Cir. 1983). Because the government has failed to prove by a preponderance of the evidence that there was a conspiracy in which Kina was a member, Kina's alleged statements are inadmissible as co-conspirator statements.

Furthermore, there is no evidence that Kina's statements were "in furtherance" of any conspiracy. As noted above, statements that merely "spill the beans" about a conspiracy are not in furtherance of the conspiracy. United States v. LiCausi, 167 F.3d 36 (1st Cir. 1999); United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (to be in furtherance, a statement must be more than a narrative of past events). In United States v. Bibbero, 749 F.2d 581 (9th Cir. 1984), the court reversed a defendant's conviction when it concluded that a comment by a co-conspirator attributing the ownership of marijuana to the defendant was not made in furtherance of the conspiracy. "To come within the co-conspirator exception, the evidence must indicate that the statement furthered the common objectives of the conspiracy.... 'Mere conversation between conspirators' is not admissible." Id. at 583-84. Kina's alleged statement merely "spilled the

6

beans" to Sherry Pettus about criminal activity Kina heard had taken place, and accordingly were not in furtherance of the conspiracy.

Furthermore, there is no evidence that Kina made the alleged statements in an effort to conceal anything. There was no evidence introduced to showing that Kina believed Sherry Pettus to be a member of the conspiracy – therefore, telling Pettus the rumors about the bust at Freddie Williams house would not have accomplished any goal of the conspiracy. Even if Kina's call could somehow be considered an effort at concealment, mere efforts to hide the fact that a crime occurred after the fact are not in furtherance under Rule 801(d)(2)(E). Grunewald, 353 U.S. at 405. At the point Kina allegedly made the statement, Mr. Williams' house had already been invaded by the police and Mr. Carmichael was being or had been arrested, and the conspiracy was complete. Kina could not have had any expectation that by telling Ms. Pettus was she allegedly told her that she could keep the alleged drug conspiracy going.

Additionally, at the point Kina allegedly made the statements, the alleged conspiracy was over. Mr. Williams house had been raided and Mr. Carmichael was being or had been arrested. The fact that the government has alleged in its indictment that the conspiracy continued through November 17, 2003, does not make it so. The Court must consider the evidence presented at trial to determine when the alleged conspiracy actually ended. The government's evidence shows that the alleged conspiracy ended with the raid on Freddie Williams' house and Mr. Carmichael's arrest. Therefore, Kina Whisenant's statements were not during the course of the conspiracy and accordingly are not admissible under Rule 801(d)(2)(E).

<u>Valerie Carmichael</u>

7

The government introduced hearsay through Sherry Pettus that Valerie Carmichael supposedly told Sherry Pettus that she knew Mr. Carmichael was selling drugs and that she found out about Mr. Carmichael's drug distribution when she came home from church one Sunday and found Mr. Carmichael with marijuana.

The government has failed to establish the existence of a conspiracy between Mr. Carmichael and his wife Valerie. The government has produced the un-corroborated testimony of Patrick Denton – a witness with a strong motive to lie – that Valerie supposedly retrieved one or two pounds of marijuana one time at Mr. Carmichael's direction. Single acts, without more, are generally insufficient to link an individual to a conspiracy. See United States v. DeLutis, 722 F.2d 902 (1st Cir. 1983) (reversing conviction for conspiracy to distribute cocaine because of evidence of single isolated act by defendant was insufficient to establish his knowledge of the conspiracy). Valerie Carmichael also supposedly helped count her husband's buried money. (The government's characterization of it in its brief as one million dollars is not clearly supported by the evidence). However, the government has failed to prove that the money was from illegal sources, as it is undisputed that Mr. Carmichael is a businessman with numerous cash businesses, and there has been no evidence as to *when* the money was buried. The money could very well have been buried long before the alleged conspiracy began, which is likely given Ms. Pettus' testimony that the money smelled because it was had been in the ground a long time. The fact that a wife would help her husband count his money does not demonstrate that she is conspirator in her husband's alleged illicit dealings. Wives often assist their husbands with financial matters.

