IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
<u>NORTHERN DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CR NO <u>2:03-cr-259-T</u> |
| LEON CARMICHAEL, SR. a/k/a | ) | |
| BEAVER LEON CARMICHAEL | ) | |

### <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AND MOTION FOR A NEW TRIAL</u>

COMES NOW the United States of America by and through the United States Attorney for the Middle District of Alabama, Leura Garrett Canary, and responds to the defendant, Carmichael's, Motion for Judgment of Acquittal and Motion for New Trial as follows:

#### I. <u>Timeliness of the Motion for Judgment of Acquittal and Motion for New Trial</u>

A motion for new trial or judgment of acquittal must be filed within seven days after the verdict or within such additional time as the court may determine during the seven-day period. <u>See,</u> Fed. R.Crim. P. 33; <u>U.S. v. Gregory</u>, 730 F.2d 692, 706 (11th Cir. 1984). The trial court must rule on the motion for extension of time within the statutory seven-day period. <u>See</u>, Fed. R. Crim. P. 33; see also, <u>United States v. Coleman</u>, 811 F.2d 804, 806-07 (3d Cir. 1987)(a trial court lacks jurisdiction to extend time for filing a new trial motion based on discovery violations after the seven-day period expired, even though the motion for extension was filed within the seven-day

1



period, because the extension was not granted during the seven day period.) In the case at bar, the Court originally granted the defendant's motion for extension of time within the seven-day period. Such order mandated that the defendant's motion for new trial be filed on or before July 15, 2005. On July 15, 2005, the day in which the motion for new trial was due to the court, the defendant filed a second motion for extension of time. This court ruled upon such motion on July 18, 2005 and ordered that defense counsel file any motion for new trial on or before August 15, 2005.

It is clear that the original motion for extension of time was granted within the allowed seven-day period. However, the second extension of time was granted outside the statutory seven-day period. The court lacks jurisdiction to grant a new trial motion even eight days after the verdict. United States v. Hill, 177 F.3d 1251, 1252-1253 (11th Cir. 1999). One could argue that granting an extension of time for the filing of the new trial motion also extends the time in which the Court has jurisdiction to grant a further extension. Even if such argument were to prevail, in this case the court granted the second extension after the time period of the first extension. The first extension mandated that the motion for new trial was due on July 15, 2005. The court ruled on the second extension on July 18, 2005; outside the original extension time. Defendant did not even request such extension until July 15, 2005, the day that the new trial motion was due. Because the second order granting an extension of time for filing the motion for new trial was outside of the allotted seven-day period and outside of the period of the first extension, the government moves that said motion be dismissed for lack of jurisdiction.

2

## II. Standard for Motion for a Judgment of Acquittal and Motion for New Trial

### A. Motion for Judgment of Acquittal

In deciding a post-trial Federal Rule of Criminal Procedure 29 motion for judgment of acquittal a district court must determine whether, viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Williams, 390 F.3d 1319 (11th Cir. 2004); United States v. Grigsby, 111 F.3d 806 (11th Cir. 1997).

### B. Motion for New Trial

On motion of the defendant, the court may grant a new trial if required in the interest of justice. Fed. R. Crim. P. 33. The decision to grant or deny a new trial motion is within the sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion. United States v. Pedrick, 181 F.3d 1264 (11th Cir. 1999); United States v. To, 144 F.3d 737 (11th Cir. 1998); United States v. Wilson, 894 F.2d 1245 (11th Cir. 1990). The standard for the district court to apply when deciding new trial motions under Rule 33 is as follows:

> While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trial based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'

3

United States v. Martinez, 763 F.2d 1297 (11th Cir. 1985).

### III Issues and Arguments

A. Defendant is Not Entitled to a Judgment of Acquittal Pursuant to Federal Rules of Criminal Procedure 29

Defendant asserts that he is entitled to a Judgment of acquittal because the evidence adduced at trial was conflicting and insufficient to sustain a conviction. A conviction must be affirmed unless, under no reasonable construction of the evidence could the jury have found him guilty beyond a reasonable doubt. United States v. Reyes, 2005 WL 1907026 (11th Cir. 2005); citing, United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). "Credibility determinations are the exclusive province of the jury." Id.; quoting, United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). "For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face." Id.; quoting, Calderon at 1325. "It must be testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Id.; quoting, Calderon. Moreover, judgment of acquittal is not required "because the government's case includes testimony by 'an array of scoundrels, liars, and brigands'." Id.; quoting, United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir.1981).

