IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Case No. 2:03-CR-259-001-T |
| **v.** : | |
| : | |
| **LEON CARMICHAEL, SR.** : | |
| : | |

ooooOoooo

## MEMORANDUM IN AID OF SENTENCING, MOTION FOR DOWNWARD DEPARTURE

Defendant, Leon Carmichael, through undersigned counsel, respectfully requests that this Honorable Court impose a reasonable sentence that takes into consideration the entire man, his good deeds and not merely his offense of conviction.

Mr. Carmichael, a 53-year old man, stands convicted after a jury trial of one count of conspiracy to distribute marijuana. Although the Court has been presented a picture of Mr. Carmichael simply as drug trafficker, the truth is that Mr. Carmichael is a man who is much more than that. He is a father who has well cared for his children, providing not just financial support but emotional support and has taught them the values of hard work, of education, family and religion. He also is a man who worked hard to achieve success as a legitimate businessman, despite all odds. He also is a man who used his financial accomplishments to help his community, in particular by being an active participant in the ministries of the Faith Crusade, a church-based mission that helps people in need throughout Montgomery, Alabama and other places in the South, in Haiti and around the world. Reverend Curtis Browder, the Executive Director of the Faith Crusade says of Mr. Carmichael that "Nobody in Montgomery has done what Leon Carmichael had done for the people. Nobody. He reached out to people and helped." In particular, beginning about nine years ago, Mr.



Carmichael has helped Reverend Browder provide food, clothes and community services to tens of thousands of the working poor, the elderly, the young, the homeless and anyone else who needed help. But that is not the only good that Mr. Carmichael has done. Along with the final Presentence Report, the Court will receive a number of letter that describe the good that people have known about Mr. Carmichael.

For this and other reasons, as more fully set forth below, were the Court to impose the sentence within the guideline range calculated in the preliminary Presentence Report and which it is believed the government will be seeking, it would result in an unreasonable sentence that is "greater than necessary" to comply with purposes of sentencing and that is therefore in violation of 18 U.S.C. § 3553.

Accordingly, Mr. Carmichael respectfully requests that the Court impose a sentence that it takes into account all mitigating circumstances and does not amount to a sentence of life in prison. Such a sentence would be reasonable and "sufficient, but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public and provide the defendant with needed rehabilitation as required by 18 U.S.C. § 3553(a).

### Sentencing after Booker

As the Court well knows, since the Supreme Court handed down United States v. Booker, 125 S.Ct. 738 (2005), the federal Sentencing Guidelines ceased to be mandatory, becoming only one of several factors to be considered under 18 U.S.C. § 3553(a). Although only advisory, the guideline range must nevertheless be correctly calculated when considered under § 3553(a). *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

> After *Booker*, sentencing requires two steps. First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines. *See United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir.2005). Second, the district court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

*Id.* (setting out § 3553(a) factors). Post-*Booker*, sentences are subject to appellate review for reasonableness. Moreover, a guideline sentence is per se reasonable only if the district court has in addition to calculating the guidelines also taken into account the other § 3553(a) factors. *Talley*.

I.   **THE GUIDELINES CALCULATION IN THE PSR IS INCORRECT**

   A.   **The Jury Instruction Did Not Adequately Require the Jury to Find that Quantity Was An Element of the Offense Necessary to Determine the Mandatory Minimum Nor the Guideline Base Offense Level Under the Particular Facts of this Case**

Mr. Carmichael objects to the determination that he is liable for a mandatory minimum sentence of 10 years and a statutory maximum of life. He also objects to the determination that he is subject to a base offense level of level 34. Although the jury found him guilty of the charge alleged in Count I of the Indictment and also found the amount of marihuana for which he was accountable was 7000 pounds, the jury charge did not adequately require that it find the necessary elements of an offense under 21 U.S.C. § 841(b)(1)(A)(vii). Accordingly, he can only be held liable for a statutory maximum of 5 years and no mandatory minimum under 21 U.S.C. § 841(b)(1)(D).