Valerie also supposedly told Pettus that she knew her husband was selling drugs because she walked in on him one Sunday with marijuana. This statement does not support the

8

government's claim that Valerie Carmichael was a member of a conspiracy with her husband, but at most shows that she was living with someone who was involved in criminal activity in which she was not involved. Mere knowledge of the existence of a conspiracy or mere presence or association with individuals engaged in illegal conduct is not sufficient to establish that a party knowingly contributed efforts in furtherance of a conspiracy and thus participated in a conspiratorial agreement. See, e.g., United States v. Castaneda, 16 F.3d 1504, 1508-09 (9th Cir. 1994); United States v. Beckham, 968 F.2d 47, 50-51 (D.C. Cir. 1992); United States v. Soto, 716 F.2d 989 (2d Cir. 1983). Accordingly, the government has failed to show that Valerie Carmichael was a member of a conspiracy with her husband by a preponderance of the evidence. For this reason alone, Valerie Carmichael's statements are inadmissible.

Furthermore, the government has failed to show that Mrs. Carmichael's alleged statements were made "in furtherance of" the alleged conspiracy. Sherry Pettus testified that after Mr. Carmichael was arrested, she and Valerie Carmichael went to the Carmichael residence to obtain cash from the house, and that they took it to Valerie's brother. Afterwards, they drove around for a while talking. It was during this conversation that Ms. Pettus allegedly asked Mrs. Carmichael whether Mr. Carmichael was selling drugs, and Mrs. Carmichael supposedly confirmed that he was and that she had found out about his involvement in marijuana when she walked in on him with marijuana one Sunday.

The government contends that this statement was in furtherance of the conspiracy because Mrs. Carmichael "had to tell Pettus the truth to obtain Pettus' help in concealing the conspiracy." See Government's Response Regarding Co-Conspirator Statements (document 409), at 7. The government's argument makes no sense. The testimony was that Pettus had already helped

9

Valerie obtain the money from the house and deliver it to her brother when the conversation supposedly took place. Pettus had already shown her willingness to help by accompanying Valerie in the first place. Telling Ms. Pettus that Mr. Carmichael was a drug dealer was not likley to have assisted in obtaining her help; indeed, the more likely response would be for Ms. Pettus to refuse to help when she allegedly learned that Mr. Carmichael was engaged in illegal activity, so as to protect herself. The way for Valerie to obtain Pettus's help would have been to tell her Mr. Carmichael was not a drug dealer. Thus, the conversation between Valerie Carmichael and Pettus furthered nothing. As noted above, statements that merely "spill the beans" about a conspiracy are not in furtherance of the conspiracy. United States v. LiCausi, 167 F.3d 36 (1st Cir. 1999); United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (to be in furtherance, a statement must be more than a narrative of past events); United States v. Bibbero, 749 F.2d 581, 583-584 (9th Cir. 1984) ("To come within the co-conspirator exception, the evidence must indicate that the statement furthered the common objectives of the conspiracy.... 'Mere conversation between conspirators' is not admissible.")

Finally, Mrs. Carmichael's alleged statements were made after the alleged conspiracy had terminated. Mr. Carmichael had already been arrested. The money – assuming for the sake of argument that it was drug money – had already been taken from the house and delivered to a third party. There was nothing left to do. The conspiracy was over when the statement was allegedly made. Therefore, Valerie Carmichael's alleged statements are inadmissible under Fed. R. Evid. 801(d)(2)(E).

Sandra Jones

As previously briefed, Sandra Jones' alleged statement to the police at the airport in El Paso, Texas that she was afraid to say whose money she was carrying should not be admitted because to do so would violate Mr. Carmichael's rights under the Confrontation Clause of the Sixth Amendment. In addition, the statement is inadmissible under Fed. R. Evid. 801(d)(2)(E).

There has been no evidence so far linking the money Ms. Jones was carrying to Mr. Carmichael. It is equally likely that Ms. Jones was carrying drug money for some other individual, that she had stolen the money and did not want to reveal whose it was for that reason, or that the money was not related to drugs at all. Therefore, the entire episode is irrelevant. As it has not been shown to be "in furtherance" of *the conspiracy charged in this case*, the statement is inadmissible under Rule 801(d)(2)(E), as well as Rules 401, 402, and 403.