In the instant case, a host of witnesses testified that the defendant was head of a drug dealing organization. Further, their was more than ample testimony revealing the defendant's conspiracy to launder the proceeds from such drug trafficking. These witnesses may not have been upstanding citizens, but their credibility was judged by the jury. Based on the evidence adduced at trial, it is clear that the judgment of acquittal is

4

unwarranted.

B.  Defendant is Not Entitled to a New Trial Pursuant to Federal Rules of Criminal Procedure 33

i.  Defendant was Not Denied a Fair Trial Based on a Giglio Violation

Defendant asserts that he is entitled to a new trial based on a Giglio violation. Giglio v. United States, 405 U.S. 150, 154-155 (1972). Defendant bases this assertion on the fact that the DEA case agent David DeJohn ultimately sued defendant Carmichael, Lisa Monet Wayne, Susan James and others over the heavily litigated Carmichael website. Defendant contends that Agent DeJohn's plan to sue should have been provided to the defense prior to trial and that had such information been provided, the defense strategy would have been different. Giglio requires that the prosecution turn over to the defense evidence in its possession or control which could impeach the credibility of an important prosecution witness. United States v. Jordan, 316 F.3d 1215 (11th Cir. 2003); citing, Giglio v. United States, 405 U.S. 150, 154-155 (1972). There was no impeaching evidence in the government's possession or control, thus, no evidence to provide to defense counsel. The lawsuit was not filed prior to trial, thus there was nothing to turn over. The government cannot turn over that which does not exist. While there may have been paperwork in DeJohn's private attorney's file, to require the government to turn over what is a private attorney's file or work product is to hold that information from a private attorney should be imputed to the government. That is an incorrect proposition of the law.

At the time of trial, the defendant and his attorneys were aware that Agent

5

DeJohn had retained private counsel regarding the website issue. Evidence is not considered to have been suppressed within the meaning of Brady[1] if the defendant or his attorney either knew or should have known of the essential facts permitting the defendant to take advantage of that evidence. United States v. Payne, 63 F.3d 1200, 1208 (2nd Cir. 1995). The fact that Agent DeJohn may sue the defendant was evident when Agent DeJohn's private counsel attempted to intervene in the federal litigation regarding the Carmichael web site. See, Doc. 245. This Court issued an order regarding the motion the intervene. United States v. Carmichael, 324 F. Supp.2d 1070 (M.D.Ala. 2004). In said order this Court stated, "intervening in Carmichael's federal criminal case is not an appropriate manner in which to seek redress for his perceived wrong; DeJohn's appropriate forum is, if anywhere, in state court." Id. at 1072-73. That order combined with the motion to intervene placed the defendant and his attorneys on notice of the potential of a lawsuit regarding their website. For Carmichael to now claim no knowledge of any possible lawsuit is disingenuous at best.

Moreover, defendant's argument that the government is obligated to turn the possibility of a lawsuit amounts to a governmental obligation to turn over the thought processes of a private attorney and her client. The government is not obligated to turn over the thought processes of government attorneys much less the thought processes of those who do not work for the government. In fact, Dejohn's private counsel is precluded from divulging such information because of client confidentiality ethics rules.

---

[1] The evidence whose disclosure is required under Brady may consist not only of exculpatory evidence, but also of impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150, 154-155 (1972).

6

Ala. R. Prof. Conduct 1.6. The government only had knowledge of a possible lawsuit from Agent DeJohn's hiring private counsel and moving to intervene in the federal case.