3

The Indictment alleged a conspiracy lasting from on or about 1993 to November 17, 2003 involving more than 3000 kilograms of marihuana. However, the jury was not charged that the quantity of marihuana was an element of the offense which required a unanimous finding. For marihuana offenses, when quantity is not determined as an element of the offense, the statutory maximum is five years and no mandatory minimum applies. 21 U.S.C. § 841(b)(1)(D). *See United States v. Clay*, 376 F.3d 1296, 1301 (11th Cir. 2004) (quantity becomes essential element in marihuana case where sentence exceeds the "60-month maximum that [defendant] could have received pursuant to §841(b)(1)(D)").

The jury was charged that it could find Mr. Carmichael guilty of the conspiracy charged if it found only two elements, neither of which required a finding as to quantity:

> What the evidence in the case must show beyond a reasonable doubt is:
>
> <u>First</u>: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and
>
> <u>Second</u>: That the defendant, knowing the unlawful purpose of the plan, willfully joined it.

Jury Charge, Doc. 423 at 10.

Several paragraphs later, the jury was instructed that if it found the two above elements, it must also determine the amount of controlled substance "for which the defendant can be held liable." *Id.* at 11-12. In particular, the jury was also instructed to determine the net amount of controlled substance "the government has proved beyond a reasonable doubt for which that defendant can be held accountable" and then explained that the

> defendant can be held accountable for all quantities of a controlled

4

>   substance with which, the government has established beyond a reasonable doubt, he or she was directly involved and all quantities of a controlled substance that were reasonably foreseeable to the defendant to be in the scope of the conspiracy as you find it to exist beyond a reasonable doubt from the evidence.

Jury Charge at 11-12.

However, by separating the quantity determination from the elements and then instructing the jury that it could find the defendant accountable for all quantities with which " he was directly involved" without reference to whether the defendant was involved with those quantities as part of the conspiracy, the quantity determination is flawed and failed to establish the aggravated 10-year mandatory offense.

Significantly, the jury made no findings concerning the time frame of the conspiracy. Indeed, the government expressly told the jury that the "time frame is just the best allegation that the grand jury had of what time is. You may find it's different. The exact time frame is not something that will be a final determinative factor." Vol. II, page 17.

Moreover, for purposes of determining the quantity of drugs attributable to the conspiracy, the jury also was not charged on whether a single or multiple conspiracies existed. *See United States v. Chandler*, 388 F.3d 796, 808 (11th Cir. 2004).[1] Nor for this same reason, the jury quantity finding

---

[1] In *Chandler*, the Eleventh Circuit reversed a conviction in a case that involved multiple conspiracies although a single conspiracy was charged, explaining that "[F]or a wheel conspiracy to exist, those people who form the wheel's spokes must have been *aware* and must do something in furtherance of some single, illegal enterprise. If not, there is no rim to enclose the spokes." *United States v. Levine,* 546 F.2d 658, 663 (5th Cir.1977) (emphasis added). *See also United States v. Abraham,* 541 F.2d 1234, 1238 (7th Cir.1976) (the parties to an agreement must know of each other's existence). We have reversed convictions where such knowledge was lacking, finding no agreement to the overall conspiracy, and holding that the individual spokes constituted separate conspiracies. *United States v. Ellis,* 709 F.2d 688, 690 (11th Cir.1983); *United States v. Nettles,* 570 F.2d 547, 551 (5th Cir.1978); *Levine,* 546 F.2d at 663. We have never upheld a conspiracy conviction where a single key man moved alone from spoke to spoke, agreeing with no one else common to more than

5

cannot be used to determine relevant conduct under § 1B1.3 of the federal sentencing guidelines. Hence the jury finding that Mr. Carmichael was accountable for a certain quantity of marihuana does not resolve the mandatory minimum nor the amount of marihuana for which he is legally liable under § 1B1.3 and 2D1.1 under the particular facts of this case.