Furthermore, even assuming the incident was connected to the alleged conspiracy, under the government's theory of the case, Ms. Jones made the statement not to hide the conspiracy, but to protect herself from harm. Thus, under the version of events the government has put forth throughout the proceedings, Ms. Jones did not make the statement not to "further" the conspiracy.

Santiago Hernandez

Santiago Hernandez made the statement to Detective Chavez that he did not know Sandra Jones. This statement was not offered for the truth of the matter asserted, but merely to show that Hernandez supposedly acted evasively. Thus, the applicability of the co-conspirator exception is irrelevant.

Testimony of Charlotte Hensarling Regarding Gary Wayne George

11

...
Charlotte Hensarling testified that Gary Wayne George told her that he got his marijuana either from "Leon" or a man with a trucking company in Montgomery.[2]

According to the testimony, Charlotte Hensarling's husband and his girlfriend were involved in transporting drugs that Denton provided them to Hunstville. Charlotte Hensarling testified that she only transported drugs one time, on the occasion she was arrested. She testified that she and her husband were friends with Gary Wayne George, and that on some prior occasion, during a conversation with George, she asked where he got his drugs. George allegedly told her that he got his drugs either "from Leon" or from a man in Montgomery who runs a trucking company.

This alleged statement is inadmissible as co-conspirator statement. This was merely a conversation between George and Hensarling in which he "spilled the beans" about his source. See United States v. LiCausi, 167 F.3d 36 (1st Cir. 1999); United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993); United States v. Bibbero, 749 F.2d 581, 583-584 (9th Cir. 1984). There was no evidence that this statement was made to further the conspiracy. Instead, the statement was in the nature of mere conversation among alleged co-conspirators. Although it may have been during the time of the alleged conspiracy, there is no evidence that the statement furthered any goals of the conspiracy. Therefore, it is inadmissible.

Patrick Denton

---

[2] Defense counsel's notes on this subject are sketchy, and the Court has not provided the parties with a transcript of the trial to review in preparation for writing this brief.

12

The defense does not contest that the government's evidence, if believed, has established a conspiracy between Partick Denton and Leon Carmichael by a preponderance of the evidence. The defense however, does object to the admission of Patrick Denton's statements to the officers who searched his house on November 16, 2003, which were repeated by DEA officers who testified at trial. As those statements were made to police and not in furtherance of the alleged conspiracy, and were inadmissible under any other evidentiary rule, their admission was error.

Moses Williams

Agent Halasz testified regarding various statements that alleged co-conspirator Moses Williams told him. As these statements were made for the purpose of obtaining money or a deal from law enforcement and not in furtherance of the conspiracy, no statement by Moses Williams is admissible as co-conspirator testimony. Furthermore, the government has not offered proof that establishes by a preponderance of the evidence that Moses Williams was involved in a conspiracy with Mr. Carmichael.

Respectfully submitted, this the 14th day of June, 2005.

/s/ Marion Chartoff
MARION CHARTOFF
ATTORNEY FOR LEON CARMICHAEL, SR.
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
(334) 263-4766

13

OF COUNSEL:

RONALD R. BRUNSON
2126 Morris Avenue
Birmingham, Alabama 35203
(205) 252-2100
fax: (205) 252-2187

MARION CHARTOFF (CHA074)
Law Office of Marion Chartoff
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
Fax: (334) 263-4766
mchartoff@bellsouth.net

SUSAN G. JAMES (JAM012)
Susan G. James & Associates
600 South McDonough Street
Montgomery, Alabama 36104
(334) 269-3330
Fax: (334) 263-4888

LISA MONET WAYNE, ESQ.
950 17th Street, Suite 1800
Denver, Colorado 80202
(303) 837-1837
Fax: (303) 860-1665

CERTIFICATE OF SERVICE

    I hereby certify that on June 14, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Matthew S. Miner, Stephen Feaga, A. Clark Morris, and Barry Elvin Teague.

    Respectfully submitted,

/s/ Marion Chartoff
MARION CHARTOFF
ATTORNEY FOR LEON CARMICHAEL
505 S. Perry Street
Montgomery, AL 36104
(334) 264-0609
Fax: (334) 263-4766