The fact that Agent DeJohn planned to file a lawsuit was immaterial to the case at bar. The government's Brady obligation to disclose extends only to favorable evidence that is material. See, Brady v. Maryland, 373 U.S. 83, 87 (1963). As stated by this Court, "The fact that Carmichael and his attorney are (or will be) co-defendants in a civil lawsuit that is clearly collateral and, frankly, unrelated to the substantive charges in Carmichael's criminal trial does not create a similar per se conflict." United States v. Carmichael, 2005 WL 1926473 *7 (M.D.Ala. 2005). Because the civil lawsuit is collateral and unrelated to the substantive charges in Carmichael's criminal trial, it is immaterial to the instant case and thus no duty to disclose exists.

  ii. Defendant was Not Denied a Fair Trial Due to an Alleged Conflict with his Attorneys

Defendant next contends that defense attorneys Wayne and James had an actual conflict with their client due to Agent DeJohn filing a civil suit against Carmichael, Wayne, and James. An actual conflict exists "when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action' ro when the attorney's representation of a defendant is impaired by loyalty owed to a prior client.'" Id. *5; quoting, Cuyler v. Sullivan, 446 U.S. 335 (1980). As the Court ruled in is order denying the motion for mistrial, no such conflict exists. Id.

The defendant alleges that the conflict arises from the prospect of a lawsuit. While the undersigned has not read the complaint filed by Agent DeJohn, the

7

undersign's understanding is that the civil lawsuit addresses only the issue of the Carmichael website and the collateral investigation being conducted by the Northern District of Florida. None of this evidence was elicited at trial. In fact, the defendant successfully argued to exclude from trial the same website as well as any mention of the collateral investigation. The civil lawsuit and the criminal case are two separate and distinct cases with only Carmichael, Wayne and James in common. Simply because Carmichael, Wayne and James are involved in both cases does not create a conflict. As the Court noted in its order denying the motion for mistrial, "The fact that Carmichael and his attorney are (or will be) co-defendants in a civil lawsuit that is clearly collateral and, frankly, unrelated to the substantive charges in Carmichael's criminal trial does not create a similar per se conflict." Id. *7.

Defendant next argues that his attorneys were distracted, ill-prepared to further question DeJohn and reluctant to engage DeJohn in any other communication, due to the possibility of the lawsuit. However, as discussed above, the defendant and his counsel knew that DeJohn was upset by the website as evidenced by DeJohn's motion to intervene in Carmichael's criminal case and remove DeJohn's picture from the website. Defendant and his attorneys were also aware that DeJohn had retained private counsel. Obviously, the possibility of a civil lawsuit was looming. For the defendant to now assert that the possibility of a lawsuit was a surprise that left them distracted and ill-prepared is incredible.

Finally, even if the Court finds that an actual conflict existed, such conflict was created by the defendant. Carmichael created the website. Carmichael placed Attorney Wayne and Attorney James' names as well as DeJohn's picture on the

8

website. "Carmichael insisted on maintaining DeJohn's photographs on the website even after the government unsuccessfully moved for a protective order instructing him to take down the website; after DeJohn filed a motion to intervene in his criminal case; and after this court issued an order denying DeJohn's motion but suggesting that DeJohn might well have a viable tort claim against Carmichael in state court." Id. *9. The defendant brought the civil suit on himself. He cannot now claim a conflict, when he manufactured such conflict. He should not be able to take advantage, by obtaining a new trial, of the conflict that he himself created.

### iii. Defendant was Not Denied a Fair Trial Due to the Denial of a Change of Venue or Mistrial

Defendant contends that he was denied a fair trial due to the pre-trial publicity surrounding the defendant, Carmichael. Due to the supposed pre-trial publicity, the defendant requested a change of venue and the Court denied such request. To prevail on a claim that the defendant did not receive a fair trial due to the venue, the defendant must establish that the pre-trial publicity and other events surrounding his trial resulted in either actual or presumed prejudice. Cummings v. Dugger, 862 F.2d 1504 (11th Cir. 1989). To demonstrate actual prejudice, the defendant must prove that one or more jurors entertained an opinion before the trial that the defendant was guilty and that these jurors could not put their prejudice aside and render a verdict based on the evidence presented. Mills v. Singletary, 63 F.3d 999 (11th Cir. 1995). The question is not simply whether a juror remembered the case from the media. Patton v. Yount, 467 U.S. 1025 (1984); Heath v. Jones, 941 F.2d 1126 (11th Cir. 1991). Rather, the

9

defendant must prove that the juror was unable to put aside their preconceived notions and decide the defendant's guilt impartially. United States v. De La Vega, 913 F.2d 861 (11th Cir. 1990).