Particularly in this case, although a single conspiracy was charged, at best, the evidence presented to the jury showed multiple conspiracies. *See Kotteakos v. United States*, 328 U.S. 750 (1946) (string of separate conspiratorial acts involving different persons, even if similar, do not amount to single conspiracy). One conspiracy allegedly involved Mr. Carmichael and Mr. Denton; the 550 pound marijuana seized in November 2003 was part of this conspiracy. According to Mr. Denton that conspiracy began around late 1999 or 2000 but the jury made no finding on the starting date or duration of that conspiracy.

There also was evidence that another alleged conspiracy existed. This second conspiracy involved Timmons and Lacey. Acording to the testimony of government witnesses this conspiracy occurred during 1996-1997.

The two conspiracies were distinct. They involved different members. There also was a two to three year separation between the two conspiracies and there was no overlap. There was no

---

one spoke." *United States v. Chandler*, 388 F.3d 808  *See also* 2 Kevin F. O'Malley, et al., *Federal Jury Practice and Instructions*: Criminal § 31.09 (5th ed. 2000). Multiple conspiracy instructions should be given when there is evidence that multiple conspiracies may have existed. *See generally Berger v. United States*, 295 U.S. 78, 81-82 (1935) (proof that two or more conspiracies may have existed is not fatal unless there is a material variance that results in substantial prejudice); *Kotteakos v. United States*, 328 U.S. 750, 773-74 (1946) (reversing conviction where multiple conspiracies existed). In such circumstances, an instruction is necessary to ensure a unanimous verdict on one conspiracy.

interdependence among the Timmons/Lacey conspirators and the Denton conspirators. The evidence was clear that the two schemes were separate and that the Denton conspiracy did not involve either Timmons nor Lacey and that the Timmons/Lacy conspiracy did not involve Denton.

Hence, Mr. Carmichael is subject to a statutory maximum sentence of five years and no mandatory minimum.

    **1.**    **In the Alternative, Distinct and Temporally Separate Conspiracies Do Not Amount to Relevant Conduct under § 1B1.3(a)(1)**

In the alternative, for relevant conduct purposes, the Timmons/Lacey conspiracy was distinct from the Denton conspiracy and thus not part of the Denton conspiracy. That is, the Timmons/Lacey conduct that allegedly took place between 1996 and 1997 did not occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). It therefore cannot be considered as relevant conduct to the offense of conviction under U.S.S.G. § 1B1.3(a)(1).

The Timmons/Lacey conduct also does not qualify as relevant conduct to the Denton conspiracy under the "same course of conduct" or "common scheme or plan" prong of relevant conduct covered by U.S.S.G. § 1B1.3(a)(2). The Timmons/Lacey conduct and the Denton conduct do not involve the necessary commonality of factors to qualify as the "same course of conduct" or "common scheme or plan." Quantities attributable to Timmons/Lacey should not therefore be included in the total drug quantity.

The two leading Eleventh Circuit cases supporting Mr. Carmichael's position are *United States v. Le Blanc*, 146 F.3d 847 (11th Cir. 1998) and *United States v. Maxwell*, 34 F.3d 1006 (11th

Cir. 1994). In both cases, the Eleventh Circuit rejected the notion that various acts separate in time were part of the same course of conduct to the offense of conviction. In both cases, the Court identified the factors that are pertinent to this determination. The Court focused on whether the conduct could be separated into discrete events. In the instant case, the conduct involving Timmons/Lacey on the one hand and the Dento- related conduct on the other hand is similarly temporarily separate and also can be separated into discrete events.

Moreover, the quantity finding made by the jury sets an upper limit but does not resolve the quantity of drugs for which the defendant should be held liable, a fact that must be determined by the Court at sentencing for quantities above the statutory mandatory minimum quantity. Given the jury's finding of 7000 lbs of marijuana which clearly appears to reflect no more than an estimate, that sum is not sufficiently reliable to determine the base offense level particularly when this finding would result in such a severe term of imprisonment.