Over objection of the government, prior to striking the jury, the Court allowed the defendant to voir dire each individual venire-person exhaustively. Most of the day of June 6, 2005, was consumed with the defendant asking questions of each venire-person about whether they had heard anything about the defendant, seen any news coverage regarding the defendant, or read any articles about the defendant. The defendant was further allowed to delve into each venire-person's inner feelings and emotions regarding the defendant and any publicity. Several venire members were struck for cause based on these questions. This Court allowed the defendant much leeway during the voir dire process. Presumably, this was to preclude any taint of the jury due to any supposed pretrial publicity. As a result, few if any members of the venire had ever even heard of the defendant. To say that the defendant was somehow prejudiced by the venue or due to pre-trial publicity is simply unfounded.

Defendant also cites a problem with juror C.M. as a reason for a new trial. Juror C.M. expressed a fear associated with being on this jury. However, there is no evidence that C.M. was afraid of the defendant. She never indicated that she had any fear of the defendant. In fact, she indicated that the was stressed and intimidated by the attorneys involved in this case as well as by the judge, but never stated fear of the defendant. C.M. was questioned by the Court and excused from the jury. The only juror to whom she directly expressed her fear was removed from the deliberating jury and placed in an alternate juror position. The Court questioned the jury members and

10

found the resulting jury to be free of any taint. Defendant now claims that he, not the Court, should have questioned the jury. The sitting jury should be questioned by an impartial body, that being the Court. The defendant, as well as the government, are partial. Thus, the Court is the proper body to question the jury members.

Defendant further alleges that there was increased police presence on the first day of the trial and that such increased police presence caused the jurors to infer that there was a need to be concerned for their safety. There is no evidence that the jurors were concerned for their safety. Aside from juror C.M.'s curious behavior, there is no evidence that any of the juror had any fear or concern for their safety. A similar issued was addressed in Holbrook v. Flynn, 475 U.S. 560 (1986). In that case, the court decided that the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial was not the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial. Id. The court further stated that presence of such personel need not be interpreted as a sign that the defendant is particularly dangerous or culpable, and jurors may just as easily believe that guards are there to prevent outside disruptions or eruptions of violence in the courtroom; in view of variety of ways in which such guards can be deployed, a case by case approach is more appropriate. Id. at 568. In this case, the increased security was not inside the courtroom, only outside the courthouse. There are many reasons why there may be increased security that have nothing to do with the defendant. There is no evidence that the jury leapt to the conclusion that the increased security was due to the Carmichael trial. Police officers could just as easily have been outside the courthouse on another matter.

11

The defendant also argues the partial sequestration of the jurors sent a message to the jurors that they were in some danger from the defendant. There is no evidence that any of the jurors felt they were in danger at all. The decision to sequester the jury is in the discretion of the trial court. See, United States v. Haldeman, 559 F.2d 31 (D.C. Cir. 1976). Further, the court can sequester the jury over the defense's objection. Id. The undersigned recollects[2] that prior to the trial, the court instructed the jury that there may be many people in and around the courtroom and that the jury's partial sequestration was an effort to preclude the courtroom onlookers from conversing with the jury. The Court's explanation to the jury negates any argument that the juror felt they were in danger because of the defendant.

## IV. Conclusion

Based on the forgoing reasons, defendant's motion for a judgment of acquittal and motion for new trial are due to be denied.

Respectfully submitted this 25th day of August, 2005.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

s/A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: clark. morris@usdoj.gov
ASB-1613-N77A

---

[2] As of the date of the filing of this response, the trial transcript had not been completed.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
<u>NORTHERN DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CR NO <u>2:03-cr-259-T</u> |
| LEON CARMICHAEL, SR. a/k/a | ) | |
| BEAVER LEON CARMICHAEL | ) | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Ronald R. Brunson, Marion D. Chartoff, Susan G. James, Barry E. Teague, and Lisa Monet Wayne.

                                         Respectfully submitted,

                                         s/A. Clark Morris
                                         A. CLARK MORRIS
                                         Assistant United States Attorney
                                         One Court Square, Suite 201
                                         Montgomery, AL 36104
                                         Phone: (334)223-7280
                                         Fax: (334)223-7135
                                         E-mail: <u>clark. morris@usdoj.gov</u>
                                         ASB-1613-N77A