**B.     Firearm Enhancement – U.S.S.G. § 2D1.1(b)(1)**

Mr. Carmichael objects to the imposition of a two-level enhancement for possession of a dangerous weapon in connection with the offense (Preliminary PSR at ¶ 49). *See* U.S.S.G. § 2D1.1, comment (n. 3). Mr. Carmichael was licensed to possess the firearms found in his car, where no marijuana was found. He possessed those firearms legally and in connection with his legitimate business and not in connection with the alleged offense. Indeed, no testimony was presented at trial that Mr. Carmichael possessed or otherwise used the firearm in connection with the offense.

Moreover, Mr. Carmichael should not be held liable for the firearms found in Mr. Williams' home because they were neither foreseeable to him nor within the scope of his agreement. *See United States v. Clay,* 376 F.3d 1296, 1303 (11th Cir.2004) (concluding that "district court did not

8

clearly err in finding that it was improbable that the firearms found in [defendant's] residence were connected to the offense"); *see also United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999) (vacating defendant's sentence and remanding to district court to make findings regarding the foreseeability of the co-defendants' possession of the firearms).

    C.    **Aggravating Role Enhancement – U.S.S.G. § 3B1.1**

Mr. Carmichael objects to the imposition of a four-level enhancement for being the leader or organizer of a criminal activity that involved five or more participants (Preliminary PSR at ¶ 51). First, the alleged conspiracy did not involve more than five persons. Although charged as a single conspiracy, in fact the government presented evidence of multiple conspiracies with no single conspiracy involving five or more persons. Hence, the conspiracy that allegedly involved Timmons and Lacey was distinct from the one involving Denton and Williams. Moreover, Mr. Carmichael's role in the offense is like that of the defendant in *United States v. Jimenez*, 224 F.3d 1243, 1251 (11th Cir. 2000), where the 11th Circuit affirmed a two-level rather than a four-level aggravating role enhancement explaining that "being a drug supplier does not automatically make him a "supervisor" under the Guidelines." *See also United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993)

    D.    **Obstruction of Justice – U.S.S.G. § 3C1.1**

Mr. Carmichael objects to the imposition of an obstruction of justice enhancement (Preliminary PSR at ¶   ). The tax returns introduced as evidence were in fact the tax returns filed by Mr. Carmichael. Moreover, whatever evidence was introduced at trial was a tactical decision made by his lawyers. This is not intended to impugn the integrity of trial counsel. Rather, the point is that because an enhancement under the obstruction guideline requires that the defendant "wilfully" obstructed the prosecution, the introduction as evidence of tax returns that were in fact filed with the

9

Internal Revenue Service does not meet the wilfulness requirement because of the intervening tactical decision by the lawyers. Moreover, the fact that the tax returns may have included inaccuracies may be due, in part or in whole to the fact that there was a rush to have them prepared in time to be introduced at trial particularly in this case, where Mr. Carmichael's long-time tax preparer was unavailable to prepare the returns. Thus the errors may be attributable to that unique combination of circumstances rather than to any wilful attempt by Mr. Carmichael to obstruct or impede his prosecution.

Lastly, Mr. Carmichael challenges the application of this enhancement as violating his rights under the due process clause and the 5th and 6th Amendments to be free from punishment except upon an indictment, and a conviction beyond a reasonable doubt by a jury that he in fact committed obstructed justice. *See Blakely v. Washington,* 542 U.S. 296, 308 (2004). (Scalia, J., concurrence) ("Another example of conversion from separate crime to sentence enhancement that Justice O'Connor evidently does not consider going "too far" is the obstruction-of-justice enhancement, see *post,* at 2546. Why perjury during trial should be grounds for a judicial sentence enhancement on the underlying offense, rather than an entirely separate offense to be found by a jury beyond a reasonable doubt (as it has been for centuries, see 4 W. Blackstone, Commentaries on the Laws of England 136-138 (1769)), is unclear.").

Accordingly, Mr. Carmichael objects to an obstruction of justice enhancement both as a matter of law and under the facts in this case.

    **E.**    **Criminal History Is Not Properly Calculated or in the Alternatively a Downward Departure is Appropriate Pursuant to U.S.S.G. § 4A1.3 or the Sentence Otherwise Reduced Pursuant to 18 U.S.C. § 3553(a)**

Mr. Carmichael objects to the assessment of criminal history points on the ground that his prior convictions are too old to count (Preliminary PSR at ¶¶ 58-59). *See* U.S.S.G. § 4A1.2(e). In establishing the criminal history guideline, the Sentencing Commission determined that stale prior convictions should not receive any criminal history points. Section 4A1.2(e)(3) provides that a "prior sentence not within the time periods specified" should not count. The applicable time period in this case is that set out at U.S.S.G. § 4A1.2(e)(1):

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

In this case, Mr. Carmichael was released from prison on July 7, 1986. Any criminal history points related to that term of incarceration are stale and not countable under the guidelines if the instant offense took place on or after July 6, 2001.

The jury in this case was not asked to make a finding as to when the conspiracy began. Indeed, as noted above in our argument concerning relevant conduct, the government expressly told the jury that the "time frame is just the best allegation that the grand jury had of what time is. You may find it's different. The exact time frame is not something that will be a final determinative factor." Vol. II, page 17. Hence the conviction does not support a finding that the conspiracy commenced at any given time nor certainly that it commenced within the time period necessary for the prior convictions to count as criminal history.

Moreover, the prior is definitely stale with respect to the only actual seizure of marijuana, which took place in November 2003. On its face, the prior is stale with respect to the only actual

evidence Hence the prior on its face is stale as Mr. Carmichael was released from prison more than 15 years before November 2003.

Mr. Carmichael would object to having the court determine when the conspiracy began. The government had an opportunity to have the jury make the determination but as quoted above explicitly decided not to require a jury finding on this particular point. Accordingly, Mr. Carmichael objects to the assessment of six criminal history points based on such old priors and without a jury finding beyond a reasonable doubt that these priors were not stale.

Alternatively, six criminal history points for such old offenses as to which he had received a full pardon warrants a downward departure. Indeed, fFor various reasons, Mr.Carmichael's criminal history calculation overrepresents his past criminality and the likelihood of recidivism. As the 11th Circuit has explained, whether a criminal history departure is warranted depends in large part on the pattern and timing of the prior convictions. *United States v. Rucker,* 171 F.3d 1359, 1363 (11th Cir.1999), and *United States v. Phillips,* 120 F.3d 227, 232 (11th Cir.1997). In Mr. Carmichael's case, he committed the prior offenses in 1980 and 1975 and there was an intervening period of many years between his release from prison and the time when the instant offenses were committed, the priors actually being stale and not countable as criminal history depending on the date when the conspiracy is deemed to have commenced. Also, the fact that he had conducted himself in a manner that exhibited his exemplary reformation meriting a pardon should also be taken into account in reducing his sentence.

In addition, imposing three criminal history points for the second conviction for possession of contraband while in prison overrepresents criminal history for various reasons including that such conduct is often handled as a mere disciplinary violation by prison officials rather than a separate

12

offense. In this regard, this conviction is also a basis for a sentencing reduction under 18 U.S.C. § 3553(a)(6), which requires the Court to "avoid unwarranted sentence disparities").

The criminal history calculation also warrants a downward departure or a sentence reduction pursuant to 18 U.S.C. § 3553(a) because it fails to consider the fact that the risk of recidivism is drastically reduced given Mr. Carmichael's age and life expectancy, two factors that the current criminal history guideline does not take into account. At age 53, Mr. Carmichael's life expectancy according to statistics published by the United States government is 22.4 years. http://www.cdc.gov/nchs/data/nvsr/nvsr53/nvsr53_06.pdf Moreover, other published statistics reflect that imprisonment significantly reduces life expectancy. Silverman, I. & M. Vega. (1996). *Corrections*. St. Paul, MN: West. Significantly also, Mr. Carmichael suffers from high blood pressure serious enough that he is required to take medication. Thus, his life expectancy can be expected to be reduced on that basis. The Court should take into account Mr. Carmichael's life expectancy in determining his sentence either as a function of a U.S.S.G. § 4A1.3 departure or under its discretionary authority pursuant to 18 U.S.C. § 3553(a). *See United States v. Gigante*, 989 F.Supp. 436 (E.D.N.Y 1998).

In *Gigante,* Judge Weinstein granted a downward departure from a sentence of 262 - 327 months (level 38) to a sentence of 12 years for a defendant of advanced age on the basis that his physical infirmity and limited life expectancy warranted such a departure. In particular, Judge Weinstein determined the sentence by taking into account that the defendant had a "substantial chance of surviving more than ten years in prison" and thus by imposing a 12-year sentence, less good time credit, he was in fact imposing a sentence that "would probably be short of a life sentence." It is significant that the Court granted the downward departure despite the fact that the

13

defendant, who stood convicted of five counts including RICO and related offenses was charged with very serious offenses after "decades of vicious criminal tyranny" as a gang boss in the Genovese Family and in the Mafia. The Court determined that despite that serious history, the defendant was "no longer that maleficent" and certainly his dangerousness to society would be diminished by the time of his release from prison because of his age.

Moreover, the Sentencing Commission in recent reports has explained that "recidivism rates decline relatively consistently as age increases." USSC, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES at 12. That Report also explained that the Commission failed to take a defendant's age into account in establishing the criminal history guidelines and that by not considering this factor the guidelines ignore an accurate predictor of future recidivism. *Id.* at 15-17.

Accordingly, in the event the Court rejects the argument that the maximum sentence is five years pursuant to 21 U.S.C. § 841(b)(D), were the Court to impose a sentence of 10, 15 or 20 years, Mr. Carmichael would be more than 60 years old and possibly nearing 70 years. Both as a function of his life expectancy, given his medical problems and the reduced risk of recidivism at that age, the Court should reduce Mr. Carmichael's sentence for these reasons.

II. **Mr. Carmichael's History and Characteristics and the Kind Of Sentences Available Warrant A Sentence at the Low End or Below the Guideline Range**

    A. **A Sentence At the Low End of the Guideline Range or Below It Satisfies the Statutory Requirements And Is Reasonable**

In determining the kind of sentence to impose pursuant to 18 U.S.C. § 3553(a)(3), a sentence below the guideline range is reasonable for multiple reasons.

14

1.   **Charitable Good Works, Family Circumstances and Other Mitigating Circumstances**

As noted earlier, although the Court may not been aware of the good that Mr. Carmichael has done in his life, the truth is that Mr. Carmichael is in many respects a man who has overcome a number of extremely difficult circumstances, including reforming himself after the tragic killing when he was a young man and becoming one of the most successful businessmen in this community.

Since approximately nine years ago, Mr. Carmichael has provided invaluable help to those less fortunate than himself. As Chaplain Browder will explain to the Court if allowed to testify, Mr. Carmichael has helped thousands and thousands of people. The first time he helped Chaplain Browder was with a food drive in Birmingham, Alabama where he lent his tractor trailer trucks and men to drive them to the Faith Crusade to bring thousands of pounds of food to be distributed to people who would otherwise have gone hungry. Thereafter, three or four times each year, Mr. Carmichael would open the Carmichael Center to the Faith Crusade to provide food and clothing to the needy. Those helped were the working poor, the elderly who live on fixed income, the sick, the homeless and children. His help also included providing tractor trailer trucks, drivers and the fuel to transport the thousands of pounds of food at no cost.

In addition, Mr. Carmichael allowed The Faith Crusade to use a restaurant without charging any rent to feed the community. He also has provided without charging rent a Haven to be used as a community center for children and others in the community for after-school and summer programs. The Haven includes a computer lab for kids, a day care center, a summer program for children and similar programs.

Moreover, Mr. Carmichael's contributions were not limited to providing resources. Mr.

15

Carmichael himself personally attended some of these food drives and helped Chaplain Browder. Mr. Carmichael also brought his own children to the Haven and also had them help during the food drive at the Carmichael Center. As Chaplain Browder mentioned, it is not every person who opens a business to the poor.

Mr. Carmichael has also always been a good father. He and his wife Valerie are raising their three young children, Keonica, aged 10; Leval, aged 11 and Jairus, aged 4. He also is raising in his home with Valerie, three children from a former relationship, Leondreia, aged 9; Leon, aged 11; and Jeremy, aged 16. Another child, Jerrricka, aged 17, who is Jeremy's sister, lives with her mother. However, Jerricka spends summers and other school vacations with Mr. Carmichael and his wife. As his wife describes it, Mr. Carmichael has been a good father and a good provider caring for his children and spending time with them and also teaching them to help those less fortunate.

The children will suffer because they will lose the emotional and financial support and fatherly teaching that Mr. Carmichael has provided them. Mr. Carmichael also has at least one grown son, Felando, aged 23, who is a fine young man and is employed as firefighter in this community. The fact that this young man has turned out so well is a reflection of his father's guidance.

This aspect of Mr. Carmichael's life merits consideration by the Court pursuant to 18 U.S.C. § 3553(a)(1) in determining the particular sentence. *See e.g., United States v. Tocco*, 200 F.3d 401, 433-34 (6th Cir. 2000). In *Tocco*, a case involving two RICO conspiracies and a Hobbs Act conspiracy spanning over three decades alleging that defendants were members of the *Cosa Nostra*, the Court upheld a four-level downward departure for a defendant who had participated in no less than twelve charitable and civic organizations. As with Mr. Carmichael, a flood of letters poured

into the court that strongly supported Tocco and urged leniency in his sentencing. Among other things, the letters stated that Tocco was a dedicated "family man and a dependable philanthropist in the community." The Sixth Circuit held that so long as the defendant's contributions consisted of his "time commitments and not monetary contributions," a departure would be warranted and remanded for the district court to make that determination. Id.[2]

## Conclusion

For all these reasons, Mr. Carmichael respectfully requests that the Court impose a sentence that is reasonable and sufficient, but not greater than necessary. If the Court accepts the argument that it must impose a sentence pursuant to 21 U.S.C. § 841(b)(1)(D), the statutory maximum is five years. Alternatively, if the Court rejects this argument, Mr. Carmichael respectfully requests that the Court impose a sentence below the guideline range in consideration of the entirety of Mr. Carmichael's charitable contributions to his community, his family circumstances and the reduced likelihood of recidivism given his age and medical condition and that it not merely consider the offense of conviction, while ignoring the whole man.

Such a sentence would be "sufficient, but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public and provide the defendant with needed rehabilitation as required by 18 U.S.C. § 3553(a).

---

[2] Court's concern with the notion that contributions of money only could reflect socio-economic status, i.e., wealth and the ability to donate to various civic and charitable causes, which was prohibited by the guidelines under U.S.S.G. § 5H1.10. In part, that concern is no longer at issue as the guidelines and any of its prohibitions are no longer mandatory.

In this case, such a sentence amounts to just punishment in the best tradition of the federal courts and accounts for the unique failings of human beings that, in the words of Justice Kennedy in *Koon v United States*, "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Respectfully submitted,

/s/
Carmen D. Hernandez, Esquire
717 D Street NW, Suite 310
Washington, D.C. 20004
Bar # MD03366
Tel: (202) 628-0090; Fax: (202) 628-2881[3]

Dated:    July 14, 2006

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Sentencing Memorandum was served electronically and via first class mail this 14th day of July, 2006 on AUSA A. Clark Morris, One Court Square, Suite 201, Montgomery, AL 36104. served on AUSA Clark Morris.

Carmen D. Hernandez

---

[3] Motion for Admission Pro Hac Vice pending.